# United States Bankruptcy Court
## Eastern District of Pennsylvania

In re:

    Tri-State Paper, Inc.,

        Debtor.

Case No. 23-13237-pmm

Chapter 11

**EXHIBIT A**

### Declaration by US Realty Associates, Inc.

1. I am Vice President of US Realty Associates, Inc. and make this declaration on its behalf.

2. USRA has no connection with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

3. USRA is not a creditor of the debtor.

4. USRA can perform services required by the debtor relating to this case. USRA is a commercial real estate brokerage company specializing in the sales of high-profile properties.

5. USRA has agreed to render professional services for the debtor in return for compensation as set forth in the attached contract.

6. USRA did not receive any payments from the debtor within the 90 days preceding the order for relief.

7. I understand that, if USRA is approved to serve as the Debtor's Real Estate Agent, all professional fees and services incurred in a bankruptcy case are required to be approved by the bankruptcy court upon application and after notice to all creditors and interested parties.

8. I further understand that payment of professional fees by the debtor may only occur after the bankruptcy court has approved those fees, and that USRA must report payment of any fees from non-debtor sources if made on behalf of the debtor.

9. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: December 4, 2023

/s/ Gregory R. Bianchi
Gregory R. Bianchi

**USREALTY**

Commercial Real Estate
Licensed Real Estate Broker in Pennsylvania & New Jersey
120-124 E. Lancaster Avenue - Suite 101, Ardmore, PA 19003
(215) 701-3840

**EXCLUSIVE RIGHT TO SELL/LEASE REAL ESTATE AGREEMENT**

**PREMISES:** 4500-20 N. 3rd Street          Philadelphia              Philadelphia          PA
ADDRESS                                  CITY/BOROUGH/TOWNSHIP   COUNTY                STATE

**TAX ID:** (OPA Account #884813900)

**DESCRIPTION OF PREMISES:** 21,847 SF lot consisting of approximately 42,680 +/- SF of Building

**ZONING CLASSIFICATION (PER OWNER):** ICMX-Industrial Mixed Use

THIS AGREEMENT made the 23rd day of May, 2023 by and between Tri State Paper Inc. hereinafter referred to as "Owner", and US Realty Associates, Inc. hereinafter referred to as "AGENT".

**WITNESSETH:**

1. **LISTED PRICE & TERMS OF AGENCY:**
The Owner desires to retain the AGENT to serve as Owner's AGENT in connection with the Sale/Lease of the Property. ***Owner will notify AGENT, should Owner elect to have the property marketed for sale.*** The Owner hereby grants the right as its AGENT to:
   A. Sell the Premises for a gross sale price of – $ - [$4.1 million] or for such lesser gross sale price as Owner may hereafter approve; and/or
   B. Lease the Premises for the rental price of – ***undisclosed offering*** / monthly – ***undisclosed offering*** - per annum for a term of **TBD** years or more/less or for such lesser rental and/or term as Owner may hereafter approve (office space only).

2. **STARTING & ENDING DATES OF THIS AGREEMENT:**
The term of this Agreement shall be for a period of twelve (12) months from the date hereof and expiring at 11:59 P.M. on the 23 day of May, 2023 [2024] at the end of which period this Agreement shall terminate without notice unless the term is extended in writing by the Owner and AGENT, subject nevertheless to the terms of this Agreement intended to survive such termination.

3. **COMMISSION EVENT:**
A COMMISSION EVENT shall be deemed to have occurred as follows:
   A. Under Paragraphs 1.A. above if (i) the Premises or any portion thereof shall be sold, transferred or exchanged, (ii) a Restructure has occurred, (iii) the Premises shall be transferred or conveyed in any other manner whatsoever by operation of law, direct or indirect, or (iv) a buyer was obtained who was ready, willing and able to purchase the Premises, or any portion thereof, on the terms described in Paragraphs 1.A.
   B. **Owner agrees that AGENT will be paid its commission regardless of whomever, including Owner, sells or Leases the Property during the term of the Agreement. Owner agrees to refer to AGENT the names and addresses of all parties, regardless of source, making inquiries concerning the Lease or other Lease Transaction of the Property. Owner agrees to have no communication regarding the terms of the Lease or other Transaction with such inquiring parties or between legal counsels without notice to AGENT. Owner shall allow AGENT to attend and participate in all conferences, meetings and discussions as well as receive all documentation involving the Property.**

4. **PAYMENT ON TENANT PURCHASE:**
Under Paragraph 1.B. above if (i) the Premises or any portion thereof shall be leased, or (ii) if a tenant was obtained who was ready, willing and able to lease the Premises, or any portion thereof, on the terms described in Paragraphs 1.B. above.
   A. Owner shall also pay AGENT a commission in the event that a Tenant procured by AGENT subsequently purchases the property.

