**Fill in this information to identify the case:**

Debtor 1   Tri–State Paper, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Eastern District of Pennsylvania**

Case number:  **23–13237**



PLAINTIFF'S
EXHIBIT

**A**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:  Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Robert M. Reibstein, Esq. <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor     Robert M. Reibstein, Esq. |
| **2. Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br> Robert M. Reibstein, Esq. <br><br> Name <br><br> 1001 City Avenue, WB 1011 <br> Wynnewood, PA 19096 <br><br><br> Contact phone _____6106566920_____ <br> Contact email ___robert.reibstein@gmail.com___ <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _____ | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br><br> Contact phone _____ <br> Contact email _____ |
| **4. Does this claim amend one already filed?** | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known)     31     Filed on   01/05/2024 <br> MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? |

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ _____3612.44_____   **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Unpaid fees for legal services rendered prior to bankruptcy. _____ |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>    **Nature of property:**<br>    ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>    ☐ Motor vehicle<br>    ☐ Other. Describe: _____<br><br>    **Basis for perfection:** _____<br><br>    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>    **Value of property:**   $ _____<br><br>    **Amount of the claim that is secured:**   $ _____<br><br>    **Amount of the claim that is unsecured:**   $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>    **Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>    **Annual Interest Rate** (when case was filed)   _____ %<br><br>    ☐ Fixed<br>    ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1/5/2024
                    MM / DD / YYYY

/s/ Robert M. Reibstein

Signature

Print the name of the person who is completing and signing this claim:

Name    Robert M. Reibstein
        First name   Middle name   Last name

Title   _____

Company  Robert M. Reibstein, Esq.
        Identify the corporate servicer as the company if the authorized agent is a servicer

Address  1001 City Avenue, WB 1011
        Number   Street
        Wynnewood, PA 19096
        City   State   ZIP Code

Contact phone  6106566920    Email  robert.reibstein@gmail.com

Official Form 410                Proof of Claim                page 3

2.Part II No: 8 Attached documentation

1. Original contingent fee agreement April 17, 2008.. 7 pages.

2.Status report of December 10, 2021  …..6 pages

3. Bill dated March 10, 2022…….5 pages

4. Letter and check of. August 22, 2022 and letter of termination of representation
    August 23,2022….4 pages.

5.  Transmittal of Corrine's and Antineutrinos collection cases.  12 pages

6. Letter dated October 2, 2023, with finalization of new Contingent Agreement...6 pages

7.Bill dated October 20, 2023 for discussions on outstanding bills..5 pages

8.Bill of October 4, 2023 with Covenants Not to Compete….8 pages

9.Bill for preparation of letter to Cease and Desist…..6 pages.

10. Letter dated October 25,2023…..1 page

1

# Robert M. Reibstein

### ATTORNEY AT LAW

### ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. BOX 485
NARBERTH, PA 19072
(610) - 655- 6920
FAX (610) - 649-6491
EMAIL:
Bobr19@verizon.net
☐ REPLY NARBERTH
☐ REPLY CEDAR FARMS



IN-HOUSE ✓
GENERAL COUNSEL
CEDAR FARMS CO., INC.
STREET ADDRESS
2100 HORNIG ROAD
PHILADLEPHIA, PA 19116
(215)-934-7100
FAX (267)-388-7859
EMAIL:
Robert.reibstein@cedarfarms.com

## FACSIMILE TRANSMISSION COVER SHEET

DATE: April 17, 2018

TO: Tom A.

FAX #: 215-455-4509

FROM: Robert Reibstein, Esquire

NUMBER OF PAGES INCLUDING COVER SHEET: 6

MESSAGE:  Please call me now about my demand letters going out.
PLEASE CALL ME TO ACKNOWLEDGE RECEIPT. Thanks.

IF YOU HAVE ANY PROMBLEMS OR QUESTIONS RECEIVING THIS
MESSAGE, PLEASE CALL 610-656-6920. THANK YOU.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

Cell

Robert M. Reibstein, Esq.

ATTORNEY AT LAW
ADMITTED GA & NJ BARS

IN-HOUSE
GENERAL COUNSEL
CEDAR FARMS CO., INC.

STREET ADDRESS
2100 HORNIG ROAD
PHILADELPHIA, PA 19116
(215)-934-7100 X 2259
FAX (267)-388-7859
E-MAIL: robert.reibstein@cedarfarms.com

MAILING ADDRESS
P.O. BOX 485
Narberth, Pa. 19072
(610) 656-6920

☐ REPLY TO NARBERTH
☐ REPLY TO CEDAR FARMS

Mr. Gus Patacchio
Tri-State Paper Co., Inc.
4500 N. 3rd Street
Philadelphia, PA 19140

RE: COLLECTION OF OVEDUE ACCOUNTS

Dear Gus and Tom:

It was a pleasure to meet Gus and see Tom again last month. Sorry that "big one" was an uncollectable debt that I had been aware of once I saw the paperwork.

The purpose of this correspondence is to inform you of my new contingent fee structure and when appropriate, my new hourly fee. New accounts will be collected on a fee basis as follows:

A.     On all sums claimed due under a principal debt of $3,000.00, you will be required to send me all of the documentation I usually receive along with a check in the sum of $100.00 for my office to view that possible case and to then briefly discuss the matter with you as to whether or not you wish my office to proceed to attempt to make a collection with out fees being derived on an hourly basis or at a contingency fee basis of 50%.

B.     On all sums claimed due between $3,001.00 and $10,000.00 - a collection fee of 25% if we can obtain a one-time lump sum payment before suit is instituted; a collection fee of 33-1/3% if we obtain periodic payments on account before suit is instituted; if suit is instituted, 40%; and if execution is commenced after obtaining a judgment, 50%; or

    Alternatively, on all sums claimed due between $3,001.00 and $10,000.00, you may pay a non-refundable file fee of $250.00 to be sent to me along with your initial documentation (not to be credited against contingent fees earned). Then that contingent fee shall be a straight 33-1/3% of all sums collected no matter how little or how much work I have to do to successfully pursue that account.

C.     On all cases with sums claimed due between $3,001.00 and $10,000.00, if you have not advanced a $250.00 file fee, and if a suit is filed and a collection cannot be made for reasons of uncollectiblity, bankruptcy, or losing the case, then there would be a suit fee of $250.00 due this office.

D.     On all sums between $10,001.00 and $25,000.00 - a collection fee of 15% if we can obtain a one-time lump sum payment before suit is instituted; a collection fee of 20% if we obtain periodic payments on account before suit is instituted; if suit is instituted, 25%; and if

execution is commenced after obtaining a judgment, 33-1/3% with a suit retainer of
$300.00 advanced at the time of suit. This amount shall be credited as against any
contingent fee earned if any fees are derived by settlement or through execution
proceedings; and

E.    On all sums over $25,000.00 - a collection fee of 15% ; if suit is instituted, 20% and if
execution is commenced, 25%. A suit retainer of 2% of the principal balance due - capped
at $1,000.00 - is to be advanced at the time of suit which shall be credited as against any
contingent fee earned if any fees are derived by settlement or through execution
proceedings; and

F.    If a judgment already exists, my fee for execution on same will be 25%.

On all cases with sums claimed due under $10,000.00, if suit is filed and a collection is not made for
reasons of uncollectability, bankruptcy, or losing the case, then there would be a suit fee of $250.00 due
this office. If I am just retained to execute on a judgment, then the uncollectible judgment fee will also be
$250.00.

**PLEASE DO NOT FAX CASES TO ME AS I CAN ONLY ACCEPT NEW FILES BY MAIL. IF
YOU NEED TO DISCUSS THE CASE WITH ME, PLEASE ATTACH A SHORT NOTE TO THE
INFORMATION ON THE NEW CASE, AND I WILL GIVE YOU A CALL.  PLEASE
FORWARD COMPLETE TRUE AND CORRECT  LEGIBLE COPIES OF YOUR ENTIRE FILE
WHEN YOU FORWARD A MATTER TO MY OFFICE FOR COLLECTION.**

The above referenced fees are based on the fact that the defendant is still in business. If a company is out
of business, then I would expect you to telephone me on those occasions so we can discuss whether or not
I feel there is still a chance you may collect sums due you and how I would proceed.

The above fees are also for cases with no known defenses where default judgment should be obtained with
the Defendant generally not responding until execution is commenced on your judgment. Should my office
file suit and a response be filed by the Defendant, the appropriate Appearance Fee for my office (generally
$250.00) will be discussed before we make any necessary appearances. Should any post-judgment
Motions need to be filed (i.e., Sanctions or Contempt for failure to answer discovery requests in Aid of
Execution or for a Break and Enter Order to make a Levy), there will be a specific request  made for the
preparation thereof with a preparation/appearance fee of $150.00.

It is agreed that my office may settle any matter without having to obtain your approval as long as the
amount of the settlement is greater than 85% of the principal balance due. You agree to allow our office
to endorse all checks or payments made payable to you so long as those payments are placed in my bonded
attorney escrow account.

If cases need to be referred to an attorney in a State other than Pennsylvania or New Jersey (where I practice), a referral fee of $175.00 shall be charged to forward your case to that other attorney. My responsibility and involvement on that matter shall cease after the referral has been made. If you wish for me to remain involved and responsible for the case by following up with the other attorney, then my fee for that service shall then increase to $250.00.   Before referring the case I will speak with you to request appropriate court costs and retainers needed by the other attorney.

Claims in bankruptcy will be filed by my law office for an additional fee of $75.00 and on a case-by-case basis, if the contingent fee is not appropriate, a flat fee can be agreed upon at the time on which I take any bankruptcy cases.

If you have obtained a judgment which has not or cannot be satisfied, that judgment acts as a lien against any real estate owned by the Defendant, however the judgment must be revived before its 5-year anniversary date and any five-year anniversary date thereafter to keep it's place as a lien against the judgment debtor's real estate.  The judgment needs to be revived within twenty (20) years of the date of its anniversary to keep it effective so that you may be able to force payment against any personal asset of the Defendant other than real estate.  It will be **YOUR RESPONSIBILITY** to call my office to discuss the matter one month prior to the judgment's expiration.  After that discussion, it will be **YOUR RESPONSIBILITY** to send my office a letter enclosing a check for my fee of $150.00 and the appropriate service costs.

