**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| In re:<br><br>**Tri-State Paper, Inc.,**<br><br>                Debtor. | )<br>)<br>)   **CHAPTER 11**<br>)<br>)   Case No. 23-13237 (PMM)<br>)<br>) |

**OBJECTION TO THE DEBTOR'S SUBCHAPTER V PLAN OF LIQUIDATION**

Penske Truck Leasing Co., L.P. ("Penske" or "Creditor") a creditor and party in interest in the above-captioned case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby objects (this "Objection") to the *Debtor's Subchapter V Plan of Liquidation* [Docket No. 145] (the "Plan") filed by Tri-State Paper, Inc. ("Tri-State," or the "Debtor"). In support of this Objection, Penske respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Court should deny the approval of the Plan for at least the following reasons.

- **The Plan was not proposed in "good faith" as it fails to provide for Penske's Rejection Damages' Claim.**

    o  As of the Petition Date (defined below), Penske and the Debtor were parties to the Vehicle Lease Services Agreement (the "VLSA"), which has a remaining term despite the Debtor planning to reject it.

    o  The Debtor acknowledges that it was a party to the VLSA as in Article 6 of the Plan, it provides that the VLSA is the only executory contract or unexpired lease to be rejected.

    o  However, although the Debtor is proposing to reject the VLSA upon confirmation of the Plan, the Debtor fails to acknowledge Penske's concomitant rejection damages' claim (the "Rejection Damages' Claim") that it will have upon rejection. In point of fact, the Plan provides that Penske's proof of claim is "to be paid $0.00" under Exhibit B – Treatment of Claims.

- **The Plan was not proposed in "good faith" as it fails to provide for Penske's claim for indemnification and insurance coverage in the State Court Action.**

    o   In addition to the Rejection Damages' Claim, the Debtor fails to acknowledge that Penske has previously filed a claim against this estate for claims due and owing under the VLSA (the "Pre-Petition Claim").

    o   This claim arises from the Debtor's indemnity obligations due and owing to Penske pursuant to the terms and conditions of the VLSA and also for the Debtor's failure to provide insurance coverage in the State Court Action despite the Debtor's contractual obligation under the VLSA.

    o   Since the State Court Action (defined below) arose out of the Debtor's possession, use, and operation of a vehicle that was leased to the Debtor pursuant to the VLSA, the Debtor, per the VLSA and applicable law, is obligated to indemnify Penske for any and all claims arising out of the State Court Action. Hence, Penske's filing of the Pre-Petition Claim.

    o   To date, the Debtor has failed to object to the Pre-Petition Claim and, thus, the claim is determined to be *prima facie* allowed. Therefore, the Debtor's Plan must account for some treatment on account of this claim, especially if this claim is ultimately objected to but the objection is denied.

2.  The Debtor provides no explanation as to how it can reject the VLSA while, at the same time, denying Penske's Rejection Damages' Claim. Similarly, even if the Debtor rejects the VLSA and its obligations thereunder, including, indemnifying Penske in the State Court Action and providing insurance coverage, Penske will still have a claim for indemnification and for the Debtor's other breaches of the VLSA.

3.  However, Exhibit B of the Plan states that Penske is an impaired party "entitled to vote, unless pending claim objection is sustained."

4.  The Debtor has yet to object to Penske's claim which it listed as to be paid $0.00 under the Plan.

5.  Since the Debtor has failed to object, Penske's Proof of Claim must be considered *prima facie* allowed.

2

6. Penske therefore respectfully requests that the Court enter an order: (i) denying approval of the Plan; (ii) requiring the Debtor to file an amended Plan of Liquidation including, at a minimum, adequate treatment of the Pre-Petition Claim pertaining to the aforementioned damages under the VLSA and the Rejection Damages' Claim; and (iii) granting such other and further relief as the Court deems just and equitable.

## RELEVANT FACTUAL BACKGROUND

7. On October 27, 2023 (the "Petition Date"), Tri-State Paper, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court").

**A.    The VLSA**

8. On or about August 24, 2007, Tri-State Paper, Inc. (the "Debtor") and Penske entered into the VLSA, in which the Debtor agreed to lease from Penske the Vehicle.

