**Exhibit "A"**

<u>Proof of Claim</u>

**Fill in this information to identify the case:**

Debtor 1   Tri-State Paper, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Eastern District of Pennsylvania**

Case number:  **23-13237**

FILED

**U.S. Bankruptcy Court
Eastern District of Pennsylvania**

1/5/2024

**Timothy B. McGrath, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| **1. Who is the current creditor?** | Penske Truck Leasing Co., L.P. <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Penske Truck Leasing Co., L.P. <br><br> Name <br><br> 2675 Morgantown Rd <br> Reading, PA 19607-9676 <br><br> Contact phone _____844-847-9577_____ <br><br> Contact email _____ <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _____ | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br><br> Contact phone _____ <br><br> Contact email _____ |
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____ <br> MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

Official Form 410                     Proof of Claim                     page 1

**Part 2:** Give Information About the Claim as of the Date the Case was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

**7. How much is the claim?**  $ unknown

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Breach of contract among other claims

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ _____

**Amount of the claim that is unsecured:**  $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____

**Annual Interest Rate** (when case was filed)  ____ %

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies

$ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1/5/2024

MM / DD / YYYY

/s/ Harry M. Byrne, Esquire

Signature

Print the name of the person who is completing and signing this claim:

Name    Harry M. Byrne, Esquire

First name    Middle name    Last name

Title

Company    Duane Morris LLP

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    30 South 17th Street

Number   Street

Philadelphia, PA 19103

City   State  ZIP Code

Contact phone    215–979–1136    Email    HMByrne@duanemorris.com

Case 23-13237-pmm    Claim 132 Part 1    Filed 03/06/24    Desc    Main    Page 5 of
Case 23-13237-pmm    Doc 132    Filed 03/06/24    Entered 03/06/24 14:56:11    Desc
Exhibit A - Proof of Claim    Page 5 of 25

### ADDENDUM TO PROOF OF CLAIM OF
### PENSKE TRUCK LEASING CO., L.P.

1.      This addendum ("Addendum") is attached to and made a part of the Proof of Claim

(the "Proof of Claim") of Penske Truck Leasing Co., L.P. ("Penske") filed against Tri-State Paper,

Inc. (the "Debtor"), in its chapter 11 bankruptcy case, number 23-13237.

2.      On October 27, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United

States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court").

### BACKGROUND

3.      This Proof of Claim arises from an action initiated by Sandor Matusek (the

"Plaintiff") in the Philadelphia County Court of Common Pleas, Case No. 230402509 (the "State

Court Action"), related to a motor vehicle accident that occurred on December 22, 2021 (the

"Accident").

4.      At the time of the Accident, Michael Frank ("Mr. Frank"), an employee of the

Debtor, was driving a vehicle that the Debtor leased from Penske. In particular, Penske leased a

2017 Freightliner M2, identified by Penske as Unit# 185762 (the "Vehicle") to the Debtor via the

Vehicle Lease Services Agreement (the "VLSA"). A true and correct copy of the VLSA is attached

hereto as **Exhibit "A"**.

5.      Following the Accident, Mr. Frank was cited for reckless driving by Cpl. Aaron

Soldavin of Solesbury Township Police Department. Indeed, Mr. Frank admitted that he knew the

brakes were having problems, yet he continued to operate the Vehicle.

6.      Pursuant to paragraph 10 of the VLSA:

[Debtor] shall protect, defend, indemnify and hold harmless [Penske] and its
partners and its agents, servants, and employees from any and all claims, suits,
costs, losses, damages, expenses and liabilities arising from: (a) [Debtor's] failure

to comply with its obligations to governmental bodies having jurisdiction over [Debtor] and the Vehicles or its failure to comply with the terms of this VLSA, or the ownership, use, selection, possession, maintenance and/or operation of the Vehicle; (b) any liability imposed upon or assumed by [Debtor] under any Worker's Compensation Act, plan or contract and any and all injuries (including death) or property damage sustained by [Debtor] or any driver, agent, servant or employee of [Debtor]; or (c) [Debtor's] failure to properly operate or maintain a trailer or other equipment not leased by [Penske] under this VLSA, or to properly connect any trailer or other equipment. Where the vehicle is operated with a trailer or other equipment not leased by [Penske] under this VLSA, then [Debtor] warrants that such trailer or other equipment shall be in good operating condition compatible in all respects with the Vehicle with which it is to be used and in compliance with all laws and regulations covering the trailer or other equipment.

VLSA at ¶ 10.

7.      Paragraph 9 of the VLSA requires the Debtor to:

provide liability coverage for [Debtor] and [Penske] and its partners and their respective agents, servants and employees, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising out the ownership, maintenance, use and operation of the Vehicle(s) with limits of at least a combined single limit of One Million Dollars [] per occurrence. Such coverage shall be primary and not excess or contributory[.]

VLSA at ¶ 9.

8.      Paragraph 7 of the VLSA further provides: "[t]he Vehicles shall not be operated:

(b) in a reckless manner." VLSA at ¶ 7

9.      At the time of the Accident, consistent with the VLSA, the Debtor was insured by

State Farm under three separate insurance policies which aggregated $1,000,000 in coverage.

10.     The Vehicle is listed as a covered auto under the Debtor's Certificate of Insurance

with State Farm (the "COI"). A true and correct copy of the COI is attached hereto as **Exhibit**

**"B"**.

2

Case 23-13237-pmm   Claim 132 Part 1   Filed 03/06/24   Desc Main Document   Page 3 of
Case 23-13237-pmm   Doc 132   Filed 03/06/24   Entered 03/06/24 14:56:11   Page 3 of
Exhibit A - Proof of Claim    Page 7 of 25

11.     On August 1, 2023, Penske sent the Debtor a formal tender for defense and indemnification (the "Indemnification Request") in the State Court Action. A true and correct copy of the Indemnification Request is attached hereto as **Exhibit "C"**.

12.     To date, the Debtor has not accepted Penske's tender, nor has the Debtor provided insurance coverage to which Penske is entitled under the VLSA.

<u>Breach of Contract</u>

13.     Pursuant to the VLSA, the Debtor is contractually required to defend, indemnify, and hold Penske harmless against Plaintiff's claims because Plaintiff's claims arise out of the Debtor's possession, use, and operation of the Vehicle. *See* VLSA at ¶ 10.

14.     The Debtor is also required to name Penske as an "additional insured" under the Debtor's insurance policies with State Farm as a result of the Accident. *See* VLSA at ¶ 9.

15.     State Farm has informed Penske that State Farm believes that Penske is not covered under the Debtor's insurance policies as an additional insured.

16.     The Debtor has breached the VLSA because it has failed to indemnify Penske or provide the agreed upon insurance coverage. *See* VLSA at ¶¶ 9, 10.

17.     Also, pursuant to the VLSA, the Debtor was required to not operate the Vehicle in a "reckless or abusive manner." VLSA at ¶ 7.

18.     Mr. Frank was cited for reckless driving while operating the Vehicle on behalf of the Debtor, and therefore the Debtor is in breach of Paragraph 7 of the VLSA. *See* VLSA at ¶ 7.

<u>Common Law Indemnification</u>

19.     Pursuant to the VLSA, the Debtor was responsible, *inter alia*, to operate the Vehicle in a "careful manner" and was required to not operate the Vehicle "in a reckless [] manner."

