# United States Bankruptcy Court
# Eastern District of Pennsylvania

---

In re: Tri-State Paper, Inc., *Debtor*

Case No. 23-13237-pmm

Chapter 11

---

**First Amended Chapter 11 Subchapter V Plan of Liquidation**

---

To U.S. Bankruptcy Judge PATRICIA M. MAYER, U.S. Trustee ANDREW R. VERA, Subchapter V Trustee RICHARD E. FURTEK, and all creditors, equity security holders, and interested parties:

Debtor Tri-State Paper, Inc., by and through its attorney, submits this plan of liquidation for confirmation pursuant to 11 U.S.C. §§ 1128 and 1129.

Dated: March 24, 2024

*[signature]*

Michael I. Assad (#330937)
Michael A. Cibik (#23110)
E.J. Gruber (#334339)

**Cibik Law, P.C.**
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-735-1060
mail@cibiklaw.com

*Attorney for Debtor
    Tri-State Paper, Inc.*

## Table of Contents

Background ................................................................................................. 1

Article 1  Summary ................................................................................... 1

Article 2  Classification of Claims and Interests........................................ 2

    2.1  Class 1................................................................................. 2

    2.2  Class 2................................................................................. 2

    2.3  Class 3................................................................................. 2

    2.4  Class 4................................................................................. 2

Article 3  Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees................................................................ 3

    3.1  Unclassified claims ............................................................. 3

    3.2  Administrative expense claims ........................................... 3

    3.3  Priority tax claims ............................................................... 3

    3.4  Statutory fees ...................................................................... 3

Article 4  Confirmation, Voting, and Claim Treatment ............................. 3

    4.1  Confirmation of plan........................................................... 3

    4.2  Voting rights and plan acceptance ...................................... 4

    4.3  Treatment of claims and interests ....................................... 4

Article 5  Allowance and Disallowance of Claims .................................... 4

    5.1  Disputed claims .................................................................. 4

    5.2  Distribution on disputed claims .......................................... 4

    5.3  Settlement of disputed claims ............................................. 4

Article 6  Provisions for Executory Contracts and Unexpired Leases........ 5

    6.1  Treatment of executory contracts and unexpired leases ....... 5

Article 7  Means for Implementation of the Plan....................................... 5

Article 8  General Provisions ..................................................................... 6

    8.1  Definitions and rules of construction .................................. 6

    8.2  Effective date ...................................................................... 6

    8.3  Severability......................................................................... 7

    8.4  Binding effect..................................................................... 7

    8.5  Captions.............................................................................. 7

|       |       |    |
|-------|-------|----|
| 8.6   | Controlling effect | 7 |
| 8.7   | Corporate governance | 7 |
| 8.8   | Retention of jurisdiction | 7 |
| 8.9   | Post-Confirmation distribution reports | 8 |
| 8.10  | Compensation of professionals | 8 |
| 8.11  | Modification of plan | 8 |
| 8.12  | Redlines | 9 |
| Article 9  | Discharge | 9 |
| Article 10 | Default Remedies | 9 |
| Article 11 | Acknowledgments | 10 |
| Article 12 | Other Provisions | 10 |
| Exhibit A  | Liquidation Analysis | 11 |
| Exhibit B  | Treatment of Claims | 12 |
| Exhibit C  | Disposable Income Projection | 14 |

## Background

The debtor is a corporation founded on August 1, 2003, by Justino Petaccio, Jr. For many years, the debtor experienced great success by offering paper products and other related supplies to restaurants in Southeastern Pennsylvania, South Jersey, and Delaware.

When Justino Jr. died suddenly in 2021, Justino Petaccio, Sr. assumed ownership of the debtor. When Justino Sr. died in 2023, John Petaccio took ownership of the debtor. John quickly discovered that several employees were taking advantage of the debtor to fraudulently enrich themselves. On top of that, the debtor's warehouse roof partially collapsed in September 2023 following a bad storm. As a result of the mismanagement and the storm damage, the debtor was unable to pay its bills when due and filed this bankruptcy case.

The debtor filed this chapter 11 case on October 27, 2023, and immediately began preparing this plan by requesting that the court issue an order setting the last day to file proofs of claim. The meeting of creditors and status conference were held and concluded in due time. On application of the debtor, the court approved employment of the debtor's attorney, accountant, public adjuster, and realtor. The debtor has filed all required operating reports.

The debtor's primary assets are two pieces of real property in Philadelphia, two vehicles, proceeds of an insurance claim for storm damage, and uncollected accounts receivable.

Through this plan, the debtor intends to liquidate all assets to pay creditors. The debtor has been working to either sell leftover inventory or return it to creditors for appropriate credit. Through its attorney, the debtor has been collecting on delinquent accounts receivable and investigating potentially reversable fraudulent transactions.

