# United States Bankruptcy Court
# Eastern District of Pennsylvania

| | |
|---|---|
| In re:<br><br>Tri-State Paper, Inc.,<br><br>　　　　Debtor. | Case No. 23-13237-pmm<br><br>Chapter 11 |

**Debtor's Opposition to Penn Jersey Paper Company's Motion to Reconsider**

Debtor Tri-State Paper, Inc., by and through its attorney, opposes the motion to reconsider filed by Penn Jersey Paper Company and relies on the following memorandum of law in support of its opposition.

**Memorandum of Law**

The Court must deny the motion because the circumstances do not warrant reconsideration. There is no new law, no new evidence, no clear errors of law, and no manifest injustice. But even if the Court decides that reconsideration is appropriate, its decision must be reaffirmed because the totality of the circumstances do not support a finding of excusable neglect. Even if allowance of the claim is not prejudicial to the Debtor, the length of the delay was substantial, several people had several chances to correct the error, and Penn Jersey has acted in bad faith since discovering its error. All of these factors, taken together, require the court to deny Penn Jersey's original motion on the merits.

**I.　　As a matter of law, the Court must deny the motion because reconsideration is unwarranted under the circumstances.**

The reconsideration motion is not appropriate under Fed. R. Bankr. P. 59(e) because there is no intervening change in controlling law, there is no new evidence available, and there is no need to correct a clear error of law or prevent manifest injustice. *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### A. There is no new law that warrants reconsideration.

The reconsideration motion does not cite any new law – every authority cited could have been included in the original motion (and many arguments are copied and pasted from the original motion).

### B. There is no new relevant evidence that warrants reconsideration.

Nothing relevant has changed since the original motion was heard. Although Penn Jersey uses the recent SERVPRO claim to try to contradict the Debtor's warning about opening a can of worms by allowing late claims, the Court must not be persuaded by Penn Jersey's very dishonest reasoning. The record shows that the Debtor's can of worms argument was made with respect to creditors who had notice of the bankruptcy case and claims deadline. ECF No. 211-2, pp. 9 ("[T]his Court could open a can of worms by allowing this claim because there are other . . . scheduled claims that were not filed."). Unlike Penn Jersey, SERVPRO did not have notice of the bankruptcy and did not have the opportunity to file a claim. That is quite different than Penn Jersey, which had notice and failed to file a claim.

### C. There are no errors of law or manifest injustice that warrant reconsideration.

The motion to reconsider must be denied because the Court gave a well-reasoned explanation of its decision and Penn Jersey's allegations do not meet the standard of manifest injustice.

#### 1. The Court's order coincided with a bench opinion explaining the Court's reasoning.

Penn Jersey's allegation that the Court rendered its decision summarily without an opinion, reasoning, or reference to the excusable neglect standard enumerated by *Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380 (1993) is a work of fiction. The Court gave a well-reasoned

2

explanation of its decision, explaining that the multiple notices received by Penn Jersey rendered its neglect inexcusable. ECF No. 211-2, pp. 15-16. The Court prefaced its decision by stating that it was informed by the arguments of the parties and their pleadings. *Id*.

The authority Penn Jersey cites in support of its allegation that the Court's ruling was deficient compares apples to oranges. In *In re Cendant Corp. Prides Litigation*, 234 F.3d 166 (3d Cir. 2000), there were unresolved questions of fact related to the culpability of other parties for the creditor's negligence. There were no disputed questions of fact here, only questions of law. In *In re Diet Drugs Products Liability*, 401 F.3d 143 (3d Cir. 2005), the court in that case denied the motion without *any* opinion, reasoning, or reference to *Pioneer*. The Court here gave reasons for its decision, specifically mentioning *Pioneer*. The Court must not discard its well-reasoned decision just because Penn Jersey does not like it.

### 2. Penn Jersey's disappointment is not manifest injustice.

The Court cannot reconsider its order because the decision is not "so patently unfair and tainted that the error is manifestly clear to all who view it," and it does not present an error that is "apparent to the point of being indisputable." *Von Kahle v. Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) (citation and quotation marks omitted) (Frank, B.J.). Even though Penn Jersey asserts that the order was not correct, the kind of error that supports reconsideration must be "direct, obvious, and observable," like an involuntary guilty plea or a plea agreement that a prosecutor has rescinded. *Id*. The only thing direct, obvious, and observable here is that Penn Jersey does not like the Court's decision. That is not enough.

3

**II.    As a matter of law, the Court must deny the motion because the movant's neglect is not excusable.**

When all the elements of *Pioneer* are considered, Penn Jersey fails the test. Even if there is no prejudice to the Debtor, Penn Jersey's neglect is not excusable because the length of the delay was substantial, the reason for delay was within Penn Jersey's control, and Penn Jersey has not acted in good faith since discovering its error. *Pioneer*, 507 U.S. at 395.

