**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Tri-State Paper, Inc.<br><br>*Debtor*. | Case No. 24-13237-PMM<br>Chapter 11 |

### Response to Debtor's Objection to First and Final Application for Compensation and Reimbursement of Expenses of Cibik Law, P.C.

Applicant Cibik Law, P.C., through Michael A. Cibik, Esq., responds to the objection filed by Debtor Tri-State Paper Inc. to the Applicant's First and Final Application for Compensation and Reimbursement of Expenses. The Debtor alleges that the Applicant's fees are unreasonably high, that the Debtor believed the $40,000 retainer would cover all legal fees and costs, that it was unaware of its obligation to make trustee plan payments, and that those trustee plan payments are unreasonable and unconscionable. Each of these objections is baseless and must be overruled.

In summary, the Debtor's objections are procedurally defective, substantively unfounded, and fail to acknowledge the legal obligations and realities of the bankruptcy process. The objection was not timely filed, rendering it procedurally invalid. The Debtor's claims regarding the $40,000 retainer and the alleged unreasonableness of the Applicant's fees are contradicted by the clear terms of the retainer agreement and the substantial value provided by the Applicant throughout the case. Additionally, the Debtor's concerns about the trustee payments under the confirmed plan are irrelevant to the fee application and ignore the necessity of these payments as mandated by the bankruptcy process.

**I.**

The objection must be overruled because it was not timely filed. The notice attached to the application specified that all objections must be filed with the Court on or before August 23, 2024. ECF No. 263-5. The notice specifically instructs potential objectors who choose to mail objections that they must do so early enough so that it is received by the Court on or before the deadline. The Debtor's objection is dated August 23, 2024, but was not received by the Clerk until August 26, 2024.

**II.**

The Debtor's objections to the fees requested by the Applicant are unfounded. The Debtor incorrectly asserts that the $40,000 retainer was intended to cover the entire cost of legal services, despite the clear terms of the retainer agreement specifying otherwise. Additionally, the Debtor's claim that the fees requested are unreasonably high lacks any substantive basis and ignores the significant value provided by the Applicant throughout the bankruptcy proceedings. The Debtor also misstates the total amount requested by the Applicant, failing to acknowledge both the agreed-upon discount and the specific breakdown of the fees. Each of these objections is baseless and must be dismissed accordingly.

**A.**

The Debtor's belief that the $40,000 retainer was the total payment for legal services is incorrect, according to the clear terms outlined in the retainer agreement, which specifically explains the purpose and scope of the $40,000 payment. The agreement, which is attached as Exhibit A, was signed by the Debtor's principal on

October 20, 2023, and included in the Debtor's application to employ the Applicant, which the Court approved on November 7, 2023. ECF No. 32.

The agreement explicitly states that the $40,000 payment is an initial retainer. The Agreement provides: "This retainer will be deposited in our attorney trust account but we may draw on it, up to its full amount, as and when we deem appropriate, subject to Court approval of post-petition fees. You agree to advance additional retainers as requested." This provision unambiguously indicates that the $40,000 is not a comprehensive payment for all legal services but an advance against which fees and costs would be charged.

The agreement further clarifies that the total cost of legal services will be determined by the actual time and effort required to manage the Debtor's Chapter 11 case. The relevant section of the Agreement specifies: "Our professional fees are usually determined by multiplying the actual number of hours incurred by the hourly billing rate. We reserve the right, subject to Court approval, to make upward or downward adjustments to these hourly determinations as may be appropriate given the circumstances." This provision underscores that the $40,000 retainer is only the starting point, and the total fees could exceed this amount, depending on the demands of the case. The agreement also says that "Interim applications for compensation and reimbursement of expenses will be filed by the Firm with the Bankruptcy Court to obtain authorization for further payment." The reference to further payment makes it obvious that the $40,000 retainer was not the be-all and end-all.

3

**B.**

The Debtor fails to explain why it believes that the fees requested in the application are unreasonably high. As outlined in the application, the Applicant provided substantial, high-quality services to the Debtor in connection with this bankruptcy case. The Applicant's diligent and attentive work resulted in confirmation of a plan in less than six months. As can be seen from the docket, the Applicant vigorously advocated for the Debtor at every step of the process. By law and contract, the Applicant is entitled to compensation for the services it performed.

**C.**

The Debtor is mistaken about the total amount requested by the Applicant. As outlined in the application, the total fees incurred were $120,915. But the Applicant had agreed to discount its fees in the amount of $13,000. As reflected on the proposed order attached to the application, the Applicant is requesting authorization for the trustee to pay $71,814, in addition to the $40,000 already paid by the Debtor.

**III.**

The Debtor's misgivings about the trustee payments under the plan are not relevant to the fee application. Even so, because proposing and prosecuting the confirmation of the plan was a major service provided by the Applicant, these objections warrant a response. The Applicant did inform the Debtor that plan payments would be necessary, both during the initial consultation and throughout the process of confirming the plan. After all, payment to creditors is the very purpose

of a Chapter 11 bankruptcy case. The plan, which outlines the monthly payments, was served on the Debtor's principal on February 9, 2024. ECF No. 161.

But the payment schedule the Applicant recently sent to the Debtor, which is attached to the objection as Attachment No. 2, contains a mistake. The Applicant erroneously listed the final payment as being in the amount of $2,200,967.64. Although that is the monthly disposable income listed in the plan for that particular month due to the expected sale of real property, the Applicant expects that the actual final payment required will be about $600,000. The Applicant explained this error to the Debtor's principal during a recent phone call that took place before the objection was filed.

In any event, the Debtor fails to explain why it believes the trustee payments are unreasonable and unconscionable. As outlined in the plan's liquidation analysis, the Debtor has substantial assets in the form of real property. Because the value of those assets exceed the amount of its debts, the Debtor must make full payment to unsecured creditors. That is neither unreasonable nor unconscionable — it is how the bankruptcy process works

## Conclusion

The Debtor's objection lacks merit and is unsupported by the retainer agreement or the bankruptcy process. The $40,000 retainer was defined as an initial payment, not the total cost for legal services, and the fees requested reflect the significant and effective work performed by the Applicant. For those reasons, the

5

Court must overrule the Debtor's objection, approve the fee application, and grant the requested relief in favor of the Applicant in the form of order attached.

Date: August 27, 2024

CIBIK LAW, P.C.
*Applicant and Attorney for Debtor*

By: /s/ Michael A. Cibik

Michael A. Cibik (#23110)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-735-1060
help@cibiklaw.com

6