**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 11 |
| Tri-State Paper, Inc., | Case No. 23-13237 |
| Debtor. | Related to Doc. Nos.: 230, 231 |
| | Hearing Date: TBD |
| | Hearing Time:  TBD |

**MOTION FOR STATUS CONFERENCE**

Penske Truck Leasing Co., L.P. ("Penske" or "Movant"), by and through its undersigned counsel, hereby files this *Motion for Status Conference* and, in support thereof, respectfully states as follows:

1. On March 27, 2024, a confirmation hearing was held before this Court (the "Initial Confirmation Hearing").

2. At the Initial Confirmation Hearing, the Debtor, among other things, agreed to further amend its *First Amended Chapter 11 Subchapter V Plan of Liquidation* [Docket No. 216] (the "First Amended Plan") to include language that would address the anticipated rejection damages' claim that Movant intended to file related to the Debtor's anticipated rejection of a certain Vehicle Lease Services Agreement (as amended and supplemented from time to time, the "VLSA") that the Debtor and Penske had entered into prior to the commencement of the bankruptcy case.

3.  On April 3, 2024, Tri-State filed the *Second Amended Chapter 11 Subchapter V Plan of Liquidation* [Docket No. 230] (the "Second Amended Plan"),[1] which provided, among other things, for Penske to file a rejection damages' claim following confirmation of the Second Amended Plan.

4.  On April 4, 2024, the Court entered the *Order Confirming Chapter 11 Subchapter V Plan* [Docket No. 231] (the "Confirmation Order") confirming Tri-State Paper, Inc.'s (the "Debtor") Second Amended Plan.

5.  Pursuant to the Second Amended Plan,[2] all general unsecured creditors, classified into "Class 3," were to be paid in full, except any claims that are disallowed by the Court. *See* Second Amended Plan at § 1 and Ex. B.

6.  Pursuant to the Plan Confirmation Order and the Second Amended Plan, the Debtor rejected the VLSA as of April 4, 2024 (the "Rejection Date").

7.  On May 2, 2024, Penske filed a rejection damages' claim, as permitted under the Second Amended Plan in the amount of $62,822.08 (the "Rejection Damages' Claim"), representing the remaining monthly payments under the VLSA, as well as $97,220.37 in costs and attorneys' fees associated with the State Court Action (as that term is defined in the Rejection Damages' Claim) for a total rejection damages' claim of $160,042.45.

8.  On June 31, 2024, the Debtor filed two objections: (1) an objection to Penske's original claim [Claim #33] ("Penske's Original Claim") [Docket No. 257]; and (2) an objection to the Rejection Damages' Claim [Claim #39] [Docket No. 260]. In its claim objections, the Debtor asserted that Penske's Original Claim was duplicative, and that the Rejection Damages'

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Second Amended Plan.

[2] Pursuant to the Second Amended Plan, upon the Rejection Date, the Debtor agreed to fund a disputed claim reserve (the "Disputed Claims Reserve") for payment of the Rejection Damages' Claim. *See* Second Amended Plan at § 5.2.

Claim was seeking reimbursement for amounts already covered/paid by an insurance policy in the State Court Action.

9. On September 11, 2024, a hearing was held before this Court to consider the Debtors' objections to Penske's claims.

10. During the hearing, Penske agreed with the Debtor that the Original Claim was duplicative and, thus, could be disallowed, but that the Debtor had not rebutted the *prima facie* validity of the Rejection Damages' Claim, especially since the Debtor had failed to show that Penske had received anything on account of its attorneys' fees from the insurance company.

11. At this hearing, Penske's counsel informed both Debtor's counsel and the Court that in the unlikely event that Penske was reimbursed for its attorneys' fees by the insurance company (prior to receiving a distribution on account of the Rejection Damages' Claim), it would alert both the Court and Debtor's counsel and amend its claim accordingly.

12. With this representation, Debtor's counsel withdrew its objection to the Rejection Damages' Claim.

13. On October 18, 2024, the Subchapter V Trustee filed a *Post-Confirmation Distribution Report* [Docket No. 291] (the "October 2024 Distribution Report") indicating that the Debtor had only remitted a total of $15,000 to fund plan disbursements since entry of the Confirmation Order, and that no disbursements have been made by the Subchapter V Trustee related to the Second Amended Plan.

14. Pursuant to the terms and conditions of the Second Amended Plan, Debtor was supposed to contribute a total of $17,500 by October 18, 2024. *See* Plan at Ex. C.

15. Notwithstanding the express terms and conditions of the Second Amended Plan, no creditors have been paid and, on January 24, 2025, the Subchapter V Trustee filed another *Post-Confirmation Distribution Report* [Docket No. 309] (the "December 2024 Distribution Report") indicating that the Debtor had only remitted an additional $15,000 (for a total of

3

$30,000) to fund plan disbursements since entry of the Confirmation Order, and that no disbursements have been made to creditors.

16. Pursuant to the terms and conditions of the Second Amended Plan, Debtor was supposed to contribute a total of $37,500 by December 31, 2024. *See* Plan at Ex. C.

17. To date, the Subchapter V Trustee has not made any distributions to any creditor.

18. Pursuant to the terms and conditions of the Second Amended Plan, creditors with allowed unsecured claims are to be paid in full by April 19, 2025.[3]

19. The Subchapter V Trustee has informed Penske that the Debtor is attempting to sell its real property to fund the distributions to be made under the Second Amended Plan, despite the fact that under the original Chapter 11 Subchapter V Plan of Liquidation (the "Original Plan") [Docket No. 145] such property was to be sold months ago so that the proceeds derived from the sale of the property could be used to pay creditors by the end of last year. However, the Trustee did not provide any information regarding the status and timing of when such sale shall occur or when creditors should expect distributions thereafter.

20. Given the inactivity in the case, Penske believes that a status conference is appropriate in order for the Debtor to report to the Court and to its creditors, including, Penske, on the status and timing of when it intends to sell the necessary property in order to begin making distributions, as well as provide an explanation as to what issues, if any, would impair or preclude the Debtor from completing such sale.

---

[3] Debtor's Original Plan [Docket No. 145] proposed on January 24, 2024, provided that general unsecured creditors would be paid in full within twelve (12) months of the effective date, as seen in the Disposable Income Projection under Exhibit C therein. As a result of the amendments to the Plan and delayed effective date, the Debtor has now been given an extra three (3) months to dispose of the real property in order to complete plan payments.

WHEREFORE, Movant respectfully requests that an Order be entered scheduling a status conference in this case.

Respectfully Submitted,

Dated:  February 7, 2025            **DUANE MORRIS LLP**

*/s/ Lawrence J. Kotler*
Lawrence J. Kotler (PA Bar No. 56029)
Ryan Spengler (PA Bar No. 332107)
30 S. 17th Street
Philadelphia, PA 19103
215.979.1000 (Telephone)
215.979.1020 (Facsimile)
LJKotler@duanemorris.com
RSpengler@duanemorris.com

*Counsel for Creditor Penske Truck Leasing Co., L.P.*

5