# EXHIBIT "A"

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7DE32D6

# AGREEMENT FOR THE SALE OF COMMERCIAL PROPERTY

This form recommended and approved for, but not restricted to use by, members of the Pennsylvania Association of REALTORS® (PAR).

---

**SELLER'S BUSINESS RELATIONSHIP WITH PA LICENSED BROKER**

BROKER (Company) MPN Realty, Inc.                                    PHONE  (215) 413-4900
ADDRESS  1601 Walnut Street, Suite 900, Philadelphia, PA 19102       FAX  (215) 413-0230
LICENSEE(S)           Christopher J. Cimino              Designated Agent? ☑ Yes  ☐ No
BROKER IS THE AGENT FOR THE SELLER               OR (if checked below):
Broker is NOT the Agent for Seller and is a/an:  ☐ AGENT FOR BUYER   ☐ TRANSACTION LICENSEE

---

**BUYER'S BUSINESS RELATIONSHIP WITH PA LICENSED BROKER**

BROKER (Company) MPN Realty, Inc.                                    PHONE  (215) 413-4900
ADDRESS  1601 Walnut Street, Suite 900, Philadelphia, PA 19102       FAX  (215) 413-0230
LICENSEE(S)           Christopher J. Cimino              Designated Agent? ☑ Yes  ☐ No
BROKER IS THE AGENT FOR THE BUYER                OR (if checked below):
Broker is NOT the Agent for Buyer and is a/an:  ☐ AGENT FOR SELLER  ☐ SUBAGENT FOR SELLER  ☐ TRANSACTION LICENSEE
When the same Broker is Agent for Seller and Agent for Buyer, Broker is a Dual Agent. All of Broker's licenses are also Dual Agents
UNLESS there are separate Designated Agents for Buyer and Seller. If same Licensee is designated for Seller and Buyer, the Licensee is a
Dual Agent.

---

1  THIS AGREEMENT, dated _____ January 12, 2026 _____ is between
2  SELLER(s): _____
3            Robert W Seitzer, in his capacity as the Chapter 7 Trustee for the Estate of Tri-State Paper, Inc.
4  _____
5  _____, called "Seller," and
6  BUYER(s):_____ 4500 A&E, LLC _____
7  _____
8  _____
9  _____, called "Buyer."
10  **1.   PROPERTY.** Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:
11  ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected, if any, known as:
12  _____
13                              4500 N 3rd Street
14  _____
15  in the____City_____of_____Philadelphia_____County of_____Philadelphia_____,
16  Commonwealth of Pennsylvania. Identification (e.g., Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date)
17  _____
18                              O.P.A. # 884813900
19  _____
20  **2.   TERMS (10-06)**
21  (A) Purchase Price_____Nine Hundred Thousand Dollars  ($900,000)_____
22  Which will be paid to Seller by Buyer as follows:
23       1.   Cash or check at signing this Agreement:_____ $____$120,000_____
24       2.   Cash or check within ___ days of the execution of this Agreement: _____ $_____
25       3.   _____ $_____
26       4.   _____ $_____
27       5.   Cash or cashier's check at time of settlement:_____ $____$780,000_____
28                                          TOTAL $____$900,000_____
29  (B) Deposits paid by Buyer within 30 DAYS of settlement will be by cash or cashier's check. Deposits, regardless of the form of payment
30       and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here),
31  _____
32                     Robert W. Seitzer, Chapter 7 Trustee for Tri-State Paper, Inc.
33  _____
34  who will retain deposits in an escrow account until consummation or termination of this Agreement in conformity with all applicable
35  laws and regulations. Any check tendered as deposit monies may be held uncashed pending the acceptance of this Agreement.
36  (C) Seller's written approval on or before: _____January 16, 2026_____
37  (D) Settlement to be on _____February 27, 2026_____,or before if Buyer and Seller agree.
38  (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here:_____
39  _____

Buyer Initials: [signature]                              Seller Initials: [signature]