**OWNER HEREBY ACKNOWLEDGES THAT UPON THE OCCURRENCE OF A COMMISSION EVENT IN ACCORDANCE WITH THIS AGREEMENT, AGENT SHALL HAVE EARNED, AND OWNER SHALL PAY TO AGENT, A COMMISSION AS SET FORTH BELOW.**

5. **PAYMENT OF AGENT'S FEE:**
Upon the occurrence of a COMMISSION EVENT, Owner shall pay the following commission to AGENT:
   A. (i) Under Paragraphs 1.A. above, Owner shall pay AGENT a commission equal to six percent (6%) of the gross sale price, payable in cash or certified funds at the closing of the sale of the Premises.
   A. (ii) A commission in the event that **TENANT** procured hereunder purchases, directly or indirectly, the Premises at any time during the initial term of Lease or during any AMENDMENT period as defined in Paragraph 5.B.(ii) below.

   B. (i) **LUMP SUM PAYOUT:**
      (a) Owner shall pay AGENT a commission equal to four percent (4%) of the base aggregate rent for years 1-10 of the base term of the Lease. Base Term can be less than ten (10) years, depending on Lease. In the event that a COOPERATING AGENT is involved in the Lease Transaction, Owner agrees to pay six percent (6%) of the base aggregate rent for the base term and options which AGENT agrees to split equally with COOPERATING AGENT.
      (b) Commission shall be due at rent commencement.
      (c) Owner shall pay AGENT a commission of three percent (3%) of the base aggregate rent for the first and any subsequent exercised option periods, payable at the time Tenant exercises its option to renew its Lease.
      (d) Owner shall also pay AGENT a commission of three percent (3%) of the sales price in the event that a Tenant procured by AGENT subsequently purchases the property at any time during the Base Term or options.
   B. (ii) A commission as set forth in Paragraph 5.B.(i) above, in the event that a tenant (or any subsidiary, affiliate, partner, successor or related party, hereinafter referred to as "TENANT" procured hereunder shall enter into a Lease renewal, extension or amendment or expansion of the area leased at the Premises or exercise any option to renew, extend or expand the area leased at the Premises (all of the foregoing are hereinafter referred to as "AMENDMENT"), whether or not said AMENDMENT was negotiated by AGENT. It is understood that AGENT shall continue to be paid the aforesaid commission following the expiration of the initial term of Lease and the termination of this Agreement, so long as the Owner or his successors or assigns maintains a "landlord-tenant" relationship with any TENANT procured in accordance with the terms of this Agreement.

6. **DEFAULT BY BUYER OR TENANT:**
In the event that any buyer or TENANT should default in any Agreement of Sale or Lease of the Premises procured under this Agreement by or through AGENT, any liquidated damages or other monies paid on account of any such default under the contract or

N:\Users US Realty\Greg\4500-20 N 3RD St

Lease, including any Lease "buy out" or other similar charge, shall be equally divided between the Owner and AGENT, but in no case will the sum paid to AGENT be in excess of the commission set forth in Paragraphs 5, as applicable. **[Note: This is to include splitting accelerated rent received by Owner.]**

7. **PERIOD FOLLOWING TERMINATION OF AGENT'S CONTRACT:**

    **A.** Notwithstanding that this Agreement shall have been terminated in accordance with Paragraph 2 above, Owner agrees to pay AGENT the commission set forth in Paragraphs 5.A., or 5.B. above, as applicable, if, within eighteen (18) months following the termination of this Agreement, a Commission Event occurs with the person or entity to whom the Premises had previously been shown by AGENT during the term of this Agreement (or to any other person, firm, or corporation; or any subsidiary, affiliate, partner, successor or related party with whom such party had or has an interest, relationship or connection), referred to as an "IDENTIFIED PARTY". Within ten (10) business days of agency expiration or termination, AGENT shall provide Owner with a list of "IDENTIFIED PARTY" prospects.

    **B.** Owner hereby demands that Gregory R. Bianchi is the designated Broker on this Agency. Should Gregory R. Bianchi cease his relationship or cancel any working relationships with US Realty Associates, Inc. the Owner will reserve the right to terminate this Agreement with 30 days written notice to the Broker.

8. **SELLER'S RESPONSIBILITY TO AGENT:**
    During the term of this Agreement, Owner shall promptly provide AGENT with a fully executed copy of any Agreement of Sale or Lease of the Premises or any portion thereof should such occur at any time.

9. **OWNER REPRESENTS:**
    Owner represents that he/she is the legal Owner of the Premises, that the title to the premises is good and marketable, that he/she has the legal right to sell or lease all of the Premises.

10. **ADVICE TO SEEK PROFESSIONAL COUNSEL FOR LEGAL & TAX MATTERS:**
    Owner acknowledges that he has been advised by the AGENT to seek counsel of his tax attorney or accountant, for the determination of any income tax consequences of any transaction hereunder.

11. **OWNERS COPY OF AGREEMENT:**
    Owner acknowledges receipt of a true and exact copy of this Agreement.