**IT IS YOUR OBLIGATION AS PART OF THIS FEE AGREEMENT TO FORWARD ALL REQUESTED COSTS AND FEES WITHIN SEVEN DAYS OF THE DATE OF MY WRITTEN NOTIFICATION.**  If a defendant files a counterclaim against you (be it legitimate or of no merit), I would be glad to represent your interests at a courtesy fee of $145.00 per hour, which is significantly less than my normal hourly fee of $200.00 per hour.

If you ever have any questions, please feel free to call upon me as I still generally do not charge my collection clients for general legal advise or discussions as to whether or not a file has merit to proceed with collection, suit or execution.

Up until December 1, 2001, full investigative work for locating debtors and their assets could have been conducted by Ardent Recovery Group, Inc. who had an office adjacent to my law firm. They are no longer here, so, if you are not able to provide me with the correct corporate name and address of the debtor or it's principals as is needed so they may be served or contacted, then my office will attempt to use the resources of a database to locate debtors, obtain their correct names, and possibly their assets at a costs to your company of $50.00 per entity.

Your future efforts before you send my office debtors to collect against can, in most cases, make these investigations completely unnecessary. I believe it is crucial to your business that you obtain a credit application prior to making a sale or providing services, and that you make a photocopy of at least one of client's checks on a bi-monthly basis.

Credit Applications and Personal Guarantees tailored especially for your business can be prepared at a reasonable fee of $300.00 by my office upon your request.

I look forward to a continuing mutually beneficial relationship with you and your company.

Very truly yours,

Robert M. Reibstein

RMR/ckl

Date: _____


Robert Reibstein, Esq.
PO Box ☒ 465
Narberth, PA 19027


RE:    New Cases between $3,000.00 and $10,000.00

DEBTOR: _____
              (insert account name)

We select the following contingency fee:

_____    We are sending a non-refundable $250.00 check as a suit fee made payable to Robert
M. Reibstein, Esquire and he will handle the case on a flat 33.3% Contingency Fee
basis; or

## -OR-

_____    We are not sending and suit fee now and you will handle the case on a contingency fee
basis as follows: 25% if you can obtain a lump sum settlement payment before suit is
instituted; 33-1/3% if you obtain periodic payments on account before suit is
instituted; 40% if suit is instituted; and 50% if execution is commenced after
judgment.

We are sending this letter to you indicating the contingency fee option we have chosen, and a check for
a separate suit fee in the sum of $250.00 if applicable.


_____
Signature

Date: _____


Robert Reibstein, Esq
PO Box ~~637~~ 485
Narberth, PA 19027


**RE:**    <u>New Cases between $3,000.00 and $10,000.00</u>

**DEBTOR:** _____

(insert account name)


We select the following contingency fee:

_____    We are sending a non-refundable $250.00 check as a suit fee made payable to Robert
M. Reibstein, Esquire and he will handle the case on a flat 33.3% Contingency Fee
basis; or

### -OR-

_____    We are not sending and suit fee now and you will handle the case on a contingency fee
basis as follows: 25% if you can obtain a lump sum settlement payment before suit is
instituted; 33-1/3% if you obtain periodic payments on account before suit is
instituted; 40% if suit is instituted; and 50% if execution is commenced after
judgment.

We are sending this letter to you indicating the contingency fee option we have chosen, and a check for
a separate suit fee in the sum of $250.00 if applicable.

_____    6-9-13

Signature

2

M Gmail

robert.reibstein <robert.reibstein@gmail.com>

robert reibstein <robert.reibstein@gmail.com>

Tri-State update

**bert.reibstein** <robert.reibstein@gmail.com>
raft To ~~~~~~~~~~~~~~~~~~~~

Fri, Dec 10, 2021 at 11:15 PM

John ~~~~~~~~    Pe t a Reia

John, please excuse all of the spelling, punctuation, and typing errors in this long email. I am a one-finger typist who for most of my 45+ years of practice only had to dictate–not type. So..... when I do have to do something that goes to an attorney, or Judge I do have my temporary secretary–who is offsite–proofread and fix errors for me. She is away till Tuesday so you are getting an "unproofread e-mail. I'm going to start with the most important– biggest money case– I have left. I collected every ~~~~ Gus ever gave me to collect that the defendant was still in business. Glad to take any others you may now have. Please call me upon your receipt so I know it got to you. I still don't trust my emailing capabilities 100%

CO MAR/Mr. Burrito

ues involved

Danny and Sam who were born in Egypt but who are now US citizens, started the business of Taco Mar, Inc. at 314 High Street in West Chester as partners in a ~~~~urant but there was no written business agreement between them. Lease obtained previously by Sam for 314 High Street.

At that time Sam also owned a successful restaurant next door at 316 High Street. The 316 High Street restaurant was always owned by Sam, but he changes the ~~~~porate name from Reme Foods, LLC to Amore Pizza, WC, LLC because Sam has defrauded the USA for not paying taxes at a 3rd restaurant he owned. In 2017, the ~~~~ investigates, charges Sam and the US. attorney obtains a criminal guilty plea from Sam. Sam owes the govt. the $600,000.00 he stole plus he gets a $250,000.00 ~~~~. He pays the IRS the $600,000.00- He has to liquidate most of his assets to do so - so he won't go right to jail for the money he stole but the $250,00.00 fine still ~~~~ists.    That adjudication brands Sam as a Liar in every court in the USA for 10 years as per our statues.

3.    Sam and Danny are losing money at Taco Mar, Inc. and Sam wants to close the business, but Danny thinks it is still viable. They make a written termination ~~~agreement in November of 2018, that Sam has to reimburse Danny $157,000.00 as part of the money which Danny advanced and Sam was also to pay the bills owed by Taco Mar. Inc. Sam was to keep all the equipment and retained the rights to the lease. Danny got the good will earned, the name Taco Mar and their recipes. Sam was to pay all outstanding bills. Taco Mar at 314 High Street is to close for 1 month and reopen in a different name with Sam as sole owner. Taco Mar, Inc. is to take the name and move to a new location in West Chester to be run by Danny and his wife.

4.    In January of 2019, Sam opens the restaurant business he calls Mr. Burrito in the 314 High Street location. Sam defrauds creditors of Taco Mar, Inc., and doesn't pay them the money Taco Mar, Inc. owes and does more business with those naive companies of which Tri-State Paper (Reibstein's client) is one and Tri-State is owed money from purchases made before and after the name change. Sam gives creditors a new name of the restaurant that sells Mexican food as Mr. Burrito but never supplies a new corporate name. As well, in May of 2019, Reme/Amore at 316 High Street owes money(15K) to Tri-State Paper.



5. Sam stiffs Danny and so Danny sues him.

6. Sam stiffs Tri-state Paper for bills owed by both Reme/Amore/Amore Pizza, WC, LLC indiv. & t/a Taco Mar/ Mr. Burrito and Taco Mar/ Mr. Burrito. Sam gets sued by Tri-state naming Taco Mar, Inc., indiv. And t/a Taco Mar/Mr. Burrito and Amore Pizza WC, LLC indiv. & t/a Taco /Mr. Burrito on the new business Sam opens at 314 High St., called Mr. Burrito. (No one knows new corp. name of Mr. Burrito.) Sam Pays Tri-state that restaurants bills with checks from Amore Pizza WC, LLC effectively blending their business accounts.

7. Amore Pizza WC, LLC indiv.& t/a Taco Mar/ Mr. Burrito was also sued for the money owed by Taco Mar, Inc. for the product delivered to 314 High St. because that corporation paid part of Taco Mar, Inc's bills with their checks (in its prior corporate name)–I'll explain later- and some of Mr. Burrito's bills because it appears that Sam pays bills with checks from both corporation and the pleases.

8. November 8, 2019, Tri-state Paper gets default judgments against the 314 High St. businesses on invoicing from 2017-2020 for 19K and Reme/Amore at 316 High Street for 15K.

9. January of 2020, Tri-state Paper executes freezing Amore/Rene's checking accounts and levies upon the personal property at Amore/Reme at 316 High St. and against the personal property at Taco Mar, Inc. and Mr. Burrito at 314 High St.

10. Tri-state has its judgment against Taco Mar, Inc. which Tri-State's attorney, Reibstein, hadn't known moved because Taco Mar, Inc. never changes its registered corporate location with the Corporation Bureau in Harrisburg, PA State Department, so service at 314 High St. on a Mr. Burrito's employee was good service as against Taco Mar, Inc.

11. Sam can't run the business at Amore/Reme (316 High St.) with its checking account frozen, so Sam has to pay Tri-state for Amore/Rene's bill at 316 High Street one-half of the Taco Mar bills but says he won't pay Taco Mar/Mr. Burrito bill because he doesn't own that new business. He lies and states his nephew owns that new business so he shouldn't have to pay. Reibstein is unaware of Sam and Danny's agreement to split up 314 High St. Business. But Sam's nephew, now known as Ebrahim Saad, is a fiction made up to shield Sam. Tri-State's judgment against Reme/Amore at 316 High Street is satisfied.

12. Reibstein is notified by Danny's attorney of Danny's suit against Sam and a fraudulent counterclaim filed by Sam. That attorney who represents Taco Mar, Inc. and Danny named Wm. Shelven, informs Reibstein that Sam should pay the 314 High Street judgment. Knowledge of frauds committed by Sam is known by Sam's attorney, John Iannelli, of Media. He is a low-life who is a terrible lawyer and who defrauds the Court with misfiled petitions to strike "Action" and to stay the sale.

13. Since there is nothing in 314 High St. worth much money, Reibstein gets his client to stop from executing further on Reme/Amore's personal property at 316 and Taco Mar/ Reme/ Amore at Mr. Burrito's at 314 High St. and Taco Mar, Inc. at its new address until Danny and Sam's lawsuit is heard. The court will say which of them should pay Tristate. Their case is to be heard in June of 2020. However, Sam, Danny, and their attorneys are told by Reibstein that if their case is **not** heard by June of 2020, Tri-state is to be paid by Danny(Taco Mar Inc.) at a new address and Sam at Reme/ Amore over a period of 6 months on the remaining $15,000.00 owed ($2,500.00 a month for 6 months split evenly at $1,250.00 a month by each) however the judgment liens still exist against Taco Mar, Inc and fiction name of Taco Mar/Mr. Burrito and Reme/Amore, Inc., at both High Street addresses. Reibstein lets Sam and Danny each know "Don't pay then re-execution!" Since Reme/Amore's

checks were given to Tri-State to pay Taco Mar, Inc.'s bill, the lawsuit also has listed Amore Pizza WC, LLC, as a defendant in that name at 314 High Street and it is also the corporate name of the restaurant at 316 High Street.    Tri-State is always secured since Reibstein (Tri-State's) knows it gets that last 15k starting in 5 months or Reibstein can recommerce sales.