9. Under the VLSA, the Debtor agreed to pay Penske monthly charges within seven (7) days of Penske rendering an invoice for such charges. *See* VLSA ¶ 6.

10. The Debtor also agreed to provide insurance coverage for Penske against "liability for bodily injury . . . and property damage arising out of the ownership . . . use and operation of the Vehicle(s) with limits of at least a combined single limit of One Million Dollars ($1,000,000.00) per occurrence." *Id.* at ¶ 9.

11. Further, the Debtor agreed to indemnify Penske from "any and all claims . . . and liabilities arising from . . . [Penske's] failure to comply with the terms of this VLSA . . . and/or operation of the Vehicle." *Id.* at ¶ 10.

12. Paragraph 7 of the VLSA provides: "[t]he Vehicles shall not be operated . . . in a reckless manner." *Id.* at ¶ 7.

3

B.  **The State Court Action**

13. Prior to the Petition Date, Sandor Matusek (the "State Court Plaintiff") initiated an action in the Philadelphia County Court of Common Pleas, Case No. 230402509 (the "State Court Action"), related to a motor vehicle accident that occurred on December 22, 2021 (the "Accident").

14. At the time of the Accident, Michael Frank ("Mr. Frank"), an employee of the Debtor, was driving a vehicle that the Debtor leased from Penske. In particular, Penske leased a 2017 Freightliner M2, identified by Penske as Unit# 185762 (the "Vehicle") to the Debtor under the VLSA.

15. Following the Accident, Mr. Frank was cited for reckless driving by Cpl. Aaron Soldavin of Solesbury Township Police Department. Indeed, Mr. Frank admitted that he knew the brakes were having problems, yet he continued to operate the Vehicle.

16. At the time of the Accident, consistent with the VLSA, the Debtor was insured by State Farm under three separate insurance policies which aggregated $1,000,000 in coverage.

17. The Vehicle is listed as a covered auto under the Debtor's Certificate of Insurance with State Farm (the "COI").

18. On August 1, 2023, Penske sent the Debtor a formal tender for defense and indemnification (the "Indemnification Request") in the State Court Action.

19. To date, the Debtor has not accepted Penske's tender.

C.  **The Remaining Payments Due and Owing under the VLSA**

20. Pursuant to the VLSA, the current term of the lease was set to expire after the Petition Date. The Debtor was obligated to continue making monthly payments under the VLSA.

21. To date, the Debtor has failed and refused to make payments under the VLSA.

22. In addition, pursuant to Article VI of the Plan, the Debtor is proposing to reject the VLSA upon confirmation of the Plan. *See* Docket No. 145

4

23.     However, the Debtor fails to acknowledge Penske's concomitant Rejection Damages' Claim that it will have upon rejection. In point of fact, the Plan provides that Penske's proof of claim is "to be paid $0.00" under Exhibit B – Treatment of Claims.

**D.     The Pre-Petition Claim and Plan of Liquidation**

24.     On January 5, 2024, Penske filed the Pre-Petition Claim. As set forth therein, this claim was: (a) a contingent claim for any and all payments due and owing, plus all other sums as may be due and payable pursuant to the VLSA; as well as (b) a claim for any and all amounts paid by Penske in the State Court Action or for which the Debtor is obligated to indemnify Penske, Penske's attorneys' fees, costs, expenses, and disbursements paid to collect or enforce the VLSA, which may continue to accrue, less any adjustments as may be required by applicable law for goods and/or services rendered to the Debtor (the "Proof of Claim") [Claim No. 33]. A true and correct copy of the Proof of Claim is attached hereto as **Exhibit A**.

25.     To Date, the Debtor has yet to object to Penske's Proof of Claim.

26.     Further, in Exhibit B – Treatment of Claims, the Debtor lists Penske as "[i]mpaired and entitled to vote, unless pending claim objection is sustained." *Id.* The amount listed under "to be paid" for Penske's Proof of Claim is $0.00.

**OBJECTION**

27.     To obtain confirmation of the Plan under chapter 11 of the Bankruptcy Code, the Debtor has the burden of proving that the Plan satisfies all the confirmation requirements of the Bankruptcy Code, here, 11 U.S.C. § 1191(a) and § 1129(a). *See, e.g., In re Alfaro*, 501 B.R. 292, 294 (Bankr. E.D. Pa. 2013).