20.     The Debtor failed to comply with the VLSA as evidenced by the citation Mr. Frank received for reckless driving.

21.     To the extent Plaintiff is able to establish negligence in the State Court Action, such negligence should be solely attributable to the Debtor and Mr. Frank whose negligence primarily led to Plaintiff's damages as a result of the Accident.

22.     To the extent the Debtor is able to establish that it is not required to indemnify Penske pursuant to the VLSA, which it is, the Debtor is also liable to Penske by reason of common law indemnification.

<u>Statutory Contribution</u>

23.     To the extent Plaintiff is able to establish negligence on behalf of Penske in the State Court Action, the Debtor should be required to contribute to the damages Plaintiff collects pursuant to the Uniform Contribution Among Tort-Feasors Act, 42 Pa.C.S. § 8321, et seq., costs of suit, and such further relief as the Court deems just and proper.

<u>The Claim</u>

24.     As of the Petition Date, the Debtor was, and as of the date hereof, remains current with its payment obligations under the VLSA. However, Penske holds a contingent claim for any and all payments due and owing thereunder, plus all other sums as may be due and payable pursuant to the VLSA, including without limitation any and all amounts paid by Penske in the State Court Action or for which Debtor is obligated to indemnify Penske, Penske's attorneys' fees, costs, expenses, and disbursements paid to collect or enforce the VLSA, which may continue to accrue, less any adjustments as may be required by applicable law for goods and/or services rendered to the Debtor.

25.     Accordingly, Penske hereby submits this Proof of Claim as evidence of Penske's

contingent claim for future payments due and owing under the VLSA.

## RESERVATION OF RIGHTS

26.     Penske is filing this Proof of Claim to protect its rights, claims and interests. Penske

expressly reserves the right to amend or supplement this Proof of Claim for any reason, including,

without limitation, to state updated amounts due or for any other purpose for which a proof of

claim filed in this proceeding may be amended or supplemented. Penske further expressly reserves

the right to file additional proofs of claim or other claims for additional amounts due and owing to

Penske including, without limitation, a claim for interest, attorneys' fees and/or costs,

administrative expenses and/or amounts due at law or in equity, arising prior to, on or after the

Petition Date. Penske also expressly reserves the right to estimate any portion of this Proof of

Claim, to amend this Proof of Claim to assert additional liquidated amounts and/or to file an

administrative claim for any amounts herein.

27.     Penske reserves all rights and remedies accruing to it, and the filing of this Proof

of Claim is not intended to be, and shall not be, construed as: (a) an election of remedies; (b) a

waiver of any past, present or future defaults or events of default; (c) a waiver or limitation of any

of its rights or defenses; (d) a waiver of any of its claims against the Debtor or any of its

subsidiaries, affiliates, or agents; or (e) a waiver of any of its claims against any other parties liable

thereto.

28.     This Proof of Claim is filed as a separate claim from other claims that may be filed

by or on behalf of Penske against the Debtor, and does not replace or supersede such other claims.

DM3\10232242.1

## <u>NOTICES</u>

29.    All notices to Penske relating to this Proof of Claim should be sent to Penske as

follows:


Penske Truck Leasing Co., L.P.
c/o Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196

Attn:   Harry M. Byrne, Esq.
        HMByrne@duanemorris.com

with a copy to:

Penske Truck Leasing Co., L.P.
2675 Morgantown Road
Reading, Pennsylvania 19607-9676

30.    Penske's counsel, Harry M. Byrne, may be reached by telephone at 215.979.1136

or by electronic mail at HMByrne@duanemorris.com.

**Exhibit "A"**

<u>VLSA</u>

DM3\10232242.1



# VEHICLE LEASE SERVICE AGREEMENT

PENSKE TRUCK LEASING CO., L.P., a Delaware limited partnership, ("PENSKE TRUCK LEASING"), with an address at Route 10, Green Hills, P.O. Box 563, Reading, PA 19603-0563, agrees to lease to Tri-State Paper, Inc (indicated which) ☒ a corporation under the laws of the State of PA ; ( ) a partnership; ( ) an individual ( "CUSTOMER"), with an address at

2018 E. Clementine St                                                   Philadelphia,PA,19134

_____                                    _____
(Street Address)                                                    (City and State)

which agrees to lease from PENSKE TRUCK LEASING, the vehicle(s) described in the Schedule(s) "A" (the "Vehicles") annexed to this Vehicle Lease Service Agreement ("VLSA"), now or hereafter. The term of the VLSA for each Vehicle leased shall begin on the date that the Vehicle is placed in CUSTOMER's service, or forty-eight (48) hours after notice has been given by PENSKE TRUCK LEASING to CUSTOMER that the Vehicle is available for delivery, whichever occurs first, and shall continue for the term specified in the Schedule "A", unless terminated earlier as provided in this VLSA. Since more than one (1) Vehicle may be leased under this VLSA, it is agreed that this VLSA is an "installment lease contract" as defined in Article 2A of the Uniform Commercial Code ("UCC").

Upon expiration or termination of the Vehicle's lease, CUSTOMER shall (with the exception of a Vehicle purchased, pursuant to Article 16 hereof, prior to the expiration of its lease term) return the Vehicle to the PENSKE TRUCK LEASING service location shown on the Schedule "A" in the same condition and appearance as when received, ordinary wear and tear excepted. Any holding over after the expiration of the Vehicle's lease term shall be on a week-to-week basis and subject to all the terms of this VLSA, except that either party may terminate at any time during the period of holding over upon one (1) week's prior written notice to the other, provided all the other termination requirements set forth in Article 16 are satisfied.

## 1. MAINTENANCE AND REPAIR.
PENSKE TRUCK LEASING agrees, at its own cost and expense, to provide with respect to the Vehicles leased: (a) all preventive maintenance, replacement parts, and repairs to keep the Vehicles in good repair and operating condition; (b) oil and lubricants necessary for the efficient operation of the Vehicles; (c) all necessary tires and tubes; (d) road service due to mechanical and tire failures; (e) periodic exterior washing; (f) initial painting and lettering of each Vehicle according to CUSTOMER's specifications at the time the Vehicle is placed into service, at a cost not exceeding the per-vehicle allowance specified in Schedule "A". In the event a Vehicle shall be disabled for any reason, CUSTOMER and/or its driver shall immediately notify PENSKE TRUCK LEASING. CUSTOMER agrees that it will not cause or permit any person other than PENSKE TRUCK LEASING or persons authorized by PENSKE TRUCK LEASING to make any repairs to a Vehicle, and shall abide by its directions concerning emergency repairs. In the event a Vehicle is disabled due to mechanical or tire failure, PENSKE TRUCK LEASING shall, within a reasonable period of time after receipt of notification, properly repair, or cause the repair of, the Vehicle. PENSKE TRUCK LEASING shall have no responsibility for any repair or service to a Vehicle away from its facilities unless authorized by PENSKE TRUCK LEASING and documented by a properly receipted and itemized bill for such repairs or services, listing the PENSKE TRUCK LEASING vehicle number.

CUSTOMER will cause its drivers to report any trouble concerning the Vehicle not later than the date of occurrence on forms provided by PENSKE TRUCK LEASING and to check oil and coolant levels in each Vehicle on a daily basis to prevent damage and to return each Vehicle to PENSKE TRUCK LEASING at the location set forth on Schedule "A", or as otherwise directed by PENSKE TRUCK LEASING, for inspection, preventive maintenance, and repair for a minimum of eight (8) consecutive hours every fourteen (14) days during PENSKE TRUCK LEASING's normal business hours at scheduled times as are mutually agreed upon.