## Article 1  Summary

This plan of liquidation (the plan) under subchapter V of chapter 11,title 11 of the U.S. Code proposes to pay creditors of Tri-State Paper, Inc. (the debtor) from the sale of assets, recovery of accounts receivable, and insurance proceeds.

This plan provides for one class of priority claims, one class of secured claims, one class of non-priority unsecured claims, and one class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the debtor has valued at approximately 100 cents on the dollar. This plan also provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to this plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. If you do not have an attorney, you may wish to consult one.**

### Article 2  Classification of Claims and Interests

#### 2.1  Class 1

Class 1 is comprised of priority claims, except administrative expense claims under 11 U.S.C. § 507(a)(2) and priority tax claims under 11 U.S.C. § 507(a)(8)).

#### 2.2  Class 2

Class 2 is comprised of claims secured by the debtor's real and personal property to the extent allowed as secured claims under 11 U.S.C. § 506 and is divided into subclasses for each unique secured claim.

#### 2.3  Class 3

Class 3 is comprised of non-priority unsecured claims allowed under 11 U.S.C. § 502, and all deficiency claims of Class 2 claimholders.

#### 2.4  Class 4

Class 4 is comprised of equity interests of the debtor.

## Article 3  Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

### 3.1  Unclassified claims

Administrative expense claims and priority tax claims are not in classes pursuant to 11 U.S.C. § 1123(a)(1). Claimholders of unclassified claims are not entitled to vote on this plan.

### 3.2  Administrative expense claims

Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be as indicated in Exhibit B. Claimholders of administrative expense claims are not entitled to vote on this plan.

### 3.3  Priority tax claims

Each holder of a priority tax claim will be paid as indicated in Exhibit B. Claimholders of priority tax claims are not entitled to vote on this plan.

### 3.4  Statutory fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this plan have been paid or will be paid on the effective date.

## Article 4  Confirmation, Voting, and Claim Treatment

### 4.1  Confirmation of plan

The debtor is seeking confirmation of this plan under 11 U.S.C. § 1146(a). Confirmation under Section 1146(a) requires that creditors vote to approve the plan under the rules outlined in Article 4.2.

If confirmation under Section 1146(a) is not successful, the debtor will seek confirmation under 11 U.S.C. § 1146(b). To confirm the plan under Section 1146(b), the court must find that all creditors and equity interest holders who do not accept the plan will receive at least as much under the plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the plan as Exhibit A.

4.2 Voting rights and plan acceptance

Only creditors in classes that are impaired may vote on whether to accept or reject the plan, and only creditors holding allowed claims may vote. A class accepts the plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the allowed claims that actually vote, vote in favor of the plan. A class that is not impaired is deemed to accept the plan.

4.3 Treatment of claims and interests

Claims and interests will be treated as indicated in Exhibit B.

## Article 5  Allowance and Disallowance of Claims

5.1 Disputed claims

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the debtor has scheduled such claim as disputed, contingent, or unliquidated.

A claim is considered disputed if it has not been allowed or disallowed by a final non-appealable order and:

(i) a proof of claim is filed or deemed filed and the debtor or another party in interest has objected to it, or

(ii) a proof of claim is not filed and the debtor scheduled the claim as disputed, contingent, or unliquidated.

5.2 Distribution on disputed claims

No distribution will be made on account of a disputed claim unless the claim is allowed by a final non-appealable order.

5.3 Settlement of disputed claims

The debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Fed. R. Bankr. P. 9019.

**Article 6   Provisions for Executory Contracts and Unexpired Leases**

    6.1   Treatment of executory contracts and unexpired leases

        (a) The debtor does not assume or assign any executory contracts or unexpired leases under this plan.

        (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this plan, or that are the subject of a pending motion to assume, and if applicable assign, the debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty-eight days after the date of the order confirming this plan.

| Party | Description of Contract | Election |
|---|---|---|
| Penske Truck Leasing Co., L.P. | Truck Rental | Reject Lease |

**Article 7   Means for Implementation of the Plan**

The plan will be funded from the sale or liquidation of assets, insurance proceeds, and recoveries from claims against third parties. On or before the effective date, the debtor will transfer the funds held by the court to the Trustee for distribution. Any additional amounts needed to fund the plan after the initial distribution will come from the debtor's ongoing sale or liquidation of assets, insurance recoveries, and recoveries from other claims to be paid pro rata as set forth below.

Starting on the effective date and then monthly at the end of each month the debtor will pay within fifteen (15) days the aggregate disposable income to the Subchapter V Trustee for disbursement consistent with this plan. In connection with each monthly disbursement date, the debtor shall deliver to the Subchapter V Trustee (collectively, the "post-petition obligations"):

    (i)    a report setting forth the calculation of the disposable income distributable to creditors,

    (ii)    a copy of the debtor's bank account statements and any other backup reasonably requested by the Subchapter V Trustee to confirm the propriety of the disposable income calculation, and

    (iii)    a check payable to "Richard Furtek, Subchapter V Trustee for the Estate of Tri-State Paper, Inc." in the amount of the disposable income.