**A.    Prejudice to the Debtor is a collateral issue that Penn Jersey is using to muddy the waters.**

Time and again, Penn Jersey tries to deflect failing the *Pioneer* test by alleging and emphasizing that allowance of its claim would not prejudice the Debtor. The Debtor believes that allowing the claim would be prejudicial for all the reasons previously stated on the record, which the Debtor incorporates into this memorandum by reference. That said, in analyzing the *Pioneer* elements, the Court should assume for the sake of argument that allowing the claim would not prejudice the Debtor. Even if there is zero prejudice to the Debtor, Penn Jersey fails the *Pioneer* test because all the other elements weigh against it so heavily.

**B.    The length of the delay does not support a finding of excusable neglect.**

Penn Jersey blew the deadline by thirty-four days. If it were a day or two, it might be a different story. But the length of time shows just how negligent Penn Jersey was. Thirty-four days represents:

- one month and three days
- four weeks and six days
- 2,937,600 seconds
- 48,960 minutes

4

- 816 hours

- 9.29% of 2024

### C. The reason for the delay does not support a finding of excusable neglect.

Of all the *Pioneer* elements, the reason for the delay is most important. *Larson v. Bayer*, 527 B.R. 202, 208-09 (Bankr. E.D. Pa. 2015) (Frank, C.B.J.). In evaluating this element, the Court must consider "(1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance. *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 325-26 (3d Cir. 2012); *Larson*, 527 B.R. at 208 n.15. None of those factors provide good reason to excuse Penn Jersey's neglect.

#### 1. Penn Jersey's late claim is not the result of professional incompetence.

Penn Jersey's failure to take action was not the result of incompetence because both Penn Jersey and its attorney knew of the deadline and understood that a claim needed to be filed before the deadline.

#### 2. Penn Jersey's neglect is capable of verification by the Court, and that is part of the problem.

The veracity of Penn Jersey's story is not in dispute and the Court should readily accept its explanation of what happened. But that is part of the problem – Penn Jersey readily admits that it received proper notice of the claim deadline and ultimately failed to make sure a claim was filed.

5

      **3.    Penn Jersey's claim was filed late because it failed to provide for a readily foreseeable consequence.**

Penn Jersey could have filed the proof of claim itself, but **Penn Jersey failed to do so.** Penn Jersey could have followed up with its attorney to make sure the attorney received its direction to file a proof of claim, but **Penn Jersey failed to do so.** Penn Jersey could have followed up with its attorney a few days before the claim deadline to make sure the claim was filed, but **Penn Jersey failed to do so.** Penn Jersey could have followed up with its attorney a few days *after* the deadline, but **Penn Jersey failed to do so.** Penn Jersey's attorney could have marked his calendar when he received the notice, but **Penn Jersey's attorney failed to do so.**

      **4.    Penn Jersey and its attorney exhibited a complete lack of diligence.**

Penn Jersey's failure to file a proof of claim was not caused by one mistake or one person. Several people had several chances to correct the error in due time, but they did not. This shows that Penn Jersey repeatedly exhibited a complete lack of diligence, which is not excusable.

      **5.    The absence of bad faith in missing the deadline does not render Penn Jersey's neglect excusable.**

There is nothing to indicate that Penn Jersey acted in bad faith by failing to file its claim in time. The Debtor is sympathetic to Penn Jersey, and the Court should be too. But because of all the other factors weighing against Penn Jersey, sympathy is not enough.

      **D.    Penn Jersey has acted in bad faith since discovering its mistake.**

Penn Jersey has acted in bad faith since it discovered that it blew the proof of claim deadline. Rather than exhibit some level of humility for its mistake, Penn Jersey responded with belligerence and hostility. If Penn Jersey had approached this matter in good faith, the Debtor may have been

6

willing to compromise. Instead, Penn Jersey resorted to bullying the Debtor with pathetic false bravado. Exhibit A.[1]

Once the Debtor objected to the original motion, Penn Jersey demanded that the Debtor withdraw the objection. When the Debtor declined to do so, Penn Jersey responded by filing a claim against the estate of the Debtor's principal's dead father. Exhibit B. Penn Jersey's estate claim is probably bogus. But just the same, it invites the question of why Penn Jersey is trying so hard to make a claim in this bankruptcy case while also pursuing the same claim in another court. Is it a poorly executed attempt to bully the Debtor at the expense of a dead relative, or is Penn Jersey trying to double dip? In any event, Penn Jersey has acted in bad faith.

## Conclusion

Because reconsideration is not appropriate under the circumstances, and because the facts here do not support a finding of excusable neglect, the Court must deny Penn Jersey's motion.

Date: March 26, 2024

        CIBIK LAW, P.C.
        *Attorney for Debtor*

        By: /s/ MICHAEL I. ASSAD
            Michael I. Assad (#330937)
            1500 Walnut Street, Suite 900
            Philadelphia, PA 19102
            215-735-1060
            help@cibiklaw.com

---

[1] Although offers in compromise may not be used as evidence with respect to the validity, invalidity, or amount of a disputed claim, offers in compromise are admissible to prove bad faith. *See, e.g., Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000).

## Certificate of Service

I certify that on this date I caused this document to be served on all parties on the clerk's service list by electronic means through the CM/ECF system.

Date: March 26, 2024                             /s/ Michael I. Assad
                                                 Michael I. Assad