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7EE2bbf

(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here:_____

(G) At time of settlement, the following will be adjusted pro-rata on a daily basis between Buyer and Seller, reimbursing where applicable: taxes (see Notices and Information Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees, if any; water and/or sewer fees, if any; together with any other lienable municipal service. All charges will be pro-rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:_____

(H) Buyer will reimburse Seller for actual costs of any remaining heating, cooking or other fuels stored on the property at the time of settlement, unless otherwise stated here: _____

**3. FIXTURES & PERSONAL PROPERTY (1-00)**

(A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, including plumbing; heating; HVAC equipment; lighting fixtures (including chandeliers and ceiling fans); and water treatment systems, unless otherwise stated below. Also included: _____

(B) LEASED items (not owned by Seller):_____

(C) EXCLUDED fixtures and items:_____

**4. POSSESSION (5-01)**

(A) Possession is to be delivered by deed, keys and:
  1. Physical possession to vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless otherwise stated here:_____ AND/OR
  2. Assignment of existing lease(s), together with any security deposits and interest, at day and time of settlement, if Property is leased at the execution of this agreement, unless otherwise specified here: _____

(B) Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise specified.

(C) Seller will not enter into any new leases, extensions of existing leases, or additional leases for the Property without written consent of Buyer.

**5. DATES/TIME OF THE ESSENCE (9-05)**

(A) The settlement date and all other dates and times referred to for the performance of any of the obligations of this Agreement are of the essence and are binding.

(B) For the purposes of this Agreement, the number of days will be counted from the date of execution, excluding the day this Agreement was executed and including the last day of the time period. The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. All changes to this Agreement should be initialed and dated.

(C) The settlement date is not extended by any other provision of this Agreement and may only be extended by written agreement of the parties.

(D) Certain time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed time periods are negotiable and may be changed by striking out the pre-printed text and inserting a different time period acceptable to all parties.

**6. FINANCING CONTINGENCY (10-06)**

☒ WAIVED. This sale is **NOT** contingent on financing, although Buyer may still obtain financing.

☐ ELECTED.

(A) This sale is contingent upon Buyer obtaining financing as follows:

Buyer Initials: _____

Seller Initials: _____

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7DE9202

| | |
|---|---|
| 103 | 1.   Amount of loan $ _____ |
| 104 | 2.   Minimum Term _____ years |
| 105 | 3.   Type of loan _____ |
| 106 | 4.   Buyer agrees to accept the interest rate as may be committed by the lender, not to exceed a maximum interest rate of _____%. |

107   **(B)**  Within __ days (10 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written application for the
108   financing terms stated above to a responsible lender(s) of Buyer's choice. **Broker for Buyer, if any, otherwise Broker for Seller, is**
109   **authorized to communicate with the lender(s) to assist in the financing process.**
110   **(C)**  **Buyer furnish false or incomplete information to Seller, Broker(s), or the lender(s) concerning Buyer's legal, or financial status, or**
111   **fail to cooperate in good faith in processing the financing application, which results in the lender(s) refusing to approve a financing**
112   **commitment, Buyer will be in default of this Agreement.**
113   **(D)**  1. Upon receipt of a financing commitment, Buyer will promptly deliver a copy of the commitment to Seller.
114   2. **Financing commitment date** _____
115   Unless otherwise agreed to in writing by Buyer and Seller, if a written commitment is not received by Seller by the above date, this Agreement
116   will be VOID, with all deposit monies returned to Buyer according to the terms or paragraph 20. Buyer will be responsible for any premiums
117   for mechanics' liens insurance and/or title search, or fee for cancellation of same, if any; AND/OR any premiums for flood insurance and/or
118   fire insurance with extended coverage, insurance binder  or cancellation fee, if any; AND/OR any appraisal fees and charges paid in advance
119   to lender.

120   **7.   STATUS OF WATER (5-01)**
121   Seller represents that Property is served by:
122   ☒  Public Water
123   ☐  On-site Water
124   ☐  Community Water
125   ☐  None
126   ☐  _____
127   Seller warrants that the system(s) are fully paid for as of the Execution Date of this Agreement.