12. **ESCROW:**
    Owner agrees that all payments made by Buyer or TENANT with respect to any transaction under this Agreement shall be retained in the escrow account of "to be determined by the Owner", hereinafter referred to as the "ESCROW ACCOUNT" for the benefit of the parties to the transaction in accordance with the rules and regulations of the Pennsylvania Real Estate Commission. It shall be the sole option of the AGENT to hold any uncashed check tendered as deposit or hand monies, pending the acceptance by Owner of any offers obtained on the Premises. In the event that any dispute arises relating to the funds held in the ESCROW ACCOUNT, AGENT is authorized to deposit such funds with a court of competent jurisdiction and will be discharged from any further liability. This Paragraph shall survive the expiration of the term of this Agreement.

13. **JURISDICTION:**
    This Agreement will inure to the benefit of and be binding upon the parties hereto and their heirs, executors, administrators, successors and assigns. If any provision of this Agreement is deemed unenforceable or invalid, such provision will not affect the enforceability or validity of any other provision. This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.

14. **BROKER'S LIEN ACT:**
    **A.** The Pennsylvania Commercial Real Estate Broker Lien Act (Act 34 1998) grants real estate brokers the right to a statutory lien on the property for services rendered by giving <u>notice</u> to the Owner and Buyer that AGENT will file said statutory lien in accordance with the Act which requires "Notice" of filing in advance of closing of title if not paid as agreed by this Agreement.
    **B.** Owner agrees to pay all legal fees of AGENT should any suit be commenced to enforce AGENT'S rights to commissions under this Agreement.
    **C.** Any unpaid commissions/fee's, including charges collectible as expenses as overdue for a period of more than ninety (90) days from lien filing, shall bear interest at the greater of the rate of eighteen percent (18%) per annum or prime plus five percent (5%) whichever is greater, until paid. AGENT reserves the right to continually refile the lien with applied interest rate. However, in no event shall such percentage exceed the maximum as permitted by law.

15. **PENNSYLVANIA REAL ESTATE LICENSING & REGISTRATION:**
    In compliance with the Pennsylvania Real Estate Licensing and Registration Act of 1984 (and as amended), AGENT and Owner acknowledge that:
    **A.** The Pennsylvania Legislature has established a Real Estate Recovery Fund. The purpose of this fund is to compensate persons who obtain a judgment because of fraud, misrepresentation or deceit of a Pennsylvania licensed real estate broker. For further information call the Pennsylvania Real Estate Commission at (717)-783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).
    **B.** The commission payable by Owner to AGENT hereunder and the duration of the Agreement have been determined as a result of negotiations between Owner and AGENT.
    **C.** AGENT has explained to Owner its policies regarding cooperation with subagents and buyer's agents. AGENT and Owner agree that, provided the subagents or buyer's agent's agency has been disclosed to AGENT at the time of the Buyer's initial contact with AGENT, AGENT, upon receipt of AGENT'S commission, will pay the following amounts to COOPERATING AGENTS and Buyer's Agents involved pursuant to Paragraph 5.B.(ii).
    AGENT has explained to Owner that even if an Agent representing TENANT is compensated by AGENT or Owner, the Agent representing TENANT will only represent the interests of the TENANT.
    **D.** DUAL AGENCY: Owner agrees that AGENT may also represent the Buyer(s) / Tenant(s) of the Property. AGENT is a Dual Agent when representing both Owner and the Buyer / Tenant in the Sale / Lease of a property.

16. **BANKRUPTCY OR SHERIFF SALE:**
    Owner will notify AGENT immediately in the event the Property comes under the jurisdiction of a bankruptcy court or Sheriff. If the Owner is the subject of bankruptcy, Owner will take all steps necessary to obtain court approval of AGENT'S appointment to sell or lease the Property, unless AGENT elects to terminate this contract upon notice of the bankruptcy. The registration of AGENT'S customer shall survive any Sheriff Sale action where Seller retains title, and Seller will remain obligated to pay real estate commissions described herein as if there were no Sheriff Sale.

17. **ENTIRE CONTRACT:**
    This contract is the entire Agreement between AGENT and Owner. Any verbal or written Agreements that were made prior to the signing of this contract are not part of this contract and are not binding.

**IN WITNESS WHEREOF**, the parties hereto intending to be legally bound hereby have executed this Agreement on the day and year first above written.

OWNER:  TRI STATE PAPER LLC

ACCEPTED BY: _John Petaccio_          Date: _5/23/23_
NAME (PRINT): _John Petaccio_
MAILING ADDRESS: _149 E. Church St. Blackwood, NJ. 08012_
MOBILE NUMBER: _215-554-8740_  FAX: _____  EMAIL: _John a. tri-statepaper co. com_

OWNER:
ACCEPTED BY: _SAnge_          Date: _____
NAME (PRINT): _____
MAILING ADDRESS: _____
MOBILE NUMBER: _____  FAX: _____  EMAIL: _____

AGENT: US REALTY ASSOCIATES, INC.

ACCEPTED BY: _____          DATE: _5/23/23_
GREGORY R. BIANCHI

MAILING ADDRESS: 120-124 E. Lancaster Avenue – Suite 101; Ardmore, PA 19003
PHONE: 215-701-3840   FAX: 215-701-3839   EMAIL: gbianchi@eusrealty.com