4.    In the meantime, unbeknownst to all, Sam sells the business that he opened at the old Taco Mar location, 314 High Street, right next store to Rene/Amore, and Reme/Amore restaurant as well.    The purchaser of Taco Mar/ Mr. Burrito paid $250,000.00 for that business even though it was a non-running business just because the buyer wanted to make sure that Sam didn't open up another pizza place next to Amore.    Sam was paid that $250,000.00 for that business that he owned called Mr. Burrito, LLC.    The sales agreement lists the seller as Mr. Burrito, LLC. using Sam's nephew's name as the principal and member/officer of Mr. Burrito, LLC.    The nephew as far as I've investigated doesn't even always live in the USA full time.    The buyer is named MSRB Mex, LLC.    The nephew is also used as a Money Mule to take un-taxed money to Egypt for Sam according to Danny. So, Sam was paid well in excess of 1.8 million dollars for what is Rene/Amore and gets 15K a month on a vote from the buyer.    **While the agreement of Sale between The Buyer, High Street Pie, LLC. and Rene Foods, LLC. a PA LLC, and Amore Pizza WC, LLC, a PA LLC they are listed together as "Seller". Ebrahim Saad, signs the agreement as an authorized member of both Rene Foods, LLC and Amore Pizza WC, LLC. However, the Secured Promissory Notes High Street Pizza and its Members, Matthew I. Lourick and Susan Lourick, husband and wife each sign only promising to pay Rene Foods, LLC or assigns.**

At that settlement Sam lied and said the judgment held by Tri-state was paid off. At the settlement of those restaurants, held contemporaneously, the buyer's attorney, Harry Karapalides, (on good terms with Reibstein) who had seen Tri-state's judgment lien against Amore Pizza WC, LLC individ/be and t/a Taco Mar/ Mr. Burrito didn't believe Sam for a moment.    However, whether Sam was lying or not there was a lien, so he insists it gets paid off and Karapalides has his buyer put $20,000.00 in escrow for Tri-state held by Sam's attorney, (another attorney who is used only for that sale of the two businesses by the name of John F. Thomas, Esquire.) until Sam has paid it off.

Two weeks later Sam goes to that attorney, whose office is in New Jersey, telling him he just paid off the judgment so the attorney can give Sam the $20,000.00. Sam's attorney, for the sales, John F. Thomas, (who must be a moron) believes Sam that the judgment has now been paid so he takes money from his Escrow Acct and gives it to Sam. (I think he is liable for malpractice action by business's buyer and Tri-State Paper Co., Inc.)

7.    Tri-state is not paid in June of 2020 and Sam also ignores Reibstein's calls. In August of 2020, Reibstein commences execution on Rene/Amore, Taco Mar, Inc., and Mr. Burrito's personal property at 314 High Street and Personal property at 316 High Street not knowing that Sam has sold both businesses last May of 2020.

8.    Sam's crooked attorney in the Danny/Sam case, John Innelli, files on November 6, 2020, an Entry of Appearance for "Amore Pizza and Mr. Burrito" in Tri-State's case against Taco Mar ~~who are not the names of any party to that action~~    and thereafter he files proper Motions to Dismiss/ Strike Tri-State Paper company's ~~ACTION and on an Emergency basis to stay a Sheriff Sale which the sheriff's records state it is to be held on November 19, 2020, in order to hold up personal property~~ ~~late on personal property in 314 and 316 High Street. A Chester County Common Pleas Judge, improperly, (1) because nothing filed by Innelli is done within Court~~ ~~rules; (2) Because Innelli does so without informing the Court he has known about the Judgment for 10 months; (3)without proper service on all parties and without~~ ~~telling the Court his true client. Sam, is not any named or mentioned defendant or is even the owner of any personal property. Innelli files those motions because Sam or~~ ~~Innelli gets notice from Harry Karapalides, Esquire, that no more payments are being made on the notes as the notes and Agreement of Sale say the payments can be~~ ~~stopped by the scheduling of the sale of the new owner's property.    So that is why on an Ex-Parte basis Innelli gets Judge Griffith to sign an order staying the Sheriff~~ sale of "THE DEFENDANTS" possessions – The possessions aren't owned by them The Order tells Tri-State to bring the matter to court if they want a sale.

19. It's in the middle of the pandemic, at that time Gus has already had Reibstein collect over $40,000.00 and doesn't want to pay Reibstein on an hourly basis which might cost him thousands of more dollars to get it straightened out in court so it's possible. Gus feels, that judgment will go unsatisfied. So instead of terminating work on the case, Reibstein tells Gus he has a plan which Gus approves, where he will agree to help Danny's attorney win his case and also agrees not to do sale that could be made on Taco Mar at Taco Mar, Inc.'s new location because Reibstein and Gus morally don't want to close up an innocent defendant's business. Reibstein knows when Danny wins the case and gets the money from Sam, that Danny will have the money to pay Tri-State (Reibstein feels Danny can't lose the case).

20. In the meantime, Sam gets money from Buyer each month on the note from Buyer.

1. Danny and Sam have their trial in February of 2021. Sam has admitted at trial that he has switched the shareholders of both businesses, at will, for no consideration, (whenever he wanted to or still wants to do so) -back and forth- into a relative's name who now owns those businesses (supposedly a nephew) to escape liability from the IRS who had a lien on Sam not only for a ton of money ($600,000.00) but also for a $250,000.00 fine. Sam, as mentioned earlier, has negotiated with IRS and liquidated most of his other assets to pay off the $600,000.00 in order to stay out of jail.

Judge finds for Danny and against Sam for $157,000.00. Judge states in a written decision that Sam is a pathological liar. Sam doesn't appeal and doesn't pay Danny. Sam tries to negotiate down the amount of the judgment, and Danny says no. Sam says fuck you and moves to Florida, where he supposedly is looking to buy restaurants. What to do?

Current situation- Danny has a $157,000.00 judgment against Sam that is not being paid. Sam sold Amore Pizza Lease and business and Taco Mar lease for almost 1.8 million settling in May of 2020, taking back a note from Buyer which pays him $15,000.00 a month with about 700,000.00 left unpaid. It is payable to the corporate entity, Reme Foods, LLC, which doesn't even exist anymore, which is a company that has used two corporate designations, Reme foods, LLC and Amore Pizza, WC, LLC, both formed by Sam but supposedly are now owned by Sam' nephew, Ebrahim Saad. I expect when Ebrahim Saad gets the Buyer's check each month he gives it to Sam. The checks are most likely mailed down to Florida to an address that the Buyers and current owners of High Street Pie, LLC, its principals, the Louricks have paid $15,000.00 each month. Obviously, Sam is again defrauding the IRS (I'll lay 10-1 on $1,000.00), and he not his nephew pay any income tax on the sale.

---

What Tri-State can do: 1. File a Motion before Judge Griffith, who improperly signed an Order staying our sale under our caption where the named Defendants are Amore Pizza WC., indiv. & t/a Taco Mar/ Mr. Burrito. Reibstein can serve John Innelli, Esquire, who wrongfully claimed he represented Taco Mar - so that service should be good against Sam- informing the Court that (a) the Mr. Burrito that Tri-State sued was really an LLC called Mr. Burrito, LLC; (b) there was no value paid by Mr. Burrito, LLC to Taco Mar, Inc, Sam or his nephew for the personal property that was located at 314 High Street so that it was a fraudulent transfer; Sam was served at at least the business at 314 High Street was served and a judgment was entered which has now over $16,000.00 still owed. We would have to serve a copy of the Motion on Taco Mar, Inc at their current address, but still with the same name but located a little bit away in West Chester; serve The Louricks as principals of High Street Pie, LLC. The Motion would request the Court to allow execution on our Judgment and Amend the caption on our case adding Mr. Burrito, LLC and Rules that we could execute on that corporation, Amore Pizza WC, LLC aka Reme Foods, LLC and High Street Pie, LLC so that we demand the balance of the judgment from them. They would have to pay us instead of Sam. If all else fails we could still have the Sheriff execute on Taco Mar, Inc.'s assets and get the money from them or put them out of business.

A lot of work, but it should get us the $16, 000.00 we are owed.  I would have to hope the Court wouldn't say that we had to start another whole suit naming Taco

Mar, Inc., Mr. Burrito, LLC., Sam, Sam's Nephew, Rene Foods, LLC., Amore Pizza WC; and High Street Pie, LLC and the sister company of the Louricks That

purchased the assets of Taco Mar/Mr. Burrito, LLC.  For the Motion, I would have to order certified copies of the Pleadings in the case of Danny vs. Sam, and the notes

of testimony from that trial. My fee would be a flat fee of $2,000.00.  Why so low-because I would in some respect be representing myself to earn the 1/3rd fee I'd earn

from the unpaid balance. of $16,000.00. Under a new suit for fraud we would ask for Tri-State's legal fees, but the Judge doesn't have to give them to us.  I would fuck

Item all - especially Sam by inviting  The IRS to attend the trial¹, try and negotiate and make a claim for a reward from the tax money I know Sam hasn't and won't pay

in the future in the 1.8 million.  That's a long shot.  I'd split that $ with Tri-State. A real long- shot but possible.

We could get lucky and when a hearing date is set, Sam might decide to pay us right away when I inform his attorney the IRS/USA will be there.  The only other

expense would be the motion costs (under $200.00) the service costs (should be under $300.00) and the transportation costs for me to get to West Chester once or twice

being possibly a $200.00 round trip unless you can drive me there and watch the show.  Tri-State's expense would be around $3,000.00 in fees and costs unless we had

to pay possibly $1,000.00 more for certified copies of Danny vs. Sam's notes of Testimony being transcript and the judge didn't add that amount as the costs or fees to

our judgment balance.  Tri-State's motive for putting up 3 or 4 thousand dollars would be in trying to get back its share of the judgment balance being just over 10K net.