28.     Under section 1129(a)(3), a plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The term "good faith" is not defined by the Bankruptcy Code.

29. The Third Circuit has provided the following in applying this confirmation requirement of "good faith" under 1129(a)(3): "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. Specifically, under Chapter 11, the two recognized policies, or objectives, are preserving going concerns and maximizing property available to satisfy creditors." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156–57 (3d Cir. 2012) (quotations and citations omitted).

30. In *American Capital*, the court identified other bankruptcy policies to be considered in evaluating "good faith" such as giving debtors a fresh start in life, discouraging debtor misconduct, the expeditious liquidation and distribution of the bankruptcy estate to its creditors, and achieving fundamental fairness and justice. *Id.* at 157.

31. The bankruptcy courts analyze good faith under 11 U.S.C. § 1129(a)(3) based on the "totality of the circumstances." *See, e.g., In re Brown*, 498 B.R. 486, 494 (Bankr. E.D. Pa. 2013) (collecting cases), *aff'd*, 505 B.R. 638 (E.D. Pa. 2014).

I. **THE COURT CANNOT APPROVE THE PLAN FOR THE REASON THAT IT FAILS TO PROVIDE FOR PENSKE'S CLAIMS.**

32. To find that a plan does not comply with section 1129(a)(3) of the Bankruptcy Code generally requires "misconduct in bankruptcy proceedings, such as fraudulent misrepresentation or serious nondisclosures of material facts to the court." *In re River Vill. Assocs.,* 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), *aff'd,* 181 B.R. 795 (E.D. Pa. 1995).

33. As set forth herein, the Debtor has failed to file an objection to the Pre-Petition Claim.

34. It is well established that: "(1) a proof of claim is allowed unless a party objects; (2) if a proof of claim complies with the requirements of Fed. R. Bankr. P. 3001, the claim is *prima facie* allowable (the proof of claim, in effect, serving as both a pleading and evidence); (3) if a

6

proof of claim is prima facie valid, the burden of production shifts to the objector to produce evidence that refutes at least one (1) allegation that is essential to the claim's legal sufficiency; and (4) but, at all times, the ultimate burden of persuasion remains with the claimant. *In re Bernadin*, 610 B.R. 787, 800 (Bankr. E.D. Pa. 2019) (citations omitted).

35. In the Plan, the Debtor states that Penske is entitled to vote unless the Debtor's pending claim objection is sustained. To date, the Debtor has failed to file an objection to the Pre-Petition Claim.

36. Accordingly, the Pre-Petition Claim is *prima facie* allowable and the Debtor has not met its burden to produce any evidence to refute any allegations that are essential to the Proof of Claim's legal sufficiency.

37. Not only has the Debtor failed to object, but the Plan lists the amount owed under the Pre-Petition Claim as "$0.00."

38. The Plan fails to provide Penske with any rejection damages' claim despite the fact that the Debtor, upon confirmation of the Plan, intends to reject the VLSA.

39. As of the Petition Date, there was a remaining term of the VLSA requiring monthly payments from the Debtor. The Debtor's decision to reject the VLSA will obviously result in a claim of future damages for the remaining months of the VLSA term.

40. This failure to account for the Rejection Damages' Claim indicates a lack of good faith in filing the Plan by the Debtor.

41. Therefore, the Plan must not be confirmed by this Court for a lack of good faith under section 1129(a)(3) of the Bankruptcy Code.

**WHEREFORE** Penske respectfully requests that the Court enter an order: (i) denying approval of the Plan; (ii) requiring the Debtor to file an amended Plan of Liquidation including, at

a minimum, adequate treatment of the Pre-Petition Claim pertaining to the aforementioned damages under the VLSA and the Rejection Damages' Claim; and (iii) granting such other and further relief as the Court deems just and equitable.

Dated: March 6, 2024

Respectfully Submitted,

/s/ *Lawrence J. Kotler*
DUANE MORRIS LLP
Lawrence J. Kotler (56029)
E-mail:ljkotler@duanemorris.com
Ryan Spengler (332107)
E-mail:rspengler@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone: +1 215 979 1000
Fax: +1 215 979 1020

*Counsel for Creditor*
*Penske Truck Leasing Co., L.P.*