## 2. SUBSTITUTE VEHICLES.
If a Vehicle is temporarily disabled due to mechanical failure, PENSKE TRUCK LEASING agrees to furnish a substitute vehicle ("Substitute"), at no extra charge to CUSTOMER, in the equivalent carrying capacity and design as the inoperable Vehicle, except that no special painting, lettering, or any alteration need be made to the Substitute. The Substitute shall be furnished to CUSTOMER whenever possible at the place at which the original Vehicle was disabled and shall be returned by CUSTOMER to the facility from which it was provided. PENSKE TRUCK LEASING shall have no obligation to provide a Substitute, and the Fixed Lease Charge for the inoperable Vehicle shall not abate, if the inoperable Vehicle is out of service because of damage resulting from collision or upset, or is out of service for ordinary maintenance or service, or for service or repairs to equipment for which it has no responsibility, or if the Vehicle is inoperable as a result of CUSTOMER's violation of any of the terms of this VLSA, or if the Vehicle contains a truck body not owned or leased by PENSKE TRUCK LEASING or a specialized body, or if the Vehicle is a specialized Vehicle. Failure of PENSKE TRUCK LEASING to furnish a Substitute within a reasonable time, where it is obligated hereunder to do so, shall cause the Fixed Lease Charge applicable to the inoperable Vehicle to abate until its return to CUSTOMER's service or until a Substitute is tendered to CUSTOMER. If a Vehicle is out of service because of collision or upset damage, PENSKE TRUCK LEASING shall, at CUSTOMER's request, rent CUSTOMER a Substitute, if available from its rental fleet, at a rental rate equal to the lease rate of the inoperable Vehicle. Whether or not CUSTOMER rents a Vehicle from PENSKE TRUCK LEASING while the Vehicle is out of service because of collision or upset damage, the charges applicable to the out of service Vehicle will not abate. All Substitutes shall be subject to the terms of this VLSA.

## 3. ADDITIONAL VEHICLES.
At CUSTOMER's request, PENSKE TRUCK LEASING shall supply additional vehicles, other than as substitutes for inoperable Vehicles as specified in Article 2, for temporary use upon the terms set forth in this VLSA, to the extent it has available sufficient vehicles of the size and type requested at the facility which services CUSTOMER. PENSKE TRUCK LEASING shall not be required to letter, paint, or alter such additional vehicles. The rate to be paid by CUSTOMER for the use of any additional vehicle shall be PENSKE TRUCK LEASING's then prevailing daily rental rate for such vehicles in effect at its location from which the additional vehicle is obtained, less fifteen percent (15%).

## 4. FUEL.
The party designated on Schedule "A" shall provide fuel required for the operation of the Vehicle(s), including refrigeration units whether owned by PENSKE TRUCK LEASING or otherwise. In the event PENSKE TRUCK LEASING is designated, then (a) PENSKE TRUCK LEASING agrees to provide fuel to CUSTOMER at competitive pricing from PENSKE TRUCK LEASING facilities or from facilities participating in the PENSKE TRUCK LEASING Fuel Stop Program and (b) upon receiving an invoice from PENSKE TRUCK LEASING, CUSTOMER shall pay, in addition to any applicable taxes and fees as provided in this VLSA, the charges for all fuel provided. CUSTOMER may also procure fuel from other sources at its own expense. If CUSTOMER is past due on payment of any invoices rendered by PENSKE TRUCK LEASING, PENSKE TRUCK LEASING has the right to immediately discontinue providing fuel to CUSTOMER.

If PENSKE TRUCK LEASING is designated in a Part Filed by CUSTOMER as intended to prepare and file fuel tax returns and upon CUSTOMER's request, apply for fuel tax permits and title their Part of CUSTOMER, and prepare and file fuel tax returns, provided CUSTOMER submits weekly to PENSKE TRUCK LEASING all driver trip records, original fuel receipts or invoices, and any other information necessary for the preparation of such fuel tax returns. CUSTOMER shall reimburse PENSKE TRUCK LEASING for any additional charge, assessment, tax, penalty, or credit disallowed as a result of the untimely or improper submission of such information by CUSTOMER. If CUSTOMER files the fuel tax returns, CUSTOMER shall defend, indemnify and hold PENSKE TRUCK LEASING and its partners harmless against all claims, losses and expenses resulting from CUSTOMER's failure to timely and properly pay the fuel taxes.

## 5. LICENSES, TAXES AND PERMITS.

PENSKE TRUCK LEASING shall, at its own expense, register and title each Vehicle, and pay for any Vehicle inspection fees in the state of registration of such Vehicle for the licensed weight shown on the Schedule "A". PENSKE TRUCK LEASING shall also pay the Federal Highway Use Tax and all personal property tax applicable to such Vehicle in that domicile state. Any of the above amounts paid by PENSKE TRUCK LEASING in excess of the amount included in the Fixed Lease Charge shown on the Schedule "A" will be reimbursed by CUSTOMER to PENSKE TRUCK LEASING. If permitted by law, PENSKE TRUCK LEASING shall obtain, at CUSTOMER's expense, other vehicle licenses, registrations, or pro-rate or state reciprocity plates, as CUSTOMER may request. Any increase in these rates or fees or change in the method of assessment over that in effect on the preparation date of the Schedule "A" will be paid for by CUSTOMER.

Other than as set forth above, CUSTOMER shall pay for all permits, plates, special licenses, fees, or taxes (including any penalties or interest) required by CUSTOMER's business or now or hereafter imposed upon the operation or use of the Vehicles, or on this VLSA or on the charges accruing under this VLSA, including, but not limited to, sales or use taxes, mileage or ton mileage taxes, highway and bridge tolls, and any new and/or additional taxes and fees. CUSTOMER shall also pay for all fuel taxes paid by PENSKE TRUCK LEASING in excess of the fuel taxes which would have been payable with respect to the fuel used by CUSTOMER had such fuel been purchased in the state of consumption.

## 6. LEASE CHARGES.

CUSTOMER agrees to pay PENSKE TRUCK LEASING the charges provided for under this VLSA within seven (7) days of PENSKE TRUCK LEASING's rendering of an invoice, without deduction or offset. PENSKE TRUCK LEASING shall (except for fuel charges) invoice CUSTOMER on a monthly basis, including the billing of fixed charges in advance and mileage charges in arrears, and payment shall be made to the location designated by PENSKE TRUCK LEASING. Charges for fuel shall be billed weekly. Unless CUSTOMER shall protest the correctness of any invoice within seven (7) days of its receipt, CUSTOMER agrees that such invoice shall be presumed to be correct. CUSTOMER shall provide PENSKE TRUCK LEASING with mileage readings for each Vehicle within twenty-four (24) hours after the end of each week or as otherwise agreed upon. Mileage shall be determined by means of a standard mileage recording device attached to the Vehicle. In the event such device fails to function or becomes detached, the mileage shall be determined on the basis of the fuel consumed and the average daily mileage for the preceding thirty (30) days or by another reasonable method. CUSTOMER agrees that each Vehicle will be operated according to the Estimated Annual Mileage per Vehicle as noted on the applicable Schedule 'A'. Any mileage variation in excess of twenty percent (20%) above or below the Estimated Annual Mileage per Vehicle may necessitate a change to the Lease Term, the Fixed Lease Charge, the Mileage Charge, and the Depreciation Credit per Month. Should CUSTOMER fail to pay any charges when due, CUSTOMER shall pay interest on such delinquent amounts at one and one-half percent (1½%) per month or the maximum permissible rate allowed in the jurisdiction in which CUSTOMER's principal place of business is located, whichever is lower, from the date on which payment was due until paid, together with all expenses of collection and reasonable attorneys' fees. This interest charge shall not be construed as an agreement to accept late payments.