If the debtor fails to comply any of its post-petition obligations or if Subchapter V Trustee disagrees with the debtor's disposable Income calculation, he and the debtor shall work collaboratively to resolve any such dispute, the failure of which shall give rise to the right of the Subchapter V Trustee to file with the court a notice of dispute with respect to the disposable income calculation and thereby enabling the Subchapter V Trustee or any other party in interest to seek appropriate relief from the court. The Subchapter V Trustee shall have the right to retain from the amounts paid to him by the debtor fees based on the actual hours worked based on our standard hourly rate on account of the time and services devoted by the Subchapter V Trustee to the services required above.

Payments made pursuant to the plan that are unclaimed after six months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address. Provided that the plan distribution was sent to the claimant's last known address on the claims register, unclaimed funds shall constitute an abandonment of the claim and become the property of the debtor or the entity acquiring the assets of the debtor under the plan (as applicable).

## Article 8  General Provisions

### 8.1  Definitions and rules of construction

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 will apply when terms defined or construed in the Code are used in this plan.

### 8.2  Effective date

The effective date of this plan is the first business day following the date that is fourteen days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date,

- 6 -

the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.3 Severability

If any provision in this plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this plan.

8.4 Binding effect

The rights and obligations of any entity named or referred to in this plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.5 Captions

The headings contained in this plan are for convenience of reference only and do not affect the meaning or interpretation of this plan.

8.6 Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Pennsylvania govern this plan and any agreements, documents, and instruments executed in connection with this plan, except as otherwise provided in this plan.

8.7 Corporate governance

To the extent applicable, the debtor must comply with 11 U.S.C. § 1123(a)(6).

8.8 Retention of jurisdiction

The court shall retain jurisdiction of this case regarding the following matters:

(i) to make such orders as are necessary or appropriate to implement the provisions of this plan and to resolve any disputes arising from implementation of the plan, including default,

(ii) to rule on any modification of the plan proposed under 11 U.S.C. §1193,

    (iii)    to hear and allow all applications for compensation to professionals and other administrative expenses,

    (iv)    to resolve all issues regarding claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases,

    (v)    to adjudicate any cause of action which may exist in favor of the debtor, including preference and fraudulent transfer causes of action, and

    (vi)    to direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary or the consummation of the plan.

### 8.9 Post-Confirmation distribution reports

The Subchapter V Trustee is responsible for filing post-confirmation distribution reports pursuant to L.B.R. 3021-1.

### 8.10 Compensation of professionals

From and after the effective date, the reorganized debtor may, in the ordinary course and without the necessity of any approval by the Bankruptcy court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the plan.

### 8.11 Modification of plan

The debtor may modify the plan at any time before confirmation of the plan pursuant to 11 U.S.C. § 1193(a). However, the court may require additional items including re-voting on the plan. If the plan is confirmed under 11 U.S.C. § 1191(a), the debtor may also seek to modify the plan at any time after confirmation only if the plan has not been substantially consummated and the court authorizes the proposed modifications after notice and a hearing.

If the plan is confirmed under 11 U.S.C. § 1191(b), the debtor may seek to modify the plan at any time only if: (1) it is within three years of the confirmation date, or such longer time not to exceed five

years, as fixed by the court and (2) the court authorizes the proposed modifications after notice and a hearing.

### 8.12 Redlines

Any version of this plan that includes redlines [thus to identify new matter and ~~thus~~ to identify omitted matter] is intended to show differences between amended plans for informational purposes only and is not an operative document.

### Article 9    Discharge

Except as otherwise provided in this plan, if this plan is confirmed under 11 U.S.C. § 1191(a), on the Confirmation Date of this plan, the debtor will be discharged from any debt that arose before confirmation of this plan, subject to the occurrence of the effective date, to the extent specified in 11 U.S.C. § 1141(d); Except as otherwise provided in this plan, if this plan is confirmed under Section 1191(b), as soon as practicable after completion by the debtor of all payments due under the plan, unless the Court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided in Section 1141(d)(1)(A), and all other debts allowed under 11 U.S.C. 503 and provided for in this plan, except any debt on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or if applicable, of the kind specified in Section §523(a).