128   **8.   STATUS OF SEWER (5-01)**
129   Seller represents that Property is served by:
130   ☒   Public Sewer
131   ☐   Community Sewage Disposal System
132   ☐   Off-Property Sewage Disposal System
133   ☐   Individual On-Lot Sewage Disposal System (See Sewage Notice 1)
134   ☐   Individual On-Lot Sewage Disposal System in Proximity to Well (See Sewage Notice 1; see Sewage Notice 4, if applicable)
135   ☐   Ten-acre Permit Extension (see Sewage Notice 2)
136   ☐   Holding Tank (See Sewage Notice 3)
137   ☐   None (See Sewage Notice 1)
138   ☐   None Available/Permit Limitations in Effect (See Sewage Notice 5 or Sewage Notice 6, as applicable)
139   ☐   _____
140   Seller warrants that the system(s) are fully paid for as of the Execution Date of this Agreement.

141   **9.   ZONING CLASSIFICATION (5-01)**
142   Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is
143   zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at the option of the Buyer, and, if voided, any
144   deposits tendered by the Buyer will be returnable to the Buyer without any requirement for court action.
145   **Zoning Classification:** _____ICMX-Industrial Commercial Mixed Use_____

146   **10.  ZONING CONTINGENCY (10-06)**
147   ☒  WAIVED.
148   ☐  ELECTED.  **Contingency Period:** ____ days (15 if not specified) from the Execution Date of this Agreement.
149   **(A)  Within the Contingency Period,** Buyer, at Buyer's expense, may verify that Buyer's proposed use of the Property as _____
150   _____is permitted under the current zoning classification for the Property and is not prohibited
151   by any other governmental land use restrictions.
152   **(B)**  If Buyer's proposed use of the Property is not permitted, Buyer will, **within the Contingency Period,** notify Seller in writing that the
153   proposed use of the Property is not permitted, and Buyer will:
154   ☐  **Option 1**
155   1.   Accept the Property and agree to the RELEASE in paragraph 25 of this Agreement, OR
156   2.   Terminate the Agreement of Sale by written notice to Seller, with all deposit monies returned to Buyer according to the terms
157   of paragraph 20 of this Agreement, OR
158   3.   Enter into a mutually acceptable written agreement with Seller.
159   **If Buyer and Seller do not reach a written agreement during the Contingency Period and Buyer does not terminate the**
160   **Agreement of Sale by written notice to Seller within that time, Buyer will accept the Property and agree to the**
161   **RELEASE in paragraph 25 of this Agreement.**
162   ☐  **Option 2**