John, this took me 3 hours to write up for you. No charge.  Gus knew all these facts because he'd lived it with me. You needed to be brought up to speed. Gus

want to spend any money because he wasn't sure Danny would win. I knew he would, and he did. Gus is gone. I'm so sorry for your loss. I enjoyed arguing back

forth with Gus and both of us trying to plan the best way to go after his deadbeats. Did you find my contingent fee agreement and the credit applications and

sonal guarantees? I enclosed a copy of the fee agreement if you couldn't find it in Gus's papers.

at Store

_____

debtor owes $7,550.00.  We sued and the owner filed an answer that lied and said that Gus promised to give him rebates that would net out our debt.  A lie and he has no written proofs nor were any credits ever given on his invoicing.  But Gus isn't

to rebut the oral testimony.  However right now, they probably don't know Gus is dead.  Anyway, I filed a Request for Production of Documents and Interrogatories (written questions that Defendant has refused to answer.  Just like the last 6th going.

will file a Motion to Compel and then for Sanctions and get the Court to give us the Judgment without an Arbitration or Trial,  I'd do that immediately.  Gus and I figured let's wait till people are having guests and barbecuing again hoping this lesser

ill be in business.  I'll check tomorrow, Saturday, and see if he still is open.  If so I'll tie the Motion

Gene's Back oven Pizza and Mohamed Kotdi.

_____

this piece of scum owed Tri-state $4,170.96.  I'd sued him before for Cedar Farms.  We had to go to court 4 times to get a Judgment.  The store had closed down but we did get the Judgment against him.  He left last November for Syria.  I'll see if he got

luck and if he did and opened another place, I can try and do a Sheriff's sale there.

bhi's Pizza.  We got a Judgment not for Bar & K two years ago.  He fraudulently transferred the business to his brother and changed the place's name.  We had a bad check for $450.00.  He offered $200.00 for a release.  Gus wanted to sometime. fuck up

this business and said no.  But pandemic came. I'll check on Saturday to see if he is still open. I'll let you know.  Probably uncollectable.

HAT'S IT.  Bob Rrobcom 61o456-0930


 

Reply          Forward

M Gmail

robert reibstein <robert.reibstein@gmail.com>

## Case updates

1 message

**Robert reibstein** <robert.reibstein@gmail.com>
To: petaccio228@gmail.com

Mon, Dec 13, 2021 at 3:05 PM

To John, Attached was my 1st email. Please call me at 610-656-6920 to tell me I finally got it to you! Thanks Bob rEIBSTEIN, eSQUIRE 610-656-6920

📄 **PETACCIOPETACCIO.pdf**
6794K

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

# Robert M. Reibstein, Esq.

ATTORNEY AT LAW
ADMITTED PA & NJ BARS

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.CC

December 24, 2021

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

John Pistachio
Tri-State Paper co., Inc.
4500 N. 3rd Street
Philadelphia, PA 19140

December 24, 2021

RE: Taco Mar

Dear John,

I haven't heard from you on this matter. If I don't hear from you within 7 days I will replace this file into my Uncollectable Filing System.

I await your reply.

Very truly yours,

Robert M. Reibstein, Esquire

≡

M Gmail

Compose

Q  john petaccio28@gmail.com          ×          🔅          Active ∨          ⊙    ⚙    ⠿

Inbox                          22

Starred

Important

Sent                           3

Drafts

All Mail

More

**Labels**

**[Gmail]**

@SaneBlackHole          1

🖂

# Re: Case updates

9 of 10          ⬚    ⬀

🙂  **robert reibstein** <robert.reibstein@gmail.com>          Fri, Feb 4, 2022, 1:37 PM

to petaccio28

Please read all to decide on what I should do on Taco Mar. If you want to proceed you need to do so by next week or
I shall close the file.  On that basis, I  will feel free to contact Taco Mar's attorney to see if they want my services.
Once I do that you will need another attorney if you ever want to pursue it.  Please decide immediately as I have
been waiting since September when Gus was supposed to have made his decision.  Thanks.  Then read what my
fees are for what amounts of collections may be needed.  If I would receive at least 20 new accounts from you my
initial fee % would be reduced to 15% be it a lump sum or an agreed-upon payment plan.  Therefore, if My letter
gets their attention and the matter never needs to be sued then your loss is minimal. Patty or you can look at the
customer list and see who hasn't purchased or paid within 30 days you can decide to give the matter to me or go out
yourself.  Please remember that they have to be dealt with first.  If they haven't purchased since Gus passed away
you will probably find out they need a lawyer's attention.  Any account over 10 K should be dealt with immediately by
you.  Believe it or not, every day you delay you are out of sight and memory and you probably will need to force their
hand.

◥ Gmail

robert reibstein <robert.reibstein@gmail.com>

## wd: Case updates
message

**robert reibstein** <robert.reibstein@gmail.com>

To: richardwhoy@yahoo.com

Tue, Mar 1, 2022 at 5:07 PM

Richard, Please see attachments

--------- Forwarded message ----------
From: **robert reibstein** <robert.reibstein@gmail.com>
Date: Fri, Feb 4, 2022 at 1:37 PM
Subject: Re: Case updates
To: <petaccio28@gmail.com>

Please read all to decide on what I should do on Taco Mar. If you want to proceed you need to do so by next week or I shall close the file. On that basis, I will feel free to contact Taco Mar's attorney to see if they want my services. Once I do that you will need another attorney if you ever want to pursue it. Please decide immediately as I have been waiting since September when Gus was supposed to have made his decision. Thanks. Then read what my fees are for what amounts of collections may be needed. If I would receive at least 20 new accounts from you my initial fee % would be reduced to 15% be it a lump sum or an agreed-upon payment plan. Therefore, if My letter gets their attention and the matter never needs to be sued then your loss is minimal. Patty or you can look at the customer list and see who hasn't purchased or paid within 30 days you can decide to give the matter to me or go out yourself. Please remember that they have to be dealt with first. If they haven't purchased since Gus passed away you will probably find out they need a lawyer's attention. Any account over 10 K should be dealt with immediately by you. Believe it or not, every day you delay you are out of sight and memory and you probably will need to force their hand.

On Mon, Dec 13, 2021 at 3:05 PM robert reibstein <robert.reibstein@gmail.com> wrote:
To John, Attached was my 1st email. Please call me at 610-656-6920 to tell me I finally got it to you! Thanks Bob rEIBSTEIN, eSQUIRE 610-656-6920

3

ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS

P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.C

March 10, 2022

Mark Guarnere, President
Ti-State Paper co., Inc.
4500 N. 3rd Street
Philadelphia, PA 19140

For Professional Services Rendered

Dear Mark,

As per our telephone call this morning I am sending you my bill for services rendered relative to the 3 hour meeting in your offfice wit-h the Pitacchios and letters you asked me to prepare for Tri-State to handle its collections – in house.

Please call upon me if all does not go well without legal representation.

Very truly yours,

Robert

Robert M. Reibstein, Esquire

----------------------------------------------------------------------------------------------------------------------

Three hour meeting at Tri-State :   Courtesy fee at $200.00 per hour          $600.00

Preparation of letters to customers and telephon calls  with client
 2 hours 15 min.  Fee at $275.00 per hour                                                    $618.75
                                                                                        Total          $1,218.75

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR



≡ **M** Gmail

Q mark guarnere    ✕    ⩩    Active ∨    ⊙    ⚙    ⠿

**Compose**

22

Mail

Chat

**Inbox**    22

Starred

Important

Sent

**Drafts**    3

All Mail

More

**Labels**

**[Gmail]**

@SaneBlackHole    1

Company's demand letters    13 of 13

🫠    **robert reibstein** <robert.reibstein@gmail.com>    Thu, Mar 3, 2022, 9:12 PM    🔿 🔗

to markguarnere

Dear Mark,

Please find attached two letters that should take care of the company's contact with them at this time. I suggest you talk to the salesman-as long as it is not Tom A- to get the low down if they know, also get the owner or president's name. Definitely get a photocopy of one of the checks they paid us with previously. Patty can get them. Any thoughts or questions please call me. I was in House general counsel for Century Seafoods, Inc. in the mid 80's and I gave my private practice to become in-house General Counsel for Cedar Frams Inc from 2009-2018. they each did over 150 million in sales a year.. I did collections for the entire Philadelphia Produce Credit Bureaus -the 30 biggest fruit and produce companies in Phila. and over 40 other food purveyors in Philly and South Jersey. From what my office could conclude, I have sued more restaurants than any other Atty. in the USA.. They pay or I sue and then they pay the Judgment or I sell their assets and if needed, put them out of business.

Patty probably remembers what documents I need to start a file. Sometimes investigation needs to be



M Gmail

🔍 mark guarnere

✕  ⫶⫶  Active ⌄  ⓘ  ⚙  ⋮⋮⋮

Compose

12 of 13

Inbox    22

Starred

Important

Sent

Drafts    3

All Mail

More

**Labels**

**[Gmail]**

@SaneBlackHole    1

...ou's and I gave my private practice to become in-house General Counsel for Cedar Farms Inc from 2009-2016. they each did over 150 million in sales a year.. I did collections for the entire Philadelphia Produce Credit Bureaus -the 30 biggest fruit and produce companies in Phila. and over 40 other food purveyors in Philly and South Jersey. From what my office could conclude, I have sued more restaurants than any other Atty. in the USA. They pay or I sue and then they pay the Judgment or I sell their assets and if needed, put them out of business.

Patty probably remembers what documents I need to start a file. Sometimes investigation needs to be performed if no credit appl. is available. Did you see my long letter to John. I need answers on what to do on the cases where we haven't been paid or in full where I had gotten judgments and Gus never gave me final go aheads. Please call me to confirm receipt. Thanks. Bob R. 610-656-6920

**One attachment** • Scanned by Gmail

📄 TRISTATEGUARN...

THIS LETTER SHOULD BE USED WHEN THE CUSTOMER IS NO LONGER BUYING AND HASN'T PAID IN OVER 30 DAYS. If they will pay all now and If they are going to start buying again and keeping to terms there may not be an entree to request they now sign a credit application and personal guarantee. If they want to make payments on account on balance now due, then you can decide that so long as they start buying again and they pay COD for new purchases until they are back on terms they may do so, but they now also need to sign the credit application and personal guarantee. Both husbands and wives must sign the personal guarantees or they are virtually worthless!