## 7. VEHICLE USE AND DRIVERS.

CUSTOMER shall use the Vehicle only in the normal and ordinary course of its business and operations and in a careful, non-abusive manner, and not beyond its capacity, and CUSTOMER shall not make any alterations to the Vehicle without PENSKE TRUCK LEASING's prior written consent.

Subject to the terms of this VLSA, from the time of delivery to CUSTOMER of any Vehicle covered by this VLSA, CUSTOMER shall have exclusive possession, control and use of the Vehicle until its return to PENSKE TRUCK LEASING. CUSTOMER agrees that all Vehicles shall be operated by safe, qualified, properly licensed drivers, who shall conclusively be presumed to be CUSTOMER's agent, servant or employee only, and subject to its exclusive direction and control. The Vehicles shall not be operated: (a) by a driver in possession of or under the influence of alcohol or any controlled drug, substance or narcotic; (b) in a reckless or abusive manner; (c) off an improved road; (d) on an underinflated tire; (e) improperly loaded or loaded beyond maximum weight shown on the Schedule "A"; or (f) in violation of any applicable laws, ordinances, or rules; and CUSTOMER shall protect, defend, indemnify and hold PENSKE TRUCK LEASING and its partners harmless from and against all fines, claims, forfeitures, judgments, seizures, confiscations and penalties arising out of any such occurrence. CUSTOMER will be responsible for all expenses for removing or towing any mired or snowbound Vehicle. CUSTOMER agrees not to use, cause or permit any Vehicle to be used for the transportation of hazardous materials as defined by regulations promulgated by the United States Department of Transportation, unless otherwise agreed to in writing by PENSKE TRUCK LEASING, nor for any illegal purpose. CUSTOMER will cause each Vehicle to be stored in a safe location.

Upon receipt of a written complaint from PENSKE TRUCK LEASING specifying any reckless, careless, or abusive handling by any driver of the Vehicle(s), CUSTOMER shall prohibit the driver so identified from operating the Vehicle(s). In the event that CUSTOMER shall fail to do so or shall be prevented from so doing by any agreement with anyone on the driver's behalf, CUSTOMER shall reimburse PENSKE TRUCK LEASING in full for any loss and expense incurred by PENSKE TRUCK LEASING as a result of operation or use of the Vehicle(s) by such driver; and CUSTOMER shall protect, defend, indemnify and hold PENSKE TRUCK LEASING and its partners harmless from and against any costs, expenses or damages arising out of the operation of any Vehicle(s) by such driver, not withstanding that PENSKE TRUCK LEASING may be designated in this VLSA as responsible for extending liability coverage or assuming the risk of loss of, or damage to, the Vehicle(s). CUSTOMER authorizes PENSKE TRUCK LEASING to investigate the driving record of each driver and test such driver with respect to his ability to operate the Vehicle to which he will be assigned, without prejudice to any right or remedy of PENSKE TRUCK LEASING under this VLSA.

## 8. PHYSICAL DAMAGE TO VEHICLES.

CUSTOMER assumes the risk of loss of, or damage to, the Vehicle(s) covered by this VLSA from any and every cause whatsoever, notwithstanding Section 2A-219(1) of the UCC, including, but not limited to, casualty, collision, upset, fire, theft, malicious mischief, vandalism, graffiti, glass breakage, and mysterious disappearance, except as otherwise provided in this VLSA. Unless permission to self-insure these obligations is given in writing by PENSKE TRUCK LEASING, CUSTOMER shall, at its sole cost, procure and maintain an automobile collision and comprehensive insurance policy protecting PENSKE TRUCK LEASING and its partners against any and all loss or damage to the Vehicles covered by this VLSA, in form and amount satisfactory to PENSKE TRUCK LEASING, which policy shall provide that losses, if any, shall be payable to PENSKE TRUCK LEASING and/or its assignee as loss payee. CUSTOMER shall deliver to PENSKE TRUCK LEASING a certificate of insurance showing such coverage, prior to delivery to CUSTOMER of any Vehicle covered by this VLSA. Each insurer shall agree, by endorsement upon the policy issued by it, or by an independent document provided to PENSKE TRUCK LEASING, that it shall give PENSKE TRUCK LEASING thirty (30) days' prior written notice of the effective date of any alteration or cancellation of such policy, and that such notice shall be sent by registered or certified mail postage prepaid, return receipt requested, to PENSKE TRUCK LEASING CO., L.P., Rt. 10 Green Hills, P.O. Box 563, Reading, PA 19603-0563, Attention: Risk Management Department.

Exhibit 2 - Vehicle Lease Service Agreement

TRUCK LEASING's judgment, the Vehicle has been lost, stolen, destroyed or damaged beyond repair, CUSTOMER shall reimburse PENSKE TRUCK LEASING upon demand for all accrued lease charges to the date of the occurrence, together with the depreciated Schedule "A" value of such Vehicle immediately preceding the occurrence, and, upon such payment, the lease of the Vehicle shall terminate and the Vehicle shall become the property of CUSTOMER, as-is, where-is.

## 9. LIABILITY COVERAGE.

CUSTOMER shall, at its sole cost, provide liability coverage for CUSTOMER and PENSKE TRUCK LEASING and its partners and their respective agents, servants and employees, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising out of the ownership, maintenance, use and operation of the Vehicle(s) with limits of at least a combined single limit of One Million Dollars ($1,000,000.00) per occurrence. Such coverage shall be primary and not excess or contributory and shall be in conformity with the motor vehicle minimum financial responsibility laws as respects "Uninsured Motorist", "No-Fault", or other optional coverages. Any liability insurance obtained by PENSKE TRUCK LEASING shall be excess insurance over all insurance obtained by CUSTOMER. Such coverage shall be endorsed to include PENSKE TRUCK LEASING as an additional insured and shall be in a form acceptable to PENSKE TRUCK LEASING. CUSTOMER shall deliver a certificate of insurance showing such coverage, prior to delivery to CUSTOMER of any Vehicle covered by this VLSA. Each insurer shall agree, by endorsement upon the policy issued by it, or by an independent document provided to PENSKE TRUCK LEASING, that it shall give PENSKE TRUCK LEASING thirty (30) days' prior written notice of the effective date of any alteration or cancellation of such policy and that such notice shall be sent in the manner contemplated by Article 8.

CUSTOMER shall notify PENSKE TRUCK LEASING as well as CUSTOMER's insurance company, of any loss of, or damage to, or accident involving any Vehicle, immediately by telephone, and in writing as soon as practicable thereafter, and shall cooperate fully in the investigation, prosecution and/or defense of any claim or suit and shall do nothing to impair or invalidate any applicable liability, physical damage or cargo coverage.