### Article 10    Default Remedies

Notwithstanding any provision of this plan, if the debtor fails to perform any post-petition obligation to the Subchapter V Trustee, the Subchapter V Trustee may give written notice of the default (the "Default Notice") to the debtor, debtor's counsel, and the U.S. Trustee by email and first-class mail, postage prepaid, on or after the fifteenth (15th) day following the default and file a copy of the default notice electronically on the public docket. The debtor shall have thirty-five (35) days from the issuance of a default notice (the "notice period") to cure all defaults. If the debtor fails to cure all defaults within any notice period, the Subchapter V Trustee may certify default to this court. Upon certification of default by the Subchapter V Trustee, the court may enter an order converting this case to chapter 7 without further notice and hearing.

### Article 11  Acknowledgments

The debtor and its attorneys acknowledge that this plan was made possible by the guidance, cooperation, and courtesy of the court, the U.S. Trustee, the Subchapter V trustee, the debtor's professionals, and the creditor body.

### Article 12  Other Provisions

None.

- 10 -

# Exhibit A
# Liquidation Analysis

### Assets at Liquidation Value as Scheduled on Amended Schedule A/B (ECF No. 112)

| | |
|---|---:|
| Real Property | $968,600.00 |
| Bank Accounts | $63,259.39 |
| Accounts Receivable | $500,000.00 |
| Customer Lists | $2,000.00 |
| Intellectual Property | $8.00 |
| Office Equipment/Supplies | $2,500.00 |
| Vehicles | $50,000.00 |
| Inventory | $250,000.00 |
| Claims Against Third Parties | $29,600.25 |
| Insurance Claim Proceeds | $580,000.00 |
| **Total** | **$2,445,967.64** |

### Claims Senior to General Unsecured Claims

| | |
|---|---:|
| Secured Claims | $462,145.19 |
| Priority Claims | $61,758.85 |
| Chapter 7 Trustee Fees (Estimated) | $96,629.03 |
| Chapter 11 Professional Fees | $100,000.00 |
| **Total** | **$720,533.07** |

### Summary

| | |
|---|---:|
| Assets at Liquidation Value | $2,445,967.64 |
| Claims Senior to General Unsecured Claims | (-) $720,533.07 |
| **Funds Available for Unsecured Claims** | **$1,725,434.57** |
| | |
| Allowed General Unsecured Claims | $436,909.57 |
| Distribution to Unsecured Claimholders (Chapter 7) | 100% |
| Distribution to Unsecured Claimholders (This plan) | 100% |

## Exhibit B
## Treatment of Claims

### Priority Tax Claims

| Creditor | Claim # | Impairment | Treatment |
|---|---|---|---|
| City of Philadelphia | 8 | Unimpaired and not entitled to vote. | To be paid $1,278.85 in cash, with interest at an annual rate of 3% |
| Pennsylvania Department of Revenue | 6 | Unimpaired and not entitled to vote. | To be paid $1 in cash, with interest at an annual rate of 3%. |

### Class 1
### Priority Unsecured Claims

| Creditor | Claim # | Impairment | Treatment |
|---|---|---|---|
| Oliver Fire Protection & Security | 34 | Unimpaired and not entitled to vote. | To be paid $5,480.00 in cash. |

### Class 2
### Secured Claims

| Creditor | Claim # | Subclass | Impairment | Treatment |
|---|---|---|---|---|
| City of Philadelphia | 8 | 2C | Impaired and entitled to vote. | To be paid $22,067.39 in cash, with interest at an annual rate of 6%. |
| City of Philadelphia | 12 | 2D | Impaired and entitled to vote. | To be paid $443.26 in cash. |
| Pennsylvania Department of Revenue | 6 | 2B | Impaired and entitled to vote. | To be paid $13,734.58 in cash, with interest at an annual rate of 6%. |

- 13 -

## Class 3
### General Unsecured Claims

All unsecured claims filed on or before March 24, 2024, will be paid in full, except such claims that have been disallowed by order of the Court.

## Class 4
### Equity Interests

NONE

**Exhibit C**
**Disposable Income Projection**

| **Month** | **Revenue** | **Expenses** | **Disposable Income** |
|---|---|---|---|
| Month 1 | $17,500.00 | $15,000.00 | $2,500.00 |
| Month 2 | $17,500.00 | $15,000.00 | $2,500.00 |
| Month 3 | $17,500.00 | $15,000.00 | $2,500.00 |
| Month 4 | $20,000.00 | $15,000.00 | $5,000.00 |
| Month 5 | $20,000.00 | $15,000.00 | $5,000.00 |
| Month 6 | $20,000.00 | $15,000.00 | $5,000.00 |
| Month 7 | $22,500.00 | $15,000.00 | $7,500.00 |
| Month 8 | $22,500.00 | $15,000.00 | $7,500.00 |
| Month 9 | $22,500.00 | $15,000.00 | $7,500.00 |
| Month 10 | $25,000.00 | $15,000.00 | $10,000.00 |
| Month 11 | $25,000.00 | $15,000.00 | $10,000.00 |
| Month 12 | $2,215,967.64 | $15,000.00 | $2,200,967.64 |