Buyer Initials: _____    Seller Initials: _____

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7BE32D0

163  1. **Within the Contingency Period,** Buyer will make a formal written application for zoning approval, variance, non-conforming
164  use, or special exception from _____(municipality) to use the Property
165  as _____(proposed use). Buyer will pay for
166  applications, legal representation, and any other costs associated with the application and approval process.
167  2. If the municipality requires the application to be signed by the current owner, Seller agrees to do so.
168  3. If final, unappealable approval is not obtained by_____, Buyer will:
169  (A) Accept the Property with the current zoning and agree to the RELEASE in paragraph 25 of this Agreement, OR
170  (B) Terminate the Agreement of Sale by written notice to Seller, with all deposit monies returned to Buyer according to the
171  terms of paragraph 20 of this Agreement, OR
172  (C) Enter into a mutually acceptable written agreement with Seller.
173  **If Buyer and Seller do not reach a written agreement before the time for obtaining final approval, and Buyer does
174  not terminate the Agreement of Sale by written notice to Seller within that time, Buyer will accept the Property
175  and agree to the terms of the RELEASE paragraph 25 of this Agreement.**
176 **11. PROPERTY DEFECTS DISCLOSURE (10-01)**
177  (A) Seller represents and warrants that Seller has no knowledge except as noted in this Agreement that: (1) The premises have been
178  contaminated by any other substance in any manner which required remediation; (2) The Property contains wetlands, flood plains, or
179  any other environmentally sensitive areas, development of which is limited or precluded by law; (3) The Property contains asbestos,
180  polychlorinated biphenyls, lead-based paint or any other substance, the removal or disposal of which is subject to any law or regulation;
181  and (4) Any law has been violated in the handling or disposing of any material or waste or the discharge of any material into the soil,
182  air, surface water, or ground water.
183  (B) Seller and Buyer acknowledge that any Broker identified in this agreement: (1) is a licensed real estate broker; (2) Is not an expert in
184  construction, engineering, or environmental matters; and (3) *Has not made and will not make any representations or warranties nor*
185  *conduct investigations of the environmental condition or suitability of the Property or any adjacent property, including but not limited*
186  to those conditions listed in paragraph 12 (A).
187  (C) Seller agrees to indemnify and to hold Broker harmless form and against all claims, demands, or liabilities, including attorneys' fees
188  and court costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or after
189  Seller's occupation of the Property including but not limited to those conditions listed in paragraph 12 (A).
190  (D) The provisions of this paragraph will survive settlement.
191 **12. NOTICES AND ASSESSMENTS (5-01)**
192  (A) Seller represents, as of the date Seller signed this Agreement, that no public improvement, condominium or owner association
193  assessments have been made against the Property with remain unpaid, and that no notice by any government or public authority has
194  been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire
195  ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that
196  remains uncorrected, unless otherwise specified here: _____
197  _____
198  _____
199  _____
200  (B) Seller knows of no other potential notices (including violations) and assessments except as follows: _____
201  _____
202  _____
203  _____
204  (C) Any notice of improvements or assessments received on or before the date of Seller's acceptance of this Agreement, unless
205  improvements consist of sewer or water lines not in use, shall be the responsibility of the Seller, any notices received thereafter shall be
206  the responsibility of the Buyer.
207  (D) If required by law, Seller will deliver to Buyer, on or before settlement, a certification from the appropriate municipal department or
208  departments disclosing notice of any uncorrected violation of zoning, building, safety, or fire ordinances.
209  (E) Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
210 **13. TITLE AND COSTS (10-06)**
211  (A) The Property is to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following:
212  existing deed restrictions, historic preservation restrictions or ordinances, building restrictions, ordinances, easements of roads,
213  easements visible upon the ground, easements of record, privileges or rights of public service companies, and land use restrictions
214  pursuant to property enrollment in a preferential tax program if any.
215  (B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) flood
216  insurance, fire insurance with extended coverage, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges
217  paid in advance to mortgage lender(s); (4) Buyer's customary settlement costs and accruals.
218  (C) Any survey or surveys required by the title insurance company or the abstracting attorney for preparing an adequate legal description of
219  the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by
220  a lender will be obtained and paid for by Buyer.
221  (D) If Seller is unable to give a good and marketable title and such as is insurable by a reputable title insurance company at the regular rates,
222  as specified in paragraph 14(A), Buyer will:
223  1. Accept the Property with such title as Seller can give, with no change to the purchase price, and agree to the RELEASE in
224  paragraph 25 of this Agreement, OR
225  2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
226  paragraph 20 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any

Buyer Initials: _____   Initial

Seller Initials: _____   DS   KS

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7DE832D

inspections or certifications obtained according to the terms of this Agreement, and for those items specified in paragraph 14(B) items (1), (2), (3), and in paragraph 14(C).

**14. COAL NOTICE (Where Applicable)**

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

**15. TAX DEFERRED EXCHANGE (10-01)**

☒ NOT APPLICABLE

☐ APPLICABLE. If Seller wishes to enter into a tax deferred exchange for the Property pursuant to Section 1031 of the Internal Revenue Code, Buyer agrees to cooperate with Seller in connection with such exchange, including the execution of such documents as may be reasonably necessary to conduct the exchange, provided that there shall be no delay in the agreed-to settlement date, and that any additional costs associated with the exchange are paid solely by Seller. Buyer is aware that Seller anticipates assigning Seller's interest in this Agreement to a third party under an Exchange Agreement and consents to such assignment. Buyer shall not be required to execute any note, contract, deed or other document providing any liability which would survive the exchange, nor shall Buyer be obligated to take title to any property other than the Property described in this Agreement. Seller shall indemnify and hold harmless Buyer against any liability which arises or is claimed to have arisen from any aspect of the exchange transaction.