Current Date

Name of individual if known
Name of company's
Address of company

RE: Your account No.:

Dear_____

Please be advised I am the new President of Tri-State Paper Company, Inc., of Philadelphia, PA. You are likely aware that our company's past president and managing director, Gus Pataccio, quite unexpectedly passed away last October. At this time, upon review of our accounts I have noticed your account is severely overdue on what was indicated as having been granted credit terms of _____. From your account's review I am also made aware you have not purchased product from our company since _____

At this time your account must be brought current as we are directed to demand by the bank which is our secured creditor. I am not sure of the reason your business has not paid our rightfully due invoicing and is no longer buying products it had used and purchased from our company, however, if you would please call me upon receipt of this correspondence we can discuss your company's circumstances and ability to pay the outstanding amount due of $_____ . Hopefully, the restart of your previous purchasing requirements and keeping to payment terms will also be discussed.

I look forward from hearing from you so that our business relationship may remain amicable. Alternatively, should I not hear from you within seven (7) days from the date hereof, I will have to assume you are for some reason refusing to pay our company's overdue and unpaid invoicing. In that case this matter will be refereed to our legal counsel for resolve. Hopefully that will not be necessary. I enclose herewith a copy of your Statement of Account.

Very truly yours,

Mark Guarnere, President.

Because Gus allowed customers to go over terms without confronting them

THIS LETTER MAY BE USED WHEN A CUSTOMER IS OVER THE CREDIT TERMS SHOWN,
IS STILL PAYING ON THE STATEMENT OF ACCOUNT AND BUYING BUT YOU WANT THEM
BACK ON TERMS. If they want the longer terms they now have taken unilaterally and that amount of
days is not more than 30 days or month to month by the 10th of the next month then entree is provided
for  you to request they sign a credit application and personal guarantee.

Current Date

Name of individual if known
Name of company's
Address of company

RE: Your account No.:

Dear_____

        Please be advised I am the new President of Tri-State Paper Company, Inc., of Philadelphia, PA.
You are likely aware that our company's past president and managing director, Gus Pataccio, quite
unexpectedly passed away last October. At this time, upon review of our accounts I have noticed your
account is severely overdue on what was indicated as having been granted credit terms of _____.

        At this time your account must be brought current as we are directed to request  by the bank
which is our secured creditor.  I am not sure of the reason your business has not paid our rightfully due
invoicing meeting the agreed upon credit terms, however, if you would please call me upon receipt of
this correspondence we can discuss your company's circumstances and ability to pay the overdue
outstanding amount due of $_____ while  bringing the account back to its given credit terms.

        I look forward from hearing from you so that our business relationship may remain amicable.  I
enclose herewith a copy of your Statement of Account.

                        Very truly yours,

                        Mark Guarnere, President.

4

# Robert M. Reibstein, Esq.
### ATTORNEY AT LAW
### ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.COM

Tri-State Paper Company

October 24, 2023

# FOR PROFESSIONAL LEGAL SERVICES

Legal research on Notice To Cease and Desist  relative to Covenant Not To Compete as requested by John and thereafter by Tom on October 24, 2023.

1 ½ hours ……………………………………….Fee at $275.00 per hour……..$412.50

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR



robert reibstein <robert.reibstein@gmail.com>

## Re: Tri-State vs. Amore Pizza WC, LLC indiv. and t/a Taco Mar/Mr. Burrito, Elam Salah, John F. Thomas, Esquire and MSRB Mex, LLC and General accounts

1 message

**robert reibstein** <robert.reibstein@gmail.com>
To: Markguarnere@tri-statepaperco.com, petaccio28@gmail.com, mark@tri-statepaper.com

Mon, Aug 22, 2022 at 4:52 PM

On Mon, Aug 22, 2022 at 4:25 PM robert reibstein <robert.reibstein@gmail.com> wrote:

Dear Mark:

As per our conversation of last Saturday, please find enclosed herewith two attorney Escrow checks in the sums of $5283.33 and $3,483.33 on the matter vs Taco Mar, Inc. representing payment in full from them where there still remains a balance due on the judgment against Amore Pizza WC, LLC and. & t/a Taco Mar /Mr. Burrito in the principal sum of $10,637.00 plus costs of $646.00 and record interest of $1,067.03 and which continues at $1.79 per day from August 21, 2022. That is all Tri-State will be paid from the contents of this letter if Tri-State does not choose to go forward in a new lawsuit against Amore Pizza WC, LLC ind. & t/a Taco Mar/Mr. Burrito, Esam Salah, John F. Thomas, Esquire, and MSRB Mex for what at least should be $12,000.00.

Taco Mar, Inc., would be entitled to recover all sums in excess of that $12,000.00 that we collect until they have received back the $7,900.00 they paid you. Deducted from 2/3rds of $7,900.00 is the sum of $250.00 I am owed from the case I filed suit against The Meat Store for what I remember was a principal debt of 6 or 7 thousand dollars which has been declared to be written off on your books as that business folded up because of Covid 19 after I had commenced and proceeded with extensive litigation. Gus chose not to forward that sum as a suit retainer choosing a higher % age of fees when we collected. Please see a copy of the letters attached to my fee letter. Additionally, I have deducted the sum of $1,500.00 as a nonrefundable retainer and the sum of $300.00 as expected costs in the suit to be filed in CCP Chester County to enforce collection of the aforementioned $12,000.00 from those named defendants. My fee would further be 1/3rd of all money collected on our judgment balance.

Accordingly, upon receipt of this email and an affidavit to be signed by you as President of Tri-State, please sign the attached copy and place it in the mail to me along with the check in the sum of $5,283.33. If you have decided not to proceed on the Taco Mar debt any further then please return my other check in the sum of $3,483, and the signed affidavit will not be needed. It is agreed that I will be talking only to you and Patty if you choose to go further.

If you have any questions, please feel free to call me.

Very Truly Yours,

Robert M. Reibstein, Esquire

Enclosures:
Cc: John Pettaccio
P.S. I understand you are going to have the appropriate check picked up at my office. Therefore I haven't taken the time to write out the two checks as you will only receive the check of your choice and an affidavit to be signed if necessary. My street address is 1001 City Avenue Unit WB 1011, Wynnewood, PA 19096.

Dear Mark,

and 2nd letter to Mark

As per our conversation on Saturday I explained to you the reason I had not forwarded an earlier letter such as the 1st letter presented to you today. As I explained, the relationship between John Petaccio and myself is fatally strained. He did not respond to my letter to him from March where I spent the weekend getting out a letter to him that he said was urgently needed when he informed me Gus had died the previous October or November. Since that time on 6 occasions John has stated he was at that time sending me information to proceed with at least 1 large matter to collect and the other matters which needed collection. He has on every occasion failed to proceed as he stated when he initiated the calls on 5 of those occasions. He has sent me nothing.

I'm sorry to say it just this way but professionally "I don't push rope." So if Tri-state wishes me to collect its overdue accounts that are more than 30 days overdue. I will need a copy of your company's last check or different checks it received, if that was the case, along with a Statement of Account and a Statement showing all purchases and payments made by your customer from at least the last time they had a zero balance due. Also, I would need one of the appropriate fee agreements you would choose which were attached to my letters to my letter to you of several months ago.

I have enjoyed the mutually beneficial professional relationship I had with Gus which will continue with Patty and yourself but unfortunately, I choose not to proceed with John on any matters. I read it as a fatal lack of motivation on the overdue accounts by John or that he has more urgent and important things to accomplish than expeditiously collecting overdue invoicing.

Very Truly Yours,

Robert M. Reibstein, Esquire

≡  **M** Gmail

🔍 john petaccio28@gmail.com                    ✕    ⋮⊤        Active ∨    ⊙  ⚙  ⠿

Mail

Chat

20

Compose

Inbox                20

Starred

Important

Sent

Drafts               3

All Mail

More

**Labels**

[Gmail]              1

@SaneBlackHole

**RE: Tri-State vs. Amore Pizza WC, LLC indiv. and t/a Taco Mar/Mr. Burrito, Elam Salah, John F. Thomas, Esquire and MSRB Mex, LLC and General accounts**   Inbox ×

2 of 10    ⏏  ☒

**Mark Guarnere** <mark@tri-statepaperco.com>          Mon, Aug 22, 2022, 7:07 PM

to me

Hello Rob,

As per our conversation I would like to stop by your office tomorrow and pick up the check. What is a good time to stop by?

Thanks much,

*Mark Guarnere*
*President*

August 23, 2022

Mark Guarnere, President of Tri-State Paper Company

Hand delivered.

RE: collection accounts

Dear Mark:

This is to confirm that by mutual agreement I shall no longer represent the interests of your company. I was left with 3 active cases when Gus passed. They are as follows:

1. Taco Mar, Inc. there remains an uncollectable judgment against the other defendant Amore Pizza WC, LLC in the amount of $10,637.00 plus costs of $646.00 and record interest to date in the sum of $1,067.03. That defendant was sued because the co- mingled assets with Taco Mar, Inc. Our judgment was to be satisfied by the purchaser of Amore Pizza as $20,000.00 was placed in Escrow so that that corporations personal property could be purchased without a sheriff's lien. However the principal of Amore Pizza lied to his attorney that the judgment had been paid and was given the money. The Statute of Limitations will cause that possibility to sue the old owner, the new owner and the old owners attorney if you do not have an attorney sue them all by November6, 2022. I have collected $7,900.00 and so your 2/3rds is $5,266.67. I am deducting a $250.00 uncollectible suit fee on the Meat Store matter and presenting you with a check in the sum of $5,016.67.
2. Meat Store  The litigation on this matter has ceased as the defendant closed its business during the Covid 19 Pandemic. $250.00 was owed to me as an unsuccessful suit fee.
3. John's Pizza- We have a judgment against this defendant for a little less than $3,000.00. I was given costs to Sheriff Sale their personal property. I can still attempt to collect the judgment or you can choose a different attorney to proceed and I will turn over the file to him for an attempt to sell the business's assets.

The Taco Mar, Inc. file is stored by me and if you or another attorney want it you may claim it until November 6, 2022, when you must pick it up or it will be destroyed. The Meat store file may be picked up until November 6th 2022, or it will be destroyed. The John's Pizza case can be picked up until November 6, 2022 or it will be destroyed.

Thank you for your cooperation.

Very truly yours,

Robert M. Reibstein, Esquire



## Re: collections

1 message

**Thomas Phelan** <tphelan@tristatepaperco.com>
To: robert reibstein <robert.reibstein@gmail.com>
Cc: "john@tri-statepaperco.com" <john@tri-statepaperco.com>, John Petaccio <jpetaccio@tristatepaperco.com>

Fri, Oct 6, 2023 at 10:21 AM

Mr. Robert Reibstein,

Please see the signed attached legal collections contract. I will be sending you over Corrine's Place today. They owe almost $10,000. They are a busy fully functioning reputable business today in Camden, NJ. I hope you can collect our money here. Thank you.