## 10. INDEMNIFICATION.

CUSTOMER shall protect, defend, indemnify and hold harmless PENSKE TRUCK LEASING and its partners and its agents, servants and employees from any and all claims, suits, costs, losses, damages, expenses and liabilities arising from: (a) CUSTOMER's failure to comply with its obligations to governmental bodies having jurisdiction over CUSTOMER and the Vehicles or its failure to comply with the terms of this VLSA, or the ownership, use, selection, possession, maintenance, and/or operation of the Vehicle; (b) any liability imposed upon or assumed by CUSTOMER under any Worker's Compensation Act, plan or contract and any and all injuries (including death) or property damage sustained by CUSTOMER or any driver, agent, servant or employee of CUSTOMER; or (c) CUSTOMER's failure to properly operate or maintain a trailer or other equipment not leased by PENSKE TRUCK LEASING under this VLSA, or to properly connect any trailer or other equipment. Where the Vehicle is operated with a trailer or other equipment not leased by PENSKE TRUCK LEASING under this VLSA, then CUSTOMER warrants that such trailer or other equipment shall be in good operating condition compatible in all respects with the Vehicle with which it is to be used and in compliance with all laws and regulations covering the trailer or other equipment.

## 11. DELIVERY AND ACCEPTANCE OF VEHICLES.

CUSTOMER has selected the Vehicle(s), including the accessories, features and design requirements set forth in Schedule(s) "S" and has requested that PENSKE TRUCK LEASING arrange for the purchase of the Vehicle(s) for lease to CUSTOMER under this VLSA. The Vehicle(s) shall be delivered to CUSTOMER at the PENSKE TRUCK LEASING location set forth in Schedule "A".

CUSTOMER shall inspect each Vehicle covered by this VLSA within thirty (30) days after its delivery to CUSTOMER. Unless within this period CUSTOMER gives written notice to PENSKE TRUCK LEASING specifying any defects in the Vehicle or non-conformity with the specifications set forth in Schedule "S", CUSTOMER agrees that it shall be conclusively presumed between the parties that the Vehicle has been inspected, is in full compliance with the terms of this VLSA, and that CUSTOMER has accepted the Vehicle. If the Vehicle has been in CUSTOMER's service prior to the effective date of this VLSA with respect to that Vehicle, no Schedule "S" shall be attached and CUSTOMER shall have no right of inspection with respect to that Vehicle, and CUSTOMER agrees that it shall be conclusively presumed that CUSTOMER has accepted the Vehicle.

If subsequent to the date of preparation of the Schedule "A", any law, rule, or regulation shall require the installation of any additional equipment or accessories, including, but not limited to, anti-pollution and/or safety devices, or in the event that any modification of the Vehicle shall be required by virtue of such law, rule or regulation, PENSKE TRUCK LEASING and CUSTOMER agree to cooperate in arranging for the installation of such equipment or the performance of such modifications and CUSTOMER agrees to promptly pay the full cost thereof, including any additional maintenance expenses, upon receipt of an invoice for same.

## 12. INTERIM VEHICLES.

Upon CUSTOMER's request, PENSKE TRUCK LEASING will furnish during the period prior to the time the Vehicle is placed into CUSTOMER's service a substitute vehicle (hereinafter, "Interim") if available, as nearly as practical the same size and type as the leased Vehicle, except that no painting, lettering or alterations need be made by PENSKE TRUCK LEASING to the Interim. The Interim shall be subject to all of the terms of this VLSA, including the payment of all charges therefor, but the miles operated by the Interim will not be included in the determination of whether the leased Vehicle satisfied a mileage guaranty applicable to it. Upon PENSKE TRUCK LEASING's advising CUSTOMER of the readiness of the leased Vehicle, CUSTOMER shall immediately return the Interim to PENSKE TRUCK LEASING and accept delivery of the leased Vehicle.

## 13. FORCE MAJEURE.

PENSKE TRUCK LEASING and its partners shall incur no liability to CUSTOMER for failure to perform any obligation under this VLSA caused or contributed to by events beyond PENSKE TRUCK LEASING's reasonable control, such as, but not limited to, war, fire, governmental regulations, labor disputes, manufacturer, supplier or transportation shortages or delays, or fuel allocation programs.

## 14. VEHICLE TITLE.

Title to the Vehicles and all equipment delivered to CUSTOMER under this VLSA shall remain in PENSKE TRUCK LEASING or its designee. CUSTOMER shall, at all times, at its sole cost, keep the Vehicles and related equipment free and clear from all liens, encumbrances, levies, attachments or other judicial process from every cause whatsoever, (other than a claimant through an act of PENSKE TRUCK LEASING), and shall give PENSKE TRUCK LEASING immediate written notice thereof and shall indemnify and hold PENSKE TRUCK LEASING harmless from any loss or damage, including attorneys' fees, caused thereby.

## 15. DEFAULT.

(A) If (i) CUSTOMER shall fail or refuse to pay any Charges And/or Other Due, or (ii) CUSTOMER shall fail or refuse to perform any other term of this VLSA for five (5) days after written notice thereof is sent to CUSTOMER by PENSKE TRUCK LEASING, or (iii) CUSTOMER or any guarantor of CUSTOMER's obligations become insolvent or make a bulk transfer of its assets or make an assignment for the benefit of creditors, or (iv) CUSTOMER or any guarantor of CUSTOMER's obligations shall file or suffer the filing against it of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, or (v) if any representation or warranty made by CUSTOMER herein or in any document furnished by CUSTOMER or guarantor of CUSTOMER's obligations shall prove to be incorrect in any material respect (hereinafter the "Events of Default"), then in any of such Events of Default PENSKE TRUCK LEASING shall be entitled to pursue the remedies specified in the following paragraph.

Upon the happening of one of the preceding Events of Default, PENSKE TRUCK LEASING may, with or without terminating this VLSA, with or without demand or notice to CUSTOMER, and with or without any court order or process of law, take immediate possession of, and remove, any and all Vehicles covered by this VLSA wherever located, and/or retain and refuse to deliver and/or redeliver to CUSTOMER, the Vehicle(s), without PENSKE TRUCK LEASING being liable to CUSTOMER for damages caused by such taking of possession. Whether or not it shall have exercised its right to take possession of the Vehicles upon the happening of any of the Events of Default, PENSKE TRUCK LEASING may, with or without terminating this VLSA as to one (1) or more Vehicles, require CUSTOMER upon five (5) days' written notice to CUSTOMER, to, at PENSKE TRUCK LEASING's option, either purchase the Vehicle(s) or make the alternative payment in accordance with Article 16, and in addition, pay to PENSKE TRUCK LEASING the total of the lease charges and any guaranteed mileage charges for all such Vehicles up to the date upon which CUSTOMER could have terminated this VLSA by exercise of its rights under Article 16, together with the sum of all charges due and unpaid to the date of PENSKE TRUCK LEASING's notice to CUSTOMER under this paragraph.