**16. COMMERCIAL CONDOMINIUM (10-01)**

☒ NOT APPLICABLE

☐ APPLICABLE. Buyer acknowledges that the condominium unit to be transferred by this Agreement is intended for nonresidential use, and that Buyer may agree to modify or waive the applicability of certain provisions of the Uniform Condominium Act of Pennsylvania (68 Pa. C.S. §3101 *et. seq.*).

**17. RECORDING (9-05)** This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.

**18. ASSIGNMENT (9-05)** This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of the Seller unless otherwise state in this Agreement.

**19. DEFAULT, TERMINATION & RETURN OF DEPOSITS (8-11)**

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 20(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law prohibits a Broker holding deposit monies to determine who is entitled to deposit monies when settlement does not occur. If this Agreement is terminated for any reason, the Broker can only release the deposit monies:

    1. If there is not dispute over entitlement to the deposit monies. Buyer and Seller agree that a written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

    2. According to the terms of a written agreement signed by the Buyer and Seller directing Broker how to distribute some or all of the monies.

    3. According to the terms of a final order of court.

    4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 20(C)).

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved 365 days after the Settlement Date stated in Paragraph 3(D), or any written extensions thereof, the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker has received verifiable written notice that the dispute is the subject of litigation. If Broker has received verifiable written notice of litigation before receiving Buyer's request for distribution, Broker will continue to hold the deposit monies until receiving either a written distribution agreement signed by Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties may maintain their legal rights to pursue litigation even after a distribution is made.

(D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 20 or Pennsylvania law will not be liable for those deposit monies to either Buyer or Seller, absent Broker's gross negligence or wrongful intentional actions. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, entitlement to deposit monies or distribution of deposit monies, then the Broker's and/or licensee's attorneys' fees costs incurred for participating in such litigation will be paid by the party naming them or joining them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:

    1. Fail to make any additional payments as specified in Paragraph 3, OR

Buyer Initials: _____

Seller Initials: _____

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7BE3B2D

288       2.  Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
289             legal or financial status, OR
290       3.  Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
291    (F)  **Unless otherwise checked in Paragraph 20(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
292       1.  On account of purchase price, OR
293       2.  As monies to be applied to Seller's damage, OR
294       3.  As liquidated damages for such default.
295    (G) ☒ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**
296    (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 20(F) or (G), Buyer and
297       Seller are released from further liability or obligation and this Agreement is VOID.
298    (I)  Brokers and licensees are not responsible for unpaid deposits.

299 **20. REAL ESTATE RECOVER FUND (9-05)**
300    A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate
301    licensee owing to fraud, misrepresentation, or deceit in an real estate transaction and who have been unable to collect the judgment after
302    exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania)
303    and (717) 783-4854 (outside Pennsylvania).

304 **21. MAINTENANCE AND RISK OF LOSS (10-06)**
305    (A) Seller will maintain the Property, grounds, fixtures, and personal property specifically listed in this Agreement in its present condition,
306       normal wear and tear excepted.
307    (B) Seller will promptly notify the Buyer if, at any time prior to the time of settlement, all or any portion of the Property is destroyed, or
308       damaged as a result of any cause whatsoever.
309    (C) Seller bear the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced,
310       Buyer will:
311       1.  Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
312       2.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph
313          20 of this Agreement.