Respectfully,

Thomas Phelan
CEO / President

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140
Office: 215-455-4506
Fax: 215-455-4509
Email: tphelan@tristatepaperco.com
www.tristatepaperco.com

---

**From:** robert reibstein <robert.reibstein@gmail.com>
**Sent:** Tuesday, October 3, 2023 2:19 PM
**To:** Thomas Phelan <tphelan@tristatepaperco.com>
**Subject:** collections

Dear Tom,  Hopefully you have it now.

---

2 attachments

M Gmail

robert reibstein <robert.reibstein@gmail.com>

**Fwd: Scarpinatos Cucina - Outstanding Balance $7,124.04**

message

**robert reibstein** <robert.reibstein@gmail.com>
To: Me <robert.reibstein@gmail.com>

Thu, Dec 7, 2023 at 2:00 AM

Sent from my iPhone

Begin forwarded message:

**From:** Thomas Phelan <tphelan@tristatepaperco.com>
**Date:** October 6, 2023 at 4:20:12 PM EDT
**To:** robert reibstein <robert.reibstein@gmail.com>
**Subject: Re: Scarpinatos Cucina - Outstanding Balance $7,124.04**

I understand- I'll send over Monday. Thank you and have a great weekend!

---

**From:** robert reibstein <robert.reibstein@gmail.com>
**Sent:** Friday, October 6, 2023 3:36:35 PM
**To:** Thomas Phelan <tphelan@tristatepaperco.com>
**Subject:** Re: Scarpinatos Cucina - Outstanding Balance $7,124.04

Tom, I need the same things for this account as I need for Corrines . If you don't understand ,please feel free to call upon me at 610-656-6920. bob

On Fri, Oct 6, 2023 at 3:01 PM Thomas Phelan <tphelan@tristatepaperco.com> wrote:

Mr. Robert Reibstein,

Please see attached. All invoices attached. This was one of Mark's Customers that stop paying us the day Mark was let go August 14, 2023. They have an outstanding balance of $7,124.04 and no longer order from TriState Paper.

Scarpinato's Cucina
194 Fries Mill Rd
Turnersville, NJ 08012
(856) 352-2010



**Tri-State Paper Co.**
Paper · Foam · Janitorials

*Tri-State Paper Co.*
*149 e, church st.*
*Blackwood, NJ 08012*
*215-455-4506*

**Account Activity**
Page 1 of 1
*30-Nov-2022*

| Customer |
| --- |
| CORINNE'S PLACE |
| 1254 HADDON AVENUE |
| |
| CAMDEN, NJ 08103 |

| CORIN100 Account Summary | |
| --- | --- |
| Balance on 1-Nov-2022 | $8,420.09 |
| Payments, Credits (-) | $3,500.00 |
| Purchases, Charges (+) | $4,390.80 |
| Balance on 30-Nov-2022 | $9,310.89 |

| Trans Date | Transaction Description | Charges | Payments |
| --- | --- | --- | --- |
| 9-Nov-2022 | Invoice 2027269 | $1,598.18 | |
| 10-Nov-2022 | Check 1462; Paid 2025823,2026055, | | $3,016.70 |
| 10-Nov-2022 | + 2026215 | | |
| 10-Nov-2022 | Check 1462; OverPayment | | $483.30 |
| 16-Nov-2022 | Invoice 2027474 | $75.58 | |
| 17-Nov-2022 | Invoice 2027445 | $1,157.78 | |
| 18-Nov-2022 | Invoice 2027489 | $1,559.26 | |

M Gmail

robert reibstein <robert.reibstein@gmail.com>

**Fwd: Corrines Place Check Copies**

1 message

**robert reibstein** <robert.reibstein@gmail.com>                                     Thu, Dec 7, 2023 at 1:59 AM
Bcc: robert.reibstein@gmail.com

Sent from my iPhone

Begin forwarded message:

**From:** Thomas Phelan <tphelan@tristatepaperco.com>
**Date:** October 10, 2023 at 2:13:09 PM EDT
**To:** robert reibstein <robert.reibstein@gmail.com>
**Subject: Corrines Place Check Copies**

Corrines Place Check Copies

Respectfully,
Thomas Phelan
CEO / President

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140
Office: 215-455-4506
Fax: 215-455-4509
Email: tphelan@tristatepaperco.com
www.tristatepaperco.com

# Gmail

robert reibstein <robert.reibstein@gmail.com>

## Fwd: Corrine's Place Customer Statement

1 message

**robert reibstein** <robert.reibstein@gmail.com>                                    Thu, Dec 7, 2023 at 1:59 AM
To: Me <robert.reibstein@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** Thomas Phelan <tphelan@tristatepaperco.com>
**Date:** October 12, 2023 at 12:21:51 PM EDT
**To:** robert reibstein <robert.reibstein@gmail.com>
**Cc:** john@tri-statepaperco.com
**Subject: Corrine's Place Customer Statement**

See Attached.

Respectfully,

Thomas Phelan
CEO / President

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140
Office: 215-455-4506
Fax: 215-455-4509
Email: tphelan@tristatepaperco.com
www.tristatepaperco.com

Corrine's Place Customer Statement 10-12-23.pdf
213K

October 12, 2023

Corinne's Place Holding, LLC ,
Corinnes Place Catering, LLC ,
Corinne's Place, Inc., and
Corinnesplace, LLC
1254 Haddon Ave.
Camden, NJ 08103

RE:  Tri-State Paper Company, Inc. vs. Corinnes Place Holding, LLC , Corinnes Place Catering,L LC,
      Corinne's Place, Inc., and Corinnesplace, LLC

Gentlemen and Ladies:

        Please be advised I have been retained to represent the interests of Tri-State Paper Company,
Inc. of Philadelphia, Pennsylvania in reference to the above captioned matter.  I have elicited a
factual situation from my client wherein you have repeatedly failed or refused to pay the balance
due of $9,794.19 due for paper products sold and delivered to you evidenced by invoicing dated
between September 28, 2022 through November 18, 2022, and upon which you last made payment
on October 17, 2022, as set forth on a Statement of Account of which I enclose a copy thereof.
        Accordingly, unless my Pennsylvania law office receives your check or money order in the
sum of $9,794.19 within 7 days of the date of this correspondence – or amicable arrangements for
payments are made with the undersigned within that time frame while securing my client – I am
directed to institute litigation to secure your debt by way of Judgment. That Judgment will include
addition sums including statutory interest and attorney fees. Should that be necessary, when a
Judgment is entered, I am directed to immediately satisfy that judgment through the office of the
Sheriff of Camden County, NJ. By order of the court,  I would have them levy upon all personal
property located at your premises and sell same at auction until enough money has been taken in by
the Sheriff to satisfy the Judgment and the Sheriff's poundage (fees) Further, I will have that office
post a Deputy Sheriff at your cash register to garnish and remove all money that comes into your
business until the judgment is satisfied.  If that procedure puts you out of business, then so be it.
        This will be the only correspondence you receive from the undersigned before litigation will
be instituted.   You may govern yourself accordingly.  I urge you to meet your financial obligations
saving yourself statutory attorney fees, interest, count costs and Sheriff's fees through you calling
me upon your receipt hereof in  order to resolve this matter amicably

                        Very truly yours,

                        Robert M. Reibstein, Esquire

Enclosure:

M Gmail

robert reibstein <robert.reibstein@gmail.com>

## Scarpinatos Cucina - Outstanding Balance $7,124.04
1 message

**Thomas Phelan** <tphelan@tristatepaperco.com>                                    Fri, Oct 6, 2023 at 3:01 PM
To: robert reibstein <robert.reibstein@gmail.com>
Cc: "john@tri-statepaperco.com" <john@tri-statepaperco.com>

Mr. Robert Reibstein,

Please see attached. All invoices attached. This was one of Mark's Customers that stop paying us the day Mark was let go August 14, 2023. They
have an outstanding balance of $7,124.04 and no longer order from TriState Paper.

Scarpinato's Cucina
94 Fries Mill Rd
Turnersville, NJ 08012
(856) 352-2010

Scarpinato's Cucina
94 Fries Mill Road
Blackwood, NJ 08012
(856) 352-2010

Respectfully,
Thomas Phelan
CEO / President

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140
Office: 215-455-4506
Fax: 215-455-4509
Email: tphelan@tristatepaperco.com
www.tristatepaperco.com

M Gmail

robert reibstein <robert.reibstein@gmail.com>

## Corrine's Place Customer Statement

1 message

**Thomas Phelan** <tphelan@tristatepaperco.com>
To: robert reibstein <robert.reibstein@gmail.com>
Cc: "john@tri-statepaperco.com" <john@tri-statepaperco.com>

Thu, Oct 12, 2023 at 12:21 PM

See Attached.

Respectfully,
Thomas Phelan
CEO / President

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140
Office: 215-455-4506
Fax: 215-455-4509
Email: tphelan@tristatepaperco.com
www.tristatepaperco.com

📄 **Corrine's Place Customer Statement 10-12-23.pdf**
213K

Robert M. Reibstein, Esq.
ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS

P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.COM

October 25, 2023

Scarpinatos Catering, LLC,
Scarpinato's Cucnia and Catering, LLC., and
Scarpinato's, Inc.
194 Fries Mill Road
Blackwood, NJ 08012

RE: Tri-State Paper Company, Inc. vs. Scarpinato Catering, LLC, Scarpinato's Cucina and Catering, LLC., and Scarpinato"s Inc.

Gentlemen and Ladies:

Please be advised I have been retained to represent the interests of Tri-State Paper Company, Inc. of Philadelphia, Pennsylvania in reference to the above captioned matter. I have elicited a factual situation from my client wherein you have repeatedly failed or refused to pay the balance due of $7,124.04 due for paper products sold and delivered to you evidenced by invoicing dated between June16, 2023, through August 11, 2023, as set forth on a Statement of Account of which I enclose a copy thereof.