In the event that CUSTOMER shall fail to purchase the Vehicle (or, at PENSKE TRUCK LEASING's option, make the alternative payment), and pay all other sums provided in the preceding paragraph, PENSKE TRUCK LEASING may sell the Vehicle(s) at one (1) or more public or private sales, with or without notice to CUSTOMER, and with or without having the Vehicle(s) at the sale. The proceeds of the sale, less PENSKE TRUCK LEASING's expenses of retaking, storage, repair, and resale, shall be applied to payment of any obligations due to PENSKE TRUCK LEASING by CUSTOMER under this VLSA or otherwise. CUSTOMER shall remain liable for the balance due PENSKE TRUCK LEASING under the preceding paragraph and for any deficiency in the balance of any sums due PENSKE TRUCK LEASING under any other lease or indebtedness. If PENSKE TRUCK LEASING is unable to sell the Vehicle upon terms and within a period of time satisfactory to it, or it shall elect not to sell the Vehicle, then PENSKE TRUCK LEASING may retain the Vehicle, crediting CUSTOMER with the then Net Fair Market Value of the Vehicle (defined as the highest appraisal of Fair Market Value (wholesale) received by PENSKE TRUCK LEASING from two (2) or more independent vehicle dealers, less all expenses and costs incurred by it). The Net Fair Market Value of the Vehicle shall be applied to CUSTOMER's obligations to PENSKE TRUCK LEASING and CUSTOMER shall remain liable for any sums due to PENSKE TRUCK LEASING under this VLSA or otherwise. All amounts to be retained by PENSKE TRUCK LEASING and any balance to be paid by CUSTOMER under this VLSA shall not be construed as a penalty, but as liquidated damages for the breach of this VLSA, and as PENSKE TRUCK LEASING's reasonable return for the use of the Vehicles and for their depreciation.

In addition, PENSKE TRUCK LEASING may proceed by appropriate court action to enforce the terms of this VLSA or to recover damages for the breach of any of its terms.

In the event PENSKE TRUCK LEASING takes possession of or retains any Vehicle and there is, at the time of taking or retention, in, upon or attached to the Vehicle any property or things of value belonging to CUSTOMER or in CUSTOMER's custody or control, PENSKE TRUCK LEASING is authorized to take possession of such items and either hold the items for CUSTOMER or place them in storage for CUSTOMER, at CUSTOMER's sole cost and risk of loss or damage.

(B) In the event PENSKE TRUCK LEASING shall fail or refuse to perform or observe any material term of this VLSA for thirty (30) days after written notice is sent to PENSKE TRUCK LEASING by CUSTOMER, CUSTOMER shall be entitled, as its sole remedy, to either (i) terminate this VLSA as to the Vehicle(s) which is (are) the subject of the default ("Defaulting Vehicle(s)") and purchase such Defaulting Vehicle(s) for cash in accordance with Article 16 and make the other payments required to be made thereunder, or (ii) in good faith and without unreasonable delay obtain a vehicle (substantially similar in the equivalent carrying capacity and design to the Defaulting Vehicle(s)) in substitution for the Defaulting Vehicle(s) and, subject to Article 20, recover damages from PENSKE TRUCK LEASING as to such Defaulting Vehicle(s).

## 16. TERMINATION PRIVILEGES.

Either party may upon sixty (60) days, prior written notice to the other, terminate this VLSA as to one (1) or more of the Vehicles on the annual anniversary of their respective in service dates.

Upon termination by either party, CUSTOMER shall, at PENSKE TRUCK LEASING's option, purchase the Vehicle as to which the notice has been given other than substitute, interim, or additional vehicle(s). Alternatively, in lieu of purchasing the Vehicle, CUSTOMER may elect to pay PENSKE TRUCK LEASING the difference, if any, between the purchase price as calculated in this Article and the Fair Market Value (defined as the highest appraisal of market value (wholesale) received by PENSKE TRUCK LEASING from two (2) or more independent vehicle dealers) of each such vehicle as of the date of termination (the "alternative payment").

The purchase price of the Vehicle shall be the original agreed value of the Vehicle set forth in Schedule "A" less the monthly depreciation credit of the Vehicle set forth in Schedule "A" multiplied by the number of months elapsed from the in service date of the Vehicle to the termination date, provided, however, that the purchase price to be paid by the CUSTOMER for the Vehicle shall not be less than fifteen percent (15%) of its Original Agreed Value set forth in Schedule "A".

CUSTOMER shall simultaneously pay all outstanding lease charges through and including the date of purchase of the Vehicle (or date the alternative payment is made by CUSTOMER), together with applicable sales or use taxes and that portion of all license and registration fees, applicable personal property taxes, and prepaid expenses paid by PENSKE TRUCK LEASING with respect to the Vehicle, pro-rated to the date of termination. Upon receipt thereof, PENSKE TRUCK LEASING shall cause the conveyance to CUSTOMER of title to the Vehicle to be purchased, as-is, where-is. CUSTOMER shall have no right to exercise any option to terminate, or to effect the termination of, this VLSA under this Article while CUSTOMER shall be in default under this VLSA. No cancellation or other termination of this VLSA by either party shall in any way release CUSTOMER of liability for the payment of any sum(s) due or to become due PENSKE TRUCK LEASING under this VLSA or any damages which it shall have sustained by reason of CUSTOMER's breach thereof.

## 17. ADJUSTED COST.

The parties hereto recognize that the lease rates provided for in this VLSA are based upon PENSKE TRUCK LEASING's current costs and that such costs may fluctuate. Accordingly, PENSKE TRUCK LEASING and CUSTOMER agree that for each rise or fall of at least one percent (1%) in the Consumer Price Index for All Urban Consumers for the United States ("CPI"), published by the United States Department of Labor, Bureau of Labor Statistics, or any successor index designated by PENSKE TRUCK LEASING, above or below the CPI figure applicable for each leased Vehicle as of the "Effective Date" indicated on the Schedule "A", the fixed lease charges, the basic mileage charges (excluding fuel), and the refrigeration charges, if applicable, shall be adjusted upward or downward based upon such percentage increase or decrease in the CPI. Seventy-five percent (75%) of the fixed lease charge, one hundred percent (100%) of the basic mileage charge (excluding fuel), and one hundred percent (100%) of the refrigeration charge, if applicable, shall be subject to adjustment. If a mileage guaranty is applicable, one hundred percent (100%) of the Undermileage Charge (per mile), the Excess Mileage Charge (excluding fuel), and the Mileage Charge (per mile) shall be subject to adjustment.

## 18. NON-LIABILITY FOR CONTENTS.

PENSKE TRUCK LEASING shall not be liable for loss of, or damage to, any cargo or other property left, stored, loaded or transported in, upon, or by any vehicle furnished to CUSTOMER pursuant to this VLSA at any time or place, and CUSTOMER agrees to protect, indemnify, defend and hold PENSKE TRUCK LEASING and its partners harmless from and against any claims for such loss or damage.

## 19. ASSIGNMENT AND SUBLETTING.

WITHOUT THE PRIOR WRITTEN CONSENT OF PENSKE TRUCK LEASING, WHICH CONSENT WILL NOT BE UNREASONABLY WITHHELD, CUSTOMER SHALL NOT VOLUNTARILY OR INVOLUNTARILY ASSIGN OR PLEDGE THIS VLSA OR THE VEHICLES, OR SUBLET, RENT OR LICENSE THE USE OF THE VEHICLES, OR CAUSE OR PERMIT THE VEHICLES TO BE USED BY ANYONE OTHER THAN CUSTOMER OR ITS AGENTS, SERVANTS OR EMPLOYEES.

This VLSA and any Vehicles, rent, or other sums due or to become due hereunder may be assigned or otherwise transferred, either in whole or in part, by PENSKE TRUCK LEASING, without affecting any obligations of CUSTOMER and, in such event, the right of CUSTOMER shall be subject to any lien, security interest or assignment given by PENSKE TRUCK LEASING in connection with the ownership of the Vehicle(s), and the transferee or assignee shall have all of the rights, powers, privileges and remedies of PENSKE TRUCK LEASING.