314 **22. CONDEMNATION (10-06)**
315    Seller has no knowledge of any current or pending condemnation or eminent domain proceedings that would affect the Property. If any portion
316    of the Property should be subject to condemnation or eminent domain proceedings after the signing of this agreement, Seller shall immediately
317    advise Buyer, in writing, of such proceedings. Buyer will have the option to terminate this Agreement by written notice to Seller within _____
318    days (15 if not specified) after Buyer learns of the filing of proceedings, with all deposit monies returned to Buyer according to the terms in
319    paragraph 20 of this Agreement. **Buyer's failure to provide notice of termination within the time stated will constitute a WAIVER of this**
320    **contingency and all other terms of this Agreement remain in full force and effect.**

321 **23. WAIVER OF CONTINGENCIES (9-05)**
322    **If this Agreement is contingent upon Buyer's right to inspect and/or repair the Property, or to verify environmental conditions,**
323    **boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any**
324    **of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and**
325    **agrees to the RELEASE in paragraph 25 of this Agreement.**

326 **24. RELEASE (9-05)**
327    **Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICE or**
328    **PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, for any**
329    **and all claims, losses, demands, including, but not limited to, personal injury and property damage and all of the consequences thereof,**
330    **whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards,**
331    **mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in**
332    **the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this**
333    **Agreement, or in violation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue remedies**
334    **that may be available under law or equity. This release will survive settlement.**

335 **25. REPRESENTATIONS (9-05)**
336    (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees,
337       employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This
338       Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants,
339       representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be
340       altered, amended, changed or modified except in writing executed by the parties.
341    (B) **Unless otherwise state in this Agreement, Buyer has inspected the Property (including fixtures and any other personal property**
342       **specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property**
343       **IN ITS PRESENT CONDITION. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not**
344       **made an independent examination or determination of the structural soundness of the Property, the age or condition of the**
345       **components, environmental conditions, the permitted uses or of conditions existing in the locale where the Property is situated;**
346       **nor have they made a mechanical inspection of any of the systems contained therein.**
347    (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
348    (D) Broker(s) have provided or may provide services to assist in unrepresented parties in complying with this Agreement.

349 **26. CERTIFICATION OF NON-FOREIGN INTEREST (10-01)**



Buyer Initials: _____ Seller Initials: _____

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D7DE323B

350  ☐ Seller IS a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate subject to Section 1445 of the
351  Internal Revenue Code, which provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor
352  (Seller) is a foreign person.
353  ☒ Seller is NOT a foreign person, foreign corporation, foreign partnership, foreign trust, or a foreign estate as defined by the Internal
354  Revenue Code, or is otherwise not subject to the tax withholding requirements of Section 1445 of the Internal Revenue Code. To inform
355  Buyer that the withholding of tax is not required upon the sale/disposition of the Property by Seller, Seller hereby agrees to furnish
356  Buyer, at or before closing, with the following:
357    ☐ An affidavit stating, under penalty of perjury, the Seller's U.S. taxpayer identification number and that the Seller is not a foreign
358    person.
359    ☐ A "qualifying statement," as defined by statute, that tax withholding is not required by Buyer.
360    ☐ Other: _____
361  Seller understands that any documentation provided under this provision may be disclosed to the Internal Revenue Service by Buyer, and
362  that any false statements contained therein could result in punishment by fine, imprisonment, or both.
363  **27. ARBITRATION OF DISPUTES (1-00)** Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved.
364  After written demand for arbitration by either Buyer or Seller, each party will select a competent and disinterested arbitrator. The two so
365  selected will select a third. If selection of the third arbitrator cannot be agreed upon within 30 days, either party may request that selection be
366  made by a judge of a court of record in the county in which arbitration is pending. Each party will pay its chosen arbitrator, and bear equally
367  expenses for the third and all other expenses of arbitration. Arbitration will be conducted in accordance with the provisions of Pennsylvania
368  Common Law Arbitration 42 PA. C.S.A. §7341 *et. seq.* This agreement to arbitrate disputes arising from this Agreement will survive
369  settlement.
370  **28. BROKER INDEMNIFICATION (10-01)**
371    (A) Buyer and Seller represent that the only Brokers involved in this transaction are: _____ MPN Realty, Inc _____
372    _____
373    _____
374    and that the transaction has not been brought about through the efforts of anyone other than said Brokers. It is agreed that if any claims for
375  brokerage commissions or fees are ever made against Buyer or Seller in connection with this transaction, each party shall pay its own legal
376  fees and costs in connection with such claims. It is further agreed that Buyer and Seller agree to indemnify and hold harmless each other and
377  the above-listed Brokers from and against the non-performance of this Agreement by either party, and from any claim of loss or claim for
378  brokerage commissions, including all legal fees and costs, that may be made by any persons or entity. This paragraph shall survive settlement.
379  **29. GOVERNING LAW, VENUE, & PERSONAL JURISDICTION (9-05)**
380    (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws
381    of the Commonwealth of Pennsylvania.
382    (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
383    party shall not be decided exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.
384  **30. NOTICE BEFORE SIGNING (5-01)**
385    Buyer and Seller acknowledge that Brokers have advised them to consult and retain experts concerning the legal and tax effects of this
386  Agreement and the completion of the sale, as well as the condition and/or legality of the Property, including, but not limited to, the Property's
387  improvements, equipment, soil, tenancies, title and environmental aspects. Return by facsimile transaction (FAX) of this Agreement, and all
388  addenda, bearing the signatures of all parties, constitutes acceptance of this Agreement.
389  **31. NOTICE**
390    All notice requirements under the provisions of this Agreement of by application or statutory or common law will be addressed to the
391  appropriate party, at the addresses listed below via any means of delivery as mutually agreed upon by the parties and state here:
392    _____
393    _____
394  If to Seller: _____ Robert W Seitzer, Esq. / Karalis PC _____
395    _____ 1900 Spruce Street _____
396    _____ Philadelphia, PA 19103 _____
397    _____ rseitzer@karalislaw.com _____
398  With a copy to: _____
399    _____
400    _____
401    _____
402  If to Buyer: _____ Kim Pheng Tang _____
403    _____ 4252 Rising Sun Ave _____
404    _____ Philadelphia, PA 19140 _____
405    _____ Kimphengtang1@gmail.com _____
406  With a copy to: _____
407    _____
408    _____
409    _____
410    _____
411
412