Accordingly, unless my Pennsylvania law office receives your check or money order in the sum of $7,124.04 within 7 days of the date of this correspondence – or amicable arrangements for payments are made with the undersigned within that time frame while securing my client – I am directed to institute litigation to secure your debt by way of Judgment. That Judgment will include addition sums including statutory interest and attorney fees. Should that be necessary, when a Judgment is entered, I am directed to immediately satisfy that judgment through the office of the Sheriff of Camden County, NJ. By order of the court, I would have them levy upon all personal property located at your premises and sell same at auction until enough money has been taken in by the Sheriff to satisfy the Judgment and the Sheriff's poundage (fees) Further, I will have that office post a Deputy Sheriff at your cash register to garnish and remove all money that comes into your business until the judgment is satisfied. If that procedure puts you out of business, then so be it.

This will be the only correspondence you receive from the undersigned before litigation will be instituted. You may govern yourself accordingly. I urge you to meet your financial obligations saving yourself statutory attorney fees, interest, court costs and Sheriff's fees through you calling me upon your receipt hereof in order to resolve this matter amicably

Very truly yours,

Robert M. Reibstein, Esquire

Enclosure:

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

Scapinatos Cucina STristate P2310061212O.pdf
3339K

8

**Robert P. Reibstein, Esq.**
ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

PHONE **(610) 656-6920**
FAX **(610) 649-6491**
EMAIL. **ROBERT.REIBSTEIN@GMAIL.**

October 4, 2023

Tom Phelan, President
Ti-State Paper Company, Inc.
4500 N. 3rd Street
Philadelphia, PA 19140

    RE: For Professional Services Rendered

1. Requested attempt to obtain legal counsel to handle violation o Covenant Not to Compete against Mark Guarnere. Additionally thefts and forged checks by Mark Guarnere. As requested by John Patacchio. Three call with client's principal. Review of documentation. Telephone calls with Samuel Stretton, Esq.    1 Hour 45 min. Fee at $275.00 per hour ………...$481.25

2. Requested attempt to obtain proper public adjuster for water damage to building. Requested by John Petacchio and Tom Phelan. Telephone calls with requestors and Larry Rosen, Metro Adjuster company.    1 hour 20 minutes   fee at $275 per hour………………………….$366.66

    Total  $847.91

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

# COVENANT NOT TO COMPETE

For good and valuable consideration that is acknowledged, the undersigned, _MARK Guarner_, "Employee", shall not engage in a business in any manner similar to, or in competition with, _Tri-State Paper_, "Company" during the term of his or her employment.

Furthermore, the Employee shall not engage in a business in any manner similar to, or in competition with, the Company's business for a period of _One ( 1 )_ years from the date of termination of his or her employment with the Company in the geographical area within a _Seventy Five (75)_ mile radius of any office of the Company, and the geographical area within a _Seventy Five (75)_ mile radius of the Employee's home address.

For the purpose of this agreement, the Employee shall be regarded as engaging in a "business in any manner similar to, or in competition with, the Company's business" if, directly or as an independent contractor or employee of any business, the Employee is engaged in the business of _Sales_ or such other business or businesses as the Company is engaged in either individually or as part of some other business entity or affiliate during the term of the Employee's employment by the Company.

The Employee shall not request any customers of any business then being conducted or contemplated by the Company or its affiliates to curtail or cancel their business with the business or its affiliates.

The Employee shall not disclose to any person, firm, or corporation any trade, technical or technological secrets, any details of organizations or business affairs, any names of past or present customers of the Company or its affiliates or any other information relating to the business or businesses or their affiliates.

The Employee shall not solicit, canvass, or accept any business or transaction for any other person, firm, corporation, or business similar to any business of the Company or its affiliates.

The Employee shall not induce, or attempt to influence, any employee of the Company or its affiliates to terminate employment with the Company or its affiliates or to enter into any employment or other business relationship with any other person, firm, or corporation.

The Employee shall not act or conduct himself/herself in any manner that he/she shall have reason to believe is contrary to the best interests of the Company or its affiliates.

1 of 3

The Employee acknowledges and agrees that the above restriction is reasonable as to duration and geography, that it is fully enforceable, and waives any objection thereto and covenants to institute no suit or proceeding or otherwise advance any position or contention to the contrary.

The Employee recognizes that immediate and irreparable damage will result to the Company if the Employee breaches any of the terms and conditions of this agreement and, accordingly, the Employee hereby consents to the entry of temporary, preliminary, and permanent injunctive relief by any court of competent jurisdiction against him or her to restrain any such breach in addition to any other remedies or claims for money damages that the Company may seek; and the Employee agrees to render an equitable accounting of all earnings, profits, and other benefits arising from such violations; and to pay all costs and counsel fees incurred by the Company in enforcing this agreement, which rights shall be cumulative.

The Employee represents and warrants to the Company that his or her experience and capabilities are such that he or she can obtain employment in business without breaching the terms and conditions of this agreement and that his or her obligations under the provisions of this agreement (and the enforcement thereof by injunction or otherwise will not prevent him or her from earning a livelihood.

The existence of any claim or cause of action of the Employee against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant.

In the event that the Employee is in breach of any of the provisions of this agreement as set forth above, the period of proscription from doing the act or acts that constitute a breach of this agreement shall be extended for a period of One (1) years from the date that the Employee ceased, whether voluntarily or by court order, to engage in or do said actions.

The Employee recognizes and agrees that the Company does not have a remedy at law adequate to protect the Company's rights and interests as set forth in this agreement, and the Employee therefore agrees that the Company shall have the right to an injunction enjoining the Employee from violating the provisions of this agreement. Nothing herein contained shall be construed as prohibiting the Company from pursuing any other remedies available to the Company for such breach or threatened breach.

If any action at law or equity is necessary to enforce or interpret the terms of this agreement, the Employee agrees to pay the Company reasonable attorney fees, costs, and necessary disbursements, in addition to any other relief and/or damages to which the Company may be entitled.

In the event that a court of competent jurisdiction determines that this covenant not to compete is unenforceable in whole or in part for any reason, including, without limitation, the duration, scope, and remedies set forth above, then same shall not be void, but rather shall be enforced to the extent that same is deemed to be enforceable by said court, as if originally executed in that form by the parties hereto.

Service of all notice under this agreement shall be sufficient if made by registered mail to the specific party involved herein at his/her respective address hereinafter set forth or as such party may provide from time to time in writing:

For the Company: (TRi-STAte pAper) John Petacco

For the Employee: Mark Guarnero Caw

This agreement constitutes the entire agreement between the parties hereto and supersedes all prior negotiations, understandings and agreements, whether oral or written, of any nature whatsoever with respect to the term of employment that is the subject matter hereof, and there are no representations, warranties, understandings or agreements other than those expressly set forth herein between the Company and the Employee.

This agreement is not to be changed, modified, or terminated unless it is changed in writing, and signed by the parties hereto.

The validity, interpretation, construction, and enforcement of this agreement shall be governed by the laws of the State of _Pennsylvania / New Jersy_

The invalidity or unenforceability of any particular provision of this agreement shall not affect the other provisions hereto, and the agreement shall be construed in all respects as though such invalid or unenforceable provision were omitted.

IN WITNESS WHEREOF, the parties hereto acknowledge, understand, and agree to this agreement. The parties understand and intend to be bound by all of the clauses contained in this document and further certify that they have received signed copies of this agreement on this date.

Employee: X _____ Dated: _1-6-23_

For the Company: _John Petacco_ Dated: _1-6-23_
                  Tri-State pAper

3 of 3

# COVENANT NOT TO COMPETE

For good and valuable consideration that is acknowledged, the undersigned, _Mike FRANK_ , "Employee", shall not engage in a business in any manner similar to, or in competition with, _Tri-State Pape_ "Company" during the term of his or her employment.

Furthermore, the Employee shall not engage in a business in any manner similar to, or in competition with, the Company's business for a period of _One_ (___) years from the date of termination of his or her employment with the Company in the geographical area within a _Seventyfive_ (75) mile radius of any office of the Company, and the geographical area within a _Seventy_ (75) mile radius of the Employee's home address.

For the purpose of this agreement, the Employee shall be regarded as engaging in a "business in any manner similar to, or in competition with, the Company's business" if, directly or as an independent contractor or employee of any business, the Employee is engaged in the business of _Packaging_ or such other business or businesses as the Company is engaged in either individually or as part of some other business entity or affiliate during the term of the Employee's employment by the Company.

The Employee shall not request any customers of any business then being conducted or contemplated by the Company or its affiliates to curtail or cancel their business with the business or its affiliates.

The Employee shall not disclose to any person, firm, or corporation any trade, technical or technological secrets, any details of organizations or business affairs, any names of past or present customers of the Company or its affiliates or any other information relating to the business or businesses or their affiliates.

The Employee shall not solicit, canvass, or accept any business or transaction for any other person, firm, corporation, or business similar to any business of the Company or its affiliates.

The Employee shall not induce, or attempt to influence, any employee of the Company or its affiliates to terminate employment with the Company or its affiliates or to enter into any employment or other business relationship with any other person, firm, or corporation.

The Employee shall not act or conduct himself/herself in any manner that he/she shall have reason to believe is contrary to the best interests of the Company or its affiliates.

The Employee acknowledges and agrees that the above restriction is reasonable as to duration and geography, that it is fully enforceable, and waives any objection thereto and covenants to institute no suit or proceeding or otherwise advance any position or contention to the contrary.

The Employee recognizes that immediate and irreparable damage will result to the Company if the Employee breaches any of the terms and conditions of this agreement and, accordingly, the Employee hereby consents to the entry of temporary, preliminary, and permanent injunctive relief by any court of competent jurisdiction against him or her to restrain any such breach in addition to any other remedies or claims for money damages that the Company may seek; and the Employee agrees to render an equitable accounting of all earnings, profits, and other benefits arising from such violations; and to pay all costs and counsel fees incurred by the Company in enforcing this agreement, which rights shall be cumulative.

The Employee represents and warrants to the Company that his or her experience and capabilities are such that he or she can obtain employment in business without breaching the terms and conditions of this agreement and that his or her obligations under the provisions of this agreement (and the enforcement thereof by injunction or otherwise will not prevent him or her from earning a livelihood.

The existence of any claim or cause of action of the Employee against the Company, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by the Company of this covenant.

In the event that the Employee is in breach of any of the provisions of this agreement as set forth above, the period of proscription from doing the act or acts that constitute a breach of this agreement shall be extended for a period of _one_ (_1_) years from the date that the Employee ceased, whether voluntarily or by court order, to engage in or do said actions.