## 20. DISCLAIMER.

PENSKE TRUCK LEASING MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY VEHICLE COVERED BY THIS VLSA. PENSKE TRUCK LEASING AND ITS PARTNERS SHALL NOT BE LIABLE FOR LOSS OF CUSTOMER'S PROFITS OR BUSINESS, LOSS OR DAMAGE TO CARGO, DRIVER'S TIME, OR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES.

## 21. MISCELLANEOUS.

This VLSA and the schedules and/or riders attached hereto shall constitute the entire agreement between the parties and, to be binding on PENSKE TRUCK LEASING, must be signed by an officer of PENSKE TRUCK LEASING. This document shall constitute an agreement of lease and nothing shall be construed as giving to CUSTOMER any right, title or interest in any of the Vehicles or related equipment, except as lessee only. Upon execution of this VLSA by PENSKE TRUCK LEASING and CUSTOMER, the VLSA shall be binding on the respective parties and their legal representatives, successors and assigns. Its terms shall not be amended or altered by failure of either party to insist on performance, or failure to exercise any right or privilege, or in any manner unless such amendment or alteration is in writing and signed on behalf of the parties hereto. This VLSA shall supersede any and all proposals or agreements, written or verbal, between the parties, relating to the subject matter of this VLSA and may not be modified, terminated or discharged, except in writing and signed by the party against whom the enforcement of the discharge, modification or termination is sought. Any notice given under this VLSA shall be in writing and sent by registered or certified mail to PENSKE TRUCK LEASING or to CUSTOMER, as the case may be, to the addresses set forth in this VLSA, or to such other addresses as are designated in writing by either party. This VLSA is to be interpreted, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania. In the event any of the terms and provisions of this VLSA are in violation of or prohibited by any law, statute, regulation or ordinance of the United States and/or state or city where the VLSA is applicable, such terms and provisions shall be deemed amended to conform to such law, statute, regulation or ordinance without invalidating any of the other terms and provisions of this VLSA. PENSKE TRUCK LEASING is an equal opportunity employer.

IN WITNESS WHEREOF, the parties shall cause this VLSA to be executed by their duly authorized representative this 24 day of Aug, 2007.


**PENSKE TRUCK LEASING CO., L.P.**                    **CUSTOMER:**   Tri-State Paper, Inc

Signature: _Denise Y. Impink_                        Signature: _____

Title: _____                       Title: _____
       DENISE Y. IMPINK
       SENIOR
Witnessed Or _____                 Witnessed Or _____
Attested By: _____  CONTRACT ANALYST  Attested By: _____

**PENSKE**

*Truck Leasing*

**Vehicle Lease Service Agreement
Schedule "A"**

Schedule "A" No. _8807_

Date of Preparation _8/24/07_

Page _1_

Penske Location: _7810-10_      City, State and Zip Code: _Philadelphia PA 19134_

THIS AMENDMENT is made this _24_ day of _August_, 200_7_ to the Vehicle Lease Service Agreement dated _August 24_, 200_7_ (the "VLSA") between PENSKE TRUCK LEASING CO., L.P. ("PENSKE TRUCK LEASING") and _Tri State Paper, Inc_

("CUSTOMER").

The parties agree that the VLSA is amended as follows:

1. The following is added to the end of Article 15:

    "Notwithstanding anything contained in the VLSA to the contrary, with respect to all Vehicles currently leased to CUSTOMER under the VLSA or any other agreement, CUSTOMER agrees to pay all invoices on the _____ of the month through an Automated Clearing House ("ACH"). CUSTOMER consents to PENSKE TRUCK LEASING's debiting CUSTOMER's account through the ACH.

    If CUSTOMER fails to pay PENSKE TRUCK LEASING in accordance with the provisions of Article 6 of the VLSA, or if CUSTOMER does not meet the payment terms outlined in the preceding paragraph with respect to ACH payments, then such failure shall be considered an "Event of Default" and PENSKE TRUCK LEASING shall be able to pursue all of its remedies as outlined in this Article 15."

---

Schedule "A" annexed to and made a part of Vehicle Lease Service Agreement dated _August 24, 2007_ between _Tri State Paper Inc_ and **PENSKE TRUCK LEASING CO., L.P.**, effective on the _24_ day of _August_, 200_7_.

Addition(s) _____ and shall be in addition to any Schedule "A" attached hereto and made a part of said Agreement hereto.
  (Initial)

Deletion(s) _____ and shall supercede Schedule "A"(s) Number _____ dated _____ attached hereto.
  (Initial)

| _Tri-State Paper, Inc_ | Signature | Title _8-24-07_ | Date _8-24-07_ |
|---|---|---|---|
| **PENSKE TRUCK LEASING CO., L.P.** | _Denise Impink_ | **DENISE Y. IMPINK
SENIOR
CONTRACT ANALYST** | _9/29/07_ |

Form 1358-960 (3/01)

216

wrmm/VLSA/Amend-80 kav



# Vehicle Lease Service Agreement
## Schedule "B"
## Deposit Agreement

That certain Vehicle Lease Service Agreement between Tri-State Paper, Inc (hereinafter called "Customer") and Penske Truck Leasing Co., L.P. (hereinafter called "Penske Truck Leasing") dated August 24, 2007, (hereinafter called "The Lease"), is hereby amended to include this Schedule "B" as a part thereof.

As an inducement to Penske Truck Leasing entering into the Lease, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Customer grants and conveys to Penske Truck Leasing a continuing lien and security interest in the deposit.

It is agreed that Penske Truck Leasing shall have the right, at its discretion, without prior demand or notice to Customer, to apply the money on deposit toward the satisfaction of any and all obligations which Customer may have to Penske truck Leasing including, but not limited to, any and all losses sustained by Penske Truck Leasing as a result of Customer's failure to perform its obligations under the Lease.   No modification, termination or cancellation of the Lease shall in any way effect Penske Truck Leasing's right to apply any of the money toward the satisfaction of any of Customer's obligations to Penske Truck Leasing.  If the amount of the deposit shall be sufficient to satisfy Customer's obligations to Penske Truck Leasing, the excess, if any, shall be returned to Customer by Penske Truck Leasing.  If the amount of the deposit shall be insufficient to satisfy Customer's obligations, Customer shall remain liable for the deficiency and Penske Truck Leasing shall be entitled to exercise all of its rights and remedies at law or in equity.

It is further agreed the deposit is to continue for the life of the Lease or ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆, whether or not renewed or modified in any way, and independent of any changes in, or, or to, the vehicle(s) leased to Customer by Penske Truck Leasing.  It may be co-mingled with Penske Truck Leasing's general funds and will not bear interest.

IN WITNESS WHEREOF, Customer has hereunto set his hand, or if Customer be a corporation, has caused these presents to be duly executed by its President, Vice President or other official authorized pursuant to a valid resolution adopted at a duly held meeting of the Board of Directors of said corporation, and Penske Truck Leasing has caused these presents to be executed by an officer thereunto duly authorized this **13th day of July, 2011.**

PENSKE TRUCK LEASING CO., L.P.                    CUSTOMER:Tri-State Paper, Inc

Signature: _____                    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
                    LAURA M. PETTIT
                         SENIOR
Title: _____                    Title: _____
                  CONTRACT ANALYST

Witnessed or Attested by:                              Witnessed or Attested by:
_____Christine Constable_____                          _____

## No Match Found

**Name: TRI-STATE PAPER**                          **City State:**

**Address:**                                        **Country DOB: N/A**



http://web3.penske.com/wlstandalone/CPUWatchListServlet                          8/28/2007

**Exhibit "B"**

<u>COI</u>

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 12/28/2021 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | Sharon Bartol | | |
|---|---|---|---|---|---|
| State Farm Joseph Ems State Farm Agency Inc 7348 Frankford Ave Philadelphia, PA 19136-3829 | | PHONE (A/C, No, Ext): 215-333-5100 | | FAX (A/C, No): | 215-333-6128 |
| | | E-MAIL ADDRESS: Sharon.a.bartol.uivl@statefarm.com | | | |
| | | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | | INSURER A : State Farm Mutual Automobile Insurance Company | | | 25178 |
| INSURED Tri-State Paper INC 4500 N 3rd Street Philadelphia, PA 19140-1502 | | INSURER B : | | | |
| | | INSURER C : | | | |
| | | INSURER D : | | | |
| | | INSURER E : | | | |
| | | INSURER F : | | | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | Y | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | 4730551-A25-38 | 01/25/2022 | 07/25/2022 | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☒ SCHEDULED AUTOS | | | 5116506-B26-28 | 08/26/2021 | 02/26/2022 | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | 4534688-F19-38 | 12/19/2021 | 06/19/2022 | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Unit # 113284 2015 Freightliner VIN 3ALACWDT5FDGL5371 Comprehensive Deductible $1000.00 Collision Deductible $1000.00
Unit # 185762 2017 Freightliner VIN 3ALACWDT0HDJB4098 Comprehensive Deductible $1000.00 Collision Deductible $1000.00
Unit # 328163 2019 Freightliner VIN 3ALACWFC6KDKH6726 Comprehensive Deductible $1000.00 Collision Deductible $1000.00
Unit# 328163 2019 Freightliner VIN 3ALACWFCXKDKX7110 Comprehensive Deductible $1000.00 Collision Deductible $1000.00
Penske Truck Leasing Company Penske Leasing and Rental Company are listed as Loss Payee

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Penske Truck Leasing Company Penske Leasing and Rental Company Route 10 Green Hill PO Box 563 Reading, PA 19063 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Joe Ems* |

© 1988-2015 ACORD CORPORATION. All rights reserved.
ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

209

1001486  132849.13  04-22-2020

**Exhibit "C"**

<u>Indemnification Request</u>

DM3\10232242.1

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE
OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

HARRY M. BYRNE
DIRECT DIAL: +1 215 979 1136
PERSONAL FAX: +1 215 689 4925
*E-MAIL:* hmbyrne@duanemorris.com

*www.duanemorris.com*

August 1, 2023

**VIA FEDEX**

Tri-State Paper Co Inc.
Attn:   Richard Hoy, Counsel
4500 N. 3rd Street
Philadelphia, PA 19140-1502

> **Re:** *Sandor Matusek v. Penske Leasing and Rental Co., Inc; Philadelphia County Court of Common Pleas, No 230402509.*

Dear Mr. Hoy:

Please accept this letter as a formal tender for defense and indemnification by Penske Truck Leasing Co., L.P. (incorrectly identified as Penske Leasing and Rental Co., Inc.) ("Penske") to Tri State Paper Co. Inc. ("Tri-State") in connection with the above-referenced case, pending in the Philadelphia County Court of Common Pleas (the "Action"). The Complaint in the Action alleges that on December 22, 2021, Plaintiff Sandor Matusek was a passenger in a Penske leased truck that was operated by Michael Frank, when it was involved in a collision ("Accident"). *See* Complaint, attached as Exhibit A. Both Mr. Matusek and Mr. Frank were working on behalf of Tri-State when the Accident occurred.

Paragraph 10 of the Vehicle Lease Services Agreement ("VLSA") between Penske and Tri-State provides:

> **10. INDEMNIFICATION**
>
> [Tri-State] shall protect, defend, indemnify and hold harmless [Penske] and its partners and its agents, servants, and employees from any and all claims, suits, costs, losses, damages, expenses and liabilities arising from: (a) [Tri-State's] failure to comply with its obligations to governmental bodies having jurisdiction over [Tri-State] and the Vehicles or **its failure to comply with the terms of this VLSA, or the ownership, use, selection, possession,**

Case ID: 230402509
Control No.: 23123700



August 1, 2023
Page 2

> **maintenance and/or operation of the Vehicle**; (b) any liability imposed upon or assumed by [Tri-State] under any Worker's Compensation Act, plan or contract and any and all injuries (including death) or property damage sustained by [Tri-State] or any driver, agent, servant or employee of [Tri-State]; or (c) [Tri-State's] failure to properly operate or maintain a trailer or other equipment not leased by [Penske] under this VLSA, or to properly connect any trailer or other equipment.  Where the vehicle is operated with a trailer or other equipment not leased by [Penske] under this VLSA, then [Tri-State] warrants that such trailer or other equipment shall be in good operating condition compatible in all respects with the Vehicle with which it is to be used and in compliance with all laws and regulations covering the trailer or other equipment.

*See* VLSA, ¶ 10, attached as Exhibit B.

Paragraph 7 of the VLSA provides: "[t]he Vehicles shall not be operated: (b) in a reckless manner."  *See* VLSA at ¶ 7.  Mr. Frank, the driver at the time of the Accident, informed the Pennsylvania State Police that he knew the brakes were having problems, yet he continued to operate the vehicle.  The Pennsylvania State Police cited Mr. Frank for reckless driving.  *See* Police Report, attached as Exhibit C.  Tri-State, through Mr. Frank, operated the vehicle in a reckless manner and violated the terms of the VLSA.  Tri-State thus owes Penske indemnification pursuant to Paragraphs 7 and 10.

Additionally, Paragraph 9 of the VLSA requires Tri-State to "provide liability coverage for [Tri-State] and [Penske] and its partners and their respective agents, servants and employees, in accordance with the standard provisions of a basic automobile liability insurance policy as required in the jurisdiction in which the Vehicle is operated, against liability for bodily injury, including death, and property damage arising out the ownership, maintenance, use and operation of the Vehicle(s) with limits of at least a combined single limit of One Million Dollars [] per occurrence.  Such coverage shall be primary and not excess or contributory…."  VLSA at ¶ 9.

Within fourteen days, please confirm that Tri-State will agree to indemnify Penske "from any and all claims, suits, costs, losses, damages, expenses and liabilities arising from" Tri-State's use of the Vehicle, as well as the reckless conduct of Tri-State's driver.  Additionally,  please confirm that Tri-State has the required one million dollars in insurance coverage and that Penske is named as an additional insured.

If you wish to discuss this matter, please contact me.  I look forward to hearing from you.

**Duane**Morris

August 1, 2023
Page 3

                                        Sincerely,

                                        /s/ *Harry M. Byrne*

                                        Harry M. Byrne

Enclosures

cc      Donna Signore (via email, donna.signore.hqwx@statefarm.com, claim no. 38-28R8-17B;
        statefarmclaims@statefarm.com)

Case ID: 230402509
Control No.: 23123700