Buyer Initials: [initial] K M          Seller Initials: [DS] RS

Docusign Envelope ID: 3AA3FA9D-67B3-41BF-9D89-FEA8D75E92B0

413  **32. SPECIAL CLAUSES:**

414  (A) The following are part of this Agreement if checked:

415

416  ☒  **The property is being sold "AS IS", "WHERE IS" and subject to the approval of the United States Bankruptcy Court for**

417  **the Eastern District of Pennsylvania.**

418

419  **VOLUNTARY TRANSFER OF CORPORATE ASSETS** (if applicable): The undersigned acknowledges that he/she is authorized

420  by the Board of Directors to sign this Agreement on behalf of the Seller corporation and that this sale does not constitute a sale, lease,

421  or exchange of all or substantially all the property and assets of the corporation, such as would require the authorization or consent of

422  the shareholders pursuant to 15 P.S. §1311.

423

424                                                                  1/12/2026

425  **BUYER**_____4500 A&E, LLC_____**DATE**_____

426

427                                           ┌─ Signed by:

428  **BUYER(s) Name**_____Kunthea May_____  ⎰M̌ṽ̃⎱

429                                           └─ F34D188E44414C8...

430  Mailing Address_____

431

432  Phone__267-777-2328____FAX_____E-Mail_____kimphengtang1@gmail.com

433

434

435                                                                  1/12/2026

436  **SELLER**_____Robert W Seitzer, in his capacity as the Chapter 7 Trustee for the Estate of Tri-State Paper, Inc.___**DATE**_____

437

438                                     ┌─ DocuSigned by:

439  **SELLER(s) Name**_____  ⎰Robert Seitzer⎱

440                                     └─ 6C712709ABC14BC...

441  Mailing Address_____

442

443  Phone__215-546-4500____FAX_____E-Mail_____rseitzer@karalislaw.com

444

Buyer Initials: ⎰K M⎱  Initial

Seller Initials: ⎰KS⎱  DS