The Employee recognizes and agrees that the Company does not have a remedy at law adequate to protect the Company's rights and interests as set forth in this agreement, and the Employee therefore agrees that the Company shall have the right to an injunction enjoining the Employee from violating the provisions of this agreement. Nothing herein contained shall be construed as prohibiting the Company from pursuing any other remedies available to the Company for such breach or threatened breach.

If any action at law or equity is necessary to enforce or interpret the terms of this agreement, the Employee agrees to pay the Company reasonable attorney fees, costs, and necessary disbursements, in addition to any other relief and/or damages to which the Company may be entitled.

In the event that a court of competent jurisdiction determines that this covenant not to compete is unenforceable in whole or in part for any reason, including, without limitation, the duration, scope, and remedies set forth above, then same shall not be void, but rather shall be enforced to the extent that same is deemed to be enforceable by said court, as if originally executed in that form by the parties hereto.

Service of all notice under this agreement shall be sufficient if made by registered mail to the specific party involved herein at his/her respective address hereinafter set forth or as such party may provide from time to time in writing:

For the Company: _John Petacceo_

For the Employee: _X_____

This agreement constitutes the entire agreement between the parties hereto and supersedes all prior negotiations, understandings and agreements, whether oral or written, of any nature whatsoever with respect to the term of employment that is the subject matter hereof, and there are no representations, warranties, understandings or agreements other than those expressly set forth herein between the Company and the Employee.

This agreement is not to be changed, modified, or terminated unless it is changed in writing, and signed by the parties hereto.

The validity, interpretation, construction, and enforcement of this agreement shall be governed by the laws of the State of _Pennsylvania_.

The invalidity or unenforceability of any particular provision of this agreement shall not affect the other provisions hereto, and the agreement shall be construed in all respects as though such invalid or unenforceable provision were omitted.

IN WITNESS WHEREOF, the parties hereto acknowledge, understand, and agree to this agreement. The parties understand and intend to be bound by all of the clauses contained in this document and further certify that they have received signed copies of this agreement on this date.

Employee: _X_____     Dated: _1-6-23_

For the Company: _John Petacceo_     Dated: _1-6-23_

9

Robert M. Reibstein, Esq.
ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.COM

Tri-State Paper Company

October 26, 2023

# FOR PROFESSIONAL LEGAL SERVICES

As per discussions with John and Tom. Preparation and certified mailing return receipt of Notice To Cease and Desistto Mark Guarnere. Courtesy flat fee as discussed with Tom Phelan. $150.00 plus $17.12 postage.

$167.12

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

Robert M. Reibstein, Esq.
ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.COM

October 26, 2023

Mr. Mark Guarnere
26 Bryce Court
Sicklerville, NJ 08020

Mr. Mark Guarnere
c/o Miller Packaging Materials, Inc.
102 Railroad Drive
Warminster, PA 18974

RE: **NOTICE TO CEASE AND DESIST**

Dear Mr. Guamere,

Please accept this correspondence as a formal notice to cease and desist **all** activity on what has been brought to my client's attention as your continuing to pass yourself off as President and an employee of Tri-State Paper Company, Inc. of Philadelphia, Pennsylvania. As you of course remember, you were fired for cause by Tri-State Paper Company's owner on August 14, 2023.

The nefarious actions you sought and continue to undertake against Tri-State Paper Company, Inc., not only constitute tortuous interference with Tri-State Paper Company, In's business, and terms of use, but fraud and misrepresentation. Therefore, the aforementioned conduct is actionable under Pennsylvania Commonwealth's laws.

If Tri-State Paper Company, Inc. is forced to commence a lawsuit in order to address these intentionally disruptive and damaging actions, be advised they will seek recovery of all attorney's fees and costs incurred herein as a result. While my client certainly hopes this is not necessary, they are prepared to pursue whatever avenues are necessary on their behalf to ensure their business operations continue uninterrupted. Further, upon any further discovery of such activity, such will be reported to the appropriate authorities.

Tri-State Paper Company, Inc., demands you immediately cease any and all conduct aimed at disrupting or harming their business operations.

Sincerely,

Robert M. Reibstein, Esquire

By certified mail
Cc: Tri-State Paper Company, Inc.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR







**UNITED STATES POSTAL SERVICE.**

NARBERTH
144 N NARBERTH AVE
NARBERTH, PA 19072-9998
(800)275-8777

10/26/2023                                    12:31 P

| Product | Qty | Unit Price | Pric |
|---|---|---|---|
| Prepaid Mail | 1 | | $0.0 |

Parcel Return Service, DC 56901
Weight: 1 lb 7.40 oz
Acceptance Date:
Thu 10/26/2023
Tracking #:
9202 3901 0192 3700 0048 2006 19

First-Class Mail®          1          $0.
Letter
    Warminster, PA 18974
    Weight: 0 lb 0.40 oz
    Estimated Delivery Date
    Sat 10/28/2023
    Certified Mail®                              $4.
        Tracking #:
        70210350000230726675
    Return Receipt                              $3.
        Tracking #:
        9590 9402 4960 9063 7094 47
Total                                          $8.

First-Class Mail®          1          $0
Letter
    Sicklerville, NJ 08081
    Weight: 0 lb 0.50 oz
    Estimated Delivery Date
    Sat 10/28/2023
    Certified Mail®                              $4
        Tracking #:
        70210350000230726620
    Return Receipt                              $3
        Tracking #:
        9590 9402 4960 9063 7094 30
Total                                          $8

Grand Total:                                  $17

Credit Card Remit
    Card Name: MasterCard
    Account #: XXXXXXXXXXXX7809
    Approval #: 72001P
    Transaction #: 986
    AID: A0000000041010          Chip
    AL: Mastercard
    PIN: Not Required

**From:** robert reibstein <robert.reibstein@gmail.com>
**Sent:** Tuesday, October 24, 2023 5:34 PM
**To:** Thomas Phelan <tphelan@tristatepaperco.com>
**Subject:** Cease and Decist

Dear Tom,

Please email me Mark's home address and the company's proper name and address.  These should be sent by certified mail-return receipt so have Mary send me out a check for $16.00 to reimburse me for the postage.  I'll copy you on the letters...  Bob

**Gmail**

robert reibstein <robert.reibstein@gmail.com>

## Re: Cease and Decist
1 message

**Thomas Phelan** <tphelan@tristatepaperco.com>
To: robert.reibstein <robert.reibstein@gmail.com>
Cc: "john@tri-statepaperco.com" <john@tri-statepaperco.com>

Wed, Oct 25, 2023 at 11:59 AM

Mark Guarnere
26 Bryce Court
Sicklerville, NJ 08020

## Miller Packaging Materials

*millerpackmat.com*

102 Railroad Dr. Warminster, PA 18974

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140

Thomas Phelan
CEO / President

Respectfully,
Thomas Phelan

TriState Paper Company
4500 N 3rd Street
Philadelphia, PA 19140
Office: 215-455-4506
Fax: 215-455-4509
Email: tphelan@tristatepaperco.com
www.tristatepaperco.com

ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL

October 26, 2023

Mr. Mark Guarnere
26 Bryce Court
Sicklerville, NJ 08020

Mr. Mark Guarnere
c/o Miller Packaging Materials, Inc.
102 Railroad Drive
Warminster, PA 18974

RE: **NOTICE TO CEASE AND DESIST**

Dear Mr. Guarnere,

Please accept this correspondence as a formal notice to cease and desist **all** activity on what has been brought to my client's attention as your continuing to pass yourself off as President and an employee of Tri-State Paper Company, Inc. of Philadelphia, Pennsylvania. As you of course remember, you were fired for cause by Tri-State Paper Company's owner on August 14, 2023.

The nefarious actions you sought and continue to undertake against Tri-State Paper Company, Inc., not only constitute tortuous interference with Tri-State Paper Company, In's business, and terms of use, but fraud and misrepresentation. Therefore, the aforementioned conduct is actionable under Pennsylvania Commonwealth's laws.

If Tri-State Paper Company, Inc. is forced to commence a lawsuit in order to address these intentionally disruptive and damaging actions, be advised they will seek recovery of all attorney's fees and costs incurred herein as a result. While my client certainly hopes this is not necessary, they are prepared to pursue whatever avenues are necessary on their behalf to ensure their business operations continue uninterrupted. Further, upon any further discovery of such activity, such will be reported to the appropriate authorities.

Tri-State Paper Company, Inc., demands you immediately cease any and all conduct aimed at disrupting or harming their business operations.

Sincerely,

Robert M. Reibstein, Esquire

By certified mail
Cc: Tri-State Paper Company, Inc.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

10

**Robert M. Reibstein, Esq.**
ATTORNEY AT LAW
ADMITTED PA & NJ BARS

MAILING ADDRESS
P.O. Box 485
Narberth, Pa. 19072

PHONE (610) 656-6920
FAX (610) 649-6491
EMAIL ROBERT.REIBSTEIN@GMAIL.C

October 25, 2023

Tom Phelan, President
Ti-State Paper Co., Inc.
4500 N. 3rd Street
Philadelphia, PA 19140

Dear Tom,

Thanks for letting me know that it looks like the company is going to file that new kind of Chapter 11, Bankruptcy within the next week. At your suggestion I am enclosing all of my unpaid fees which you said would pay immediately. Thanks, however, if the bankruptcy is converted to a Chapter 7 bankruptcy I will probably get notice from the Court to at repay those sums since on a time basis it would be called a preference. I better not spend it so fast. HaHa!

Very truly yours,

Robert M. Reibstein, Esquire

-----------------------------------------------------------------------------------------------------------------

1. Bill dated March 10, 2022…………………………………………………………………$1,218.75

2. Two unpaid collection retainers of $300.00 each Corrine's Place and Scarpantinos …$600.00
   No bill was sent since part of retainer agreement.

3. Bill of October 4, 2023  Attempts requested to find attorney to prosecute Guanere and obtain Public Adjuster…... …………………………………………………………………………………$847.91

4. Discussions and review of Outstanding Receivables & Collections October 19 &20, 2023.
   Bill dated October 20, 2023.    1 hour and 20 min………………………………$366.66

5. Bill of October 24, 2023,  Research on Notice to Cease and Desist – Covenant Not To Compete …………………………………………………………………………....$412.00

6. Preparation of Cease and Desist to Guarene on misrepresentation  on Oct. 24, 2023 ,
   w/ cert. Mail. …………………………………………………………………..$167.12

Total    3,